JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759

DARRELL S. CAFASSO (*Admitted Pro Hac Vice*)
dcafasso@orrick.com
JENNIFER KEIGHLEY (*Admitted Pro Hac Vice*)
jkeighley@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone:   (212) 506-5000
Facsimile:   (212) 506-5151

Attorneys for Underwriter Defendants

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CHARLES LARRY CREWS, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., et al.,<br><br>Defendants. | Case No. 2:22-cv-01524-RGK-E<br><br>**THE UNDERWRITER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT; JOINDER TO RIVIAN DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br><u>Hearing</u><br>Date:   October 3, 2022<br>Time:   9:00 a.m.<br>Judge:   Hon. R. Gary Klausner<br>Ctrm:   850 |

# NOTICE OF JOINDER

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co., LLC, J.P. Morgan Securities LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Allen & Company LLC, BofA Securities, Inc., Mizuho Securities USA LLC, Wells Fargo Securities, LLC, Nomura Securities International, Inc., Piper Sandler & Co., RBC Capital Markets, LLC, Robert W. Baird & Co. Inc., Wedbush Securities Inc., Academy Securities, Inc., Blaylock Van, LLC, Cabrera Capital Markets LLC, C.L. King & Associates, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Co., Inc., Siebert Williams Shank & Co., LLC, and Tigress Financial Partners LLC (the "Underwriters" or "Underwriter Defendants"), join and incorporate the arguments set forth in the separate reply brief in support of the motion to dismiss filed by Defendants Rivian Automotive, Inc. ("Rivian"), Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham.

Dated: September 19, 2022

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

By:   */s/ Alexander K. Talarides*
JAMES N. KRAMER
DARRELL S. CAFASSO
ALEXANDER K. TALARIDES
JENNIFER KEIGHLEY

Attorneys for the Underwriter Defendants

- i -

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT ................................................................................................. 2

    A.   Rule 9(b) Applies To The Securities Act Claims. ............................... 2

    B.   Plaintiffs' Oppositions Only Underscore Their Failure To State A Section 11 Claim Based On The Two Purported Misstatements. ..... 2

        1.   Plaintiffs fail to establish anything false or misleading in the First Challenged Statement. ......................................................... 3

        2.   Plaintiffs also distort the Second Challenged Statement, but it too is neither false nor misleading. ................................... 5

        3.   Plaintiffs misstate the law and ignore Rivian's actual disclosures in trying to state a regulation S-K violation. ............ 7

    C.   Plaintiff Muhl Fails To State A Section 12(a)(2) Claim. ....................... 9

III. CONCLUSION ............................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                   **Page(s)**

*Brody v. Transitional Hosp. Corp.*,
   280 F.3d 997 (9th Cir. 2002) ............................................................................... 4, 5

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) .................................................................................. 4

*In re Convergent Technologies Sec. Litig.*
   948 F.2d 507 (9th Cir. 1991) .................................................................................. 4

*In re Evenbrite, Inc. Sec. Litig.*,
   2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ........................................................ 8

*Freeland v. Iridium World Comms. Ltd.*,
   2006 WL 8427320 (D.D.C. Sept. 15, 2006) ......................................................... 10

*Frenzel v. AlihCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) .................................................................... 10

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
   297 F.3d 1182 (11th Cir. 2002) .............................................................................. 9

*In re Restoration Robotics, Inc. Sec. Litig.*,
   417 F. Supp. 3d 1242 (N.D. Cal. 2019) .................................................................. 9

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ................................................................................ 2

*Slater v. A.G. Edwards & Sons, Inc.*,
   719 F.3d 1190 (10th Cir. 2013) .............................................................................. 8

*In re Stac Elecs., Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) .................................................................................. 2

*Stadnick v. Vivint Solar, Inc.*,
   861 F.3d 31 (2d Cir. 2017) ..................................................................................... 8

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................ 2

*Zagami v. Cellceutix Corp.*,
   2016 WL 3199531 (S.D.N.Y. June 8, 2016) .......................................................... 9

## I. INTRODUCTION

As the Underwriters' Motion to Dismiss ("Motion" or "Mot.")[1] demonstrates, the Securities Act claims should be dismissed because Plaintiffs have failed to allege plausibly that the two challenged statements in the Registration Statement were false or misleading. Instead, these statements accurately described the "primary" cause of Rivian's negative gross profit in Q3 2021 and Rivian's expectation that it would continue to operate at a negative gross profit in the "near term." Plaintiffs also fail to allege violations of Items 105 and 303 of Regulation S-K because the Registration Statement explicitly disclosed the specific items that Plaintiffs claim were withheld.

Plaintiffs' two opposition briefs ("Opp. Riv." and "Opp. UW") only further underscore their Complaint's fundamental flaws. Indeed, though the Complaint centers the Securities Act claims on two alleged misstatements, Plaintiffs' oppositions have very little to say about them. Plaintiffs all but abandon their allegations that these statements were false, and instead pivot to the theory that even if the statements were "technically true," they were nonetheless misleading because they created the "impression" that Rivian would turn a profit as soon as production levels increased. But neither challenged statement suggested as much, never mind "affirmatively" created a misleading picture for investors, as required to state a claim. The lack of any misleading statements becomes even more apparent after considering the Registration Statement's ample risk disclosures warning about the likelihood that Rivian might *never* turn a profit—disclosures that Plaintiffs conveniently ignore and that are fatal to the Securities Act claims.

Plaintiffs also all but concede that their Section 12(a)(2) claim is deficient for failing to plead that Plaintiff Muhl purchased his shares from one of the Underwriter Defendants. Plaintiffs' attempt to remedy this pleading deficiency through their opposition is improper, and this claim should be dismissed.

---

[1] Except as otherwise noted, all defined terms herein have the same definition as in the Motion. All emphases are added, unless indicated otherwise.

## II. ARGUMENT

### A. Rule 9(b) Applies To The Securities Act Claims.

As the Motion explains, the particularity requirements of Rule 9(b) apply to Securities Act claims grounded in fraud, particularly when, as here, there is an "obvious overlap" with parallel Exchange Act claims. *See* Mot. at 3-4.

Plaintiffs do not and cannot dispute those principles. Instead, Plaintiffs disclaim any overlap, and argue that their Securities Act claims are grounded in negligence, not fraud. *See* Opp. UW at 9 & n.3. But Plaintiffs' contention that the Complaint does not use the same factual allegations for the Securities Act and Exchange Act claims ignores that the ***exact same two statements*** forming the basis of the Securities Act claims are also alleged to be fraudulent under the Exchange Act. *Compare* Compl. ¶¶ 98-100, *with id.* ¶¶ 253-55. The Ninth Circuit has made clear that when, as here, the "complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009). As Ninth Circuit precedent also makes clear, Plaintiffs' boilerplate disclaimer of any allegations of fraud, *see* Opp. UW at 10, does not save their Securities Act claims from the requirements of Rule 9(b), *see In re Stac Elecs., Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996). Accordingly, Rule 9(b) applies to Plaintiffs' Securities Act claims.[2]

### B. Plaintiffs' Oppositions Only Underscore Their Failure To State A Section 11 Claim Based On The Two Purported Misstatements.

As the Motion demonstrates, both challenged statements were accurate, explaining that the ***primary*** cause of Rivian's negative gross profit in Q3 2021—

---

[2] Plaintiffs' claim that the only consequence of applying Rule 9(b) would be the stripping of allegations of fraud from the claim, *see* Opp. UW at 10 n.4, is wrong. The precedent they cite establishes that where, as here, the "entire complaint, or entire claim within a complaint, is grounded in fraud," failure to satisfy Rule 9(b) merits dismissal. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). In all events, as the Motion explains, the Securities Act claims fail under Rule 8 as well.

2

when just *twelve* vehicles were produced—was labor and overhead costs for its new factory, and that negative gross profit would continue for the undefined "near term" until Rivian could launch additional vehicles and ramp production.  *See* Mot. at 5-12.  In opposition, Plaintiffs critique Defendants for focusing on these statements' "technical[] tru[th]."  Opp. UW at 18.  Having tacitly conceded the accuracy of the challenged statements, Plaintiffs are left arguing that the statements were somehow nonetheless misleading.  Plaintiffs' arguments fail.

        1.      **<u>Plaintiffs fail to establish anything false or misleading in the First Challenged Statement.</u>**

The First Challenged Statement accurately reported that negative gross profit in Q3 2021 related "primarily to significant labor and overhead costs for the Normal Factory."  Compl. ¶ 253 (emphasis removed).  This statement nowhere suggested that these costs were the ***only*** cause of the negative gross profit in Q3 2021, and Plaintiffs' non-response on this point implicitly acknowledges the statement's truth.

Instead, Plaintiffs now assert that the remainder of the statement somehow rendered it misleading by falsely suggesting that "Rivian's negative gross profits would dissipate as production volumes increased."  Opp. Riv. at 11.  This is wrong for two reasons.  First, Plaintiffs' oppositions tellingly do not focus on the precise language of the additional clause they now claim to be misleading.  That language is: "however, as we just started to ramp vehicle production at the site, the facility produced limited quantities of vehicles in the period."  Compl. ¶¶ 253.  Nothing in that clause suggests that Rivian would turn a profit as production volumes increased.  And this clause was also entirely accurate.  Plaintiffs cannot, and do not, dispute that the reasons negative gross profit in Q3 2021 was primarily driven by factory overhead—rather than by gross profit per vehicle—was because of the extremely limited number of vehicles produced in that period.  And that is precisely what this clause disclosed.

This clause did not "affirmatively create an impression," *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002), that the "R1 Platform would become profitable when production volume increased," Opp. Riv. at 10. It gave no impression whatsoever about the R1 platform's future profitability, and instead only provided indisputably accurate historical information about the limited number of vehicles produced in Q3 2021. Moreover, Ninth Circuit law is crystal clear that Rivian had no duty to provide any further information about gross profit per vehicle because "no matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." *Brody*, 280 F.3d at 1006. Only those omissions that "affirmatively create an impression of a state of affairs that differs in a material way from the ones that actually exist" are actionable. *Id.*[3]

Second, this statement must be evaluated in "context, which includes all its surrounding text, including hedges [and] disclaimers." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017) (internal quotations omitted). As the Motion details, the Registration Statement contained numerous disclosures that made clear that Rivian "[could not] assure [investors] that [it would] ***ever achieve*** or be able to maintain ***profitability*** in the future," and that it expected to incur "significant expenses and continuing losses ***for the foreseeable future***." ECF 135-5 (Lopez Decl., Ex. 4 at 48, 57, 109); *see* Mot. at 11-12. Plaintiffs try to brush away these extensive risk disclosures, contending these disclosures "do not address" the specific information alleged to have been omitted. Opp. UW at 13. But that contention is baseless, as confirmed by reviewing the

---

[3] The cases Plaintiffs cite provide no support for their argument. *See* Opp. Riv. at 10-11. For instance, *In re Convergent Technologies Securities Litigation* acknowledges that an accurate statement can sometimes be misleading in context, but rejected the argument that the defendant's accurate statements "report[ing] past performance" implied any "comparison between the rate of past and future growth." 948 F.2d 507, 512 (9th Cir. 1991). The same is true here—Rivian's accurate reporting of historical data did not imply anything about the future relationship between negative gross profits and production volume.

multiple on-point risk disclosures identified in the Motion. *See* Mot. 11-12. No reasonable investor would have read the First Challenged Statement alongside these extensive risk disclosures and concluded that the R1 platform would be profitable as soon as production numbers increased. To the contrary, Rivian explicitly warned investors that it could not guarantee it would ever achieve profitability.

### 2. Plaintiffs also distort the Second Challenged Statement, but it too is neither false nor misleading.

The Second Challenged Statement is likewise not actionable for many of the same reasons discussed above: It is indisputably true that Rivian would continue to operate at a negative gross profit per vehicle in the "near term" until it could spread its fixed costs over a larger product base. *See* Mot. at 8-12. Again, Plaintiffs implicitly concede that this statement was "technically true," Opp. UW at 18, but argue that it was nonetheless misleading because of the "untrue impressions [it] created," that "negative gross margins … were caused by its low production volume and that the R1 Platform would become profitable when production volume increased," Opp. Riv. at 10. But nothing in the Second Challenged Statement indicated that the only cause of negative margins was low production volume, nor did this statement *affirmatively* create the impression that Rivian would become profitable as soon as production volume increased. *See Brody*, 280 F.3d at 1006.

Instead, the Second Challenged Statement explicitly warned that Rivian expected to operate at a negative gross profit per vehicle "for the near term … until we launch additional vehicles *and* ramp production." Compl. ¶ 254. Plaintiffs completely ignore the statement's reference to the launch of "additional vehicles"—*i.e.*, the anticipated launch of "new vehicle models that leverage our historical investments [and] … that address a wider range of use cases and price points," ECF 135-5 (Lopez Decl., Ex. 4 at 125)—*in addition to* ramped production, as one of the *two* expected prerequisites for Rivian to be able to generate a positive gross profit per vehicle. In other words, this statement did not suggest, as Plaintiffs' assert, that

increased production *alone* could generate positive gross profits per vehicle.[4] The Complaint elsewhere acknowledges as much, alleging that Rivian anticipated launching a "significantly cheaper dual-motor option for the R1s" in 2023 that would mean that the bill of materials would no longer exceed a customer's purchase price, and that this new model combined with reduced labor and factory costs as production expanded would positively impact margins. Compl. ¶¶ 86-87. Thus, Plaintiffs' own allegations demonstrate that this statement was not misleading.

Indeed, in the sentence directly following the Second Challenged Statement, Rivian warned investors that "our gross profit *losses* [will] *increase* on a dollar basis *even as* our revenue increases from *ramping production* volumes over the short to medium term." ECF 135-5 (Lopez Decl., Ex. 4 at 124). So, the Registration Statement made explicit that ramping production alone, *even in the medium term*, would not result in positive margins and would *increase losses*. These and other disclosures detailed in the Motion and ignored by Plaintiffs mean that a reasonable investor would not have read the second statement and believed that Rivian's margins would increase through expanded production alone.

Furthermore, as the Motion points out, Rivian's expectation that it would operate at a negative gross profit per vehicle in the "near term" is not actionable as a matter of law because "near term" is a vague, subjective prediction about the future. *See* Mot. at 9-10. Plaintiffs largely ignore and do not attempt to distinguish the caselaw cited on this point, instead arguing that "near term" was misleading because R1s "lack of profitability" was a "long-term structural problem," and no reasonable investor would have understood "near term" as referring to 2025. *See* Opp. UW at 19 & n.10; Opp. Riv. at 11. But Plaintiffs tellingly cannot define what constitutes the "near term," nor have Plaintiffs provided any legal support for their argument that

---

[4] Rivian also emphasized this elsewhere in the Registration Statement. *See* ECF 135-5 (Lopez Decl., Ex. 4 at 125) ("[O]ur ability to grow revenue and expand margins will depend on our ability to develop and launch new vehicle platforms and programs.").

Case 2:22-cv-01524-JLS-E   Document 140   Filed 09/19/22   Page 11 of 15   Page ID #:2834

"near term" did not include 2025 and should give rise to liability.

Moreover, in the *same* paragraph as the Second Challenged Statement, the Registration Statement disclosed that Rivian "believe[d]" that it would not be able to "generate positive gross profit" until the "long term." ECF 135-5 (Lopez Decl., Ex. 4 at 125). And Rivian elsewhere warned that it could not guarantee that it would "***ever achieve*** or be able to maintain ***profitability***," and that it expected losses "***for the foreseeable future***." *Id.* at 48, 57, 109. So, Plaintiffs' allegation that Rivian expected it would not be able to generate a positive profit per vehicle until 2025 is entirely consistent with Rivian's statements that it expected to operate at a negative gross profit per vehicle in the "near term," and to not achieve profitability until the "long term," if at all.

### 3. Plaintiffs misstate the law and ignore Rivian's actual disclosures in trying to state a regulation S-K violation.

Plaintiffs also allege that Defendants violated Items 303 and 105 of Regulation S-K by omitting allegedly material information about Rivian's costs and profitability. *See* Opp. UW at 12-18. But as the Motion explains, Rivian made extensive and detailed disclosures about its costs and profitability—in the past and at present, as well as its expectations for the future. *See* Mot. at 11-14. Plaintiffs refuse to engage with these disclosures, largely ignoring their varied content and pointing instead to other, more specific items that Plaintiffs wish Rivian might have mentioned too. But Rivian had no duty to disclose every minutia under the sun, and the many disclosures it made were more than enough to satisfy Items 303 and 105.

Plaintiffs complain Rivian's disclosures were "insufficient" because, according to them, the disclosed risks had "already come to fruition" at the time of Rivian's IPO. *See* Opp. UW at 13. Plaintiffs are wrong for multiple reasons. For one thing, Plaintiffs conveniently leave out that Rivian's numerous unambiguous disclosures that it was *already* suffering significant financial losses and increased costs—and had been for years. Rivian made clear multiple times that it had "a ***history***

7

UNDERWRITER DEFENDANTS' REPLY ISO MOTION TO DISMISS AND JOINDER

of losses" and that it "expect[ed] to incur significant expenses and *continuing* losses for the foreseeable future." ECF 135-5 (Lopez Decl., Ex. 4, at 48, 57, 109). Rivian also said, again specifically with respect to current and past circumstances, that it had experienced a "steady increase in operating expenses"—*i.e.*, costs—"over the last eight quarters." *Id.* at 132. Rivian elaborated on the situation, informing investors that its operational losses had swelled from $409 million in 2019, to $1.02 billion in 2020, to nearly $1 billion in the first half of 2021 alone. *Id.* at 119. Rivian further disclosed "dynamic[s]" that "*will cause* [Rivian's] gross profit losses to increase … even as [its] revenue increases from ramping production volumes over the short to medium term." *Id.* at 124. In short, Rivian provided precisely the kind of detailed and "concrete facts" that Plaintiffs complain were missing. This satisfied Rivian's obligations under Items 105 and 303. *See, e.g.*, *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 39 (2d Cir. 2017) (no Item 303 violation where "registration statement included ample warning[s]" related to the risk at issue); *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1203 (10th Cir. 2013) (no Item 303 violation where registration statement "painted an unvarnished picture of [the company's] finances").

Unable to grapple with any of the Rivian disclosures described above, Plaintiffs fixate on other alleged details they wish Rivian had included. Plaintiffs principally argue that Rivian should have disclosed that "it had been experiencing … increasing costs for the R1 bill of materials (which exceeded R1 purchase prices) such that, even if production volumes increased, R1 could not become profitable without significant price increases and or cost reductions." Opp. UW at 12. But Plaintiffs have not explained how Items 105 and 303 compel disclosure at this level of specificity. Rivian's disclosures already made abundantly clear that Rivian was "experiencing … increasing costs," that those costs "exceeded" what it was bringing in, and that its operations may very well "not become profitable" anytime soon. *Id*. That is, Rivian "disclose[d] the exact risks that Plaintiffs argue were not" disclosed. *In re Evenbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *15 (N.D. Cal. Apr. 28, 2020).

8
UNDERWRITER DEFENDANTS' REPLY ISO MOTION TO DISMISS AND JOINDER

Rivian was not additionally required to disclose that particular costs of production (the bill of materials) for a particular product (the R1 vehicle) were at a particular level (greater than the R1's purchase price) at a particular point in time (when Rivian was about IPO and had produced a limited number of vehicles). *Cf. Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *14 (S.D.N.Y. June 8, 2016) ("Plaintiff has not cited to case law suggesting that Item 303 requires this level of specificity."). The omission of the highly specific information upon which Plaintiffs fixate "did not render [Rivian's] reported results any materially less indicative of the company's future prospects," given that Rivian disclosed it had incurred significant losses and that "there could be no assurance that the company would ever be profitable." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1192 (11th Cir. 2002).

There is yet another reason Plaintiffs' Regulation S-K allegations are insufficient: They have failed adequately to plead that the allegedly omitted disclosures were "a known trend." Plaintiffs argue that the allegedly omitted known trend was that Rivian's bill of materials "costs … increased (and the R1 gross profit margins deteriorated) during the three years prior to the IPO." Opp. UW at 15 (emphasis omitted). But as the Motion explains, no "three-year" trend existed—at the time of the IPO, Rivian had an extremely limited history (just two months) of producing an extremely limited number of vehicles. *See* Mot. at 13-14. Those two months of data is insufficient because a trend requires "**persistent conditions** of the particular registrant's business environment." *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1263 (N.D. Cal. 2019). Any purported increases in the cost of producing small numbers of prototype vehicles over the preceding three years do not constitute a trend—especially since production costs necessarily depend in crucial part on the scale of production (*e.g.*, the number of vehicles being produced).

C.   **Plaintiff Muhl Fails To State A Section 12(a)(2) Claim.**

As Plaintiffs acknowledge, the Section 12(a)(2) claim rises or falls with the Section 11 claim, so this claim fails for the same reasons discussed above. *See* Opp.

UW at 19. But this claim also independently fails because Plaintiffs have not alleged plausibly that the Underwriters either directly sold Rivian securities to Plaintiff Muhl, or directly solicited purchases of Rivian securities from him. *See* Mot. at 14-18.

Plaintiffs tacitly concede this deficiency. They ignore the Underwriters' cited authorities, and instead belatedly attempt to cure this deficiency by attaching a new declaration and exhibit purportedly demonstrating that Plaintiff Muhl "did in fact purchase Rivian stock traceable to the S-1 from one of the Underwriter Defendants— Morgan Stanley." Opp. UW at 20 (citation omitted). But "[i]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frenzel v. AlihCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014). So, these new documents should be disregarded.[5] And Plaintiffs' halfhearted, single-sentence argument that their Complaint itself shows "that Plaintiff Muhl purchased the shares from an Underwriter," Opp. UW at 20, only further underscores the Complaint's failure to allege that Plaintiff Muhl purchased shares from a *specific* Underwriter, as is required, *see* Mot. at 15-16. Accordingly, the Court should dismiss Plaintiffs' Section 12(a)(2) claim against the Underwriter Defendants.

## III. CONCLUSION

For these reasons, and those set forth in the Motion, the claims asserted against the Underwriter Defendants should be dismissed in their entirety, with prejudice.

---

[5] Even if the Court were to consider this document (it should not), it does not establish statutory standing as to any of the remaining Underwriter Defendants. *See, e.g.*, *Freeland v. Iridium World Comms. Ltd.*, 2006 WL 8427320, at *4 (D.D.C. Sept. 15, 2006) (where plaintiff only purchased shares from one underwriter, "the other Underwriters are not 'sellers' within the meaning of Section 12").

Dated: September 19, 2022

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Alexander K. Talarides*
JAMES N. KRAMER
DARRELL S. CAFASSO
ALEXANDER K. TALARIDES
JENNIFER KEIGHLEY
Attorneys for the Underwriter Defendants