**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
SHARAN NIRMUL (*pro hac vice*)
snirmul@ktmc.com
280 King of Prussia Road
Radnor, PA 19807
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Lead Plaintiff Sjunde AP-Fonden*
*and additional Plaintiff James Stephen Muhl*
*and Lead Counsel for the Proposed Class*

[Additional Counsel on signature page.]

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| CHARLES LARRY CREWS, JR., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> RIVIAN AUTOMOTIVE, INC., et al., <br><br> Defendants. | Case No. 2:22-cv-01524-JLS-E <br><br> **CLASS ACTION** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Date: November 8, 2024 <br> Time: 10:30 a.m. <br> Ctrm.: 8A, 8th Floor <br> Judge: Hon. Josephine L. Staton |

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INDEX OF ABBREVIATIONS ........................................................................ vi

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ................. 3

III.  ARGUMENT .............................................................................................. 5

    A.    Securities Cases Are Particularly Well-Suited for Class Action Treatment ............................................................................................. 5

    B.    The Proposed Class Satisfies Rule 23(a) .......................................... 6

        1.    Numerosity Is Satisfied ............................................................ 6

        2.    Commonality Is Satisfied ......................................................... 6

        3.    Typicality Is Satisfied .............................................................. 7

        4.    Adequacy Is Satisfied .............................................................. 8

    C.    The Proposed Class Satisfies Rule 23(b)(3) .................................... 10

        1.    Predominance Is Satisfied ...................................................... 10

            a.    Plaintiffs' Securities Act Claims ................................. 11

            b.    Plaintiffs' Exchange Act Claims ................................. 11

            c.    Damages For Plaintiffs' Exchange Act and Securities Act Claims Can Be Calculated Through a Common Methodology ................................................................ 17

            d.    Plaintiffs' Control Person Claims ............................... 19

        2.    Superiority Is Satisfied ........................................................... 19

IV.   CONCLUSION ........................................................................................ 20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................................................................................... 10

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)............................................................................ 10, 11, 12

*Angley v. UTI Worldwide Inc.*,
311 F. Supp. 3d 1117 (C.D. Cal. 2018) ........................................................ 13

*In re Banc of Cal. Sec. Litig.*,
326 F.R.D. 640 (C.D. Cal. 2018) .................................................................... 6

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)........................................................................................ 12

*Bee, Denning, Inc. v. Cap. Alliance Grp.*,
310 F.R.D. 614 (S.D. Cal. 2015) .................................................................... 8

*Brown v. China Integrated Enery Inc.*,
2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) ................................. 13, 14, 15

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989)....................................................... 13, 14, 15

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
2013 WL 5789237 (C.D. Cal. Oct. 25, 2013) ........................................18-19

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).......................................................................................... 17

*Conn. Ret. Plans & Tr. Funds v. Amgen, Inc.*,
2009 WL 2633743 (C.D. Cal. Aug. 12, 2009),
*aff'd* 660 F.3d 1170 (9th Cir. 2011)................................................................. 7

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009)..................................................................... 5

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. Dec. 9, 2009) ...................................................... 16

*In re DVI, Inc. Sec. Litig.*,
639 F.3d 623 (3d Cir. 2011) ........................................................................... 16

*Epstein v. MCA, Inc.*,
50 F.3d 644 (9th Cir. 1995) ............................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ............................................................................ 10, 11, 12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 268 (2014) ..................................................................................... 12, 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................... 6, 8-9, 10

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ......................................... 7, 19

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) ........................................................................................ 11

*In re HiEnergy Techs., Inc. Sec. Litig.*,
   2006 WL 2780058 (C.D. Cal. Sept. 26, 2006) ............................................. 9

*Hildes v. Arthur Andersen LLP*,
   734 F.3d 854 (9th Cir. 2013) ...................................................................... 11

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ................................................................. 15

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ................................................................... 17

*Karinski v. Stamps.com, Inc.*,
   2020 WL 6572660 (C.D. Cal. Nov. 9, 2020) ............................... 5, 17, 18

*Katz v. China Century Dragon Media, Inc.*,
   287 F.R.D. 575 (C.D. Cal. 2012) ......................................................... 8, 11

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ............................................................. 16

*In re LDK Solar Sec. Litig.*,
   255 F.R.D. 519 (N.D. Cal. 2009) ............................................................. 10

*In re LendingClub Sec. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017) .............................................18-19, 20

*Loritz v. Exide Techs.*,
   2015 WL 12488514 (C.D. Cal. Dec. 17, 2015) ....................................... 19

*Loritz v. Exide Techs.*,
   2015 WL 6790247 (C.D. Cal. July 21, 2015) ......................................... 13

*In re Magma Design Automation Sec. Litig.*,
   2007 WL 2344992 (N.D. Cal. Aug. 16, 2007) ....................................... 20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

*McIntire v. China MediaExpress Hldgs, Inc.*,
   38 F. Supp. 3d 415 (S.D.N.Y. 2014) ............................................................... 16, 17

*In re Metro. Sec. Litig.*,
   2008 WL 5102303 (E.D. Wash. Nov. 25, 2008) ............................................. 17

*Milbeck v. TrueCar, Inc.*,
   2019 WL 2353010 (C.D. Cal. May 24, 2019) ................................. 5, 6, 7, 17

*In re Netsol Techs., Inc. Sec. Litig.*,
   2016 WL 7496724 (C.D. Cal. July 1, 2016) ...................................................... 5

*Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019) ......................................................................... 17

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ........................................................................ 6, 7

*Peel v. BrooksAmerica Mortg. Corp.*,
   2012 WL 3808591 (C.D. Cal. Aug. 30, 2012) ........................................... 6, 19

*Petrie v. Elec. Game Card, Inc.*,
   308 F.R.D. 336 (C.D. Cal. 2015) ................................................................... 16

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ......................................................................... 17

*Purple Mountain Tr. v. Wells Fargo & Co.*,
   2022 WL 3357835 (N.D. Cal. Aug. 15, 2022) ........................................... 15-16

*In re Snap Inc. Sec. Litig.*,
   334 F.R.D. 209 (C.D. Cal. 2019) ............................................................ *passim*

*Sudunagunta v. NantKwest, Inc.*,
   2018 WL 3917865 (C.D. Cal. Aug. 13, 2018) .......................................... 5, 8, 18

*Takiguchi v. MRI Int'l, Inc.*,
   2016 WL 1091090 (D. Nev. Mar. 21, 2016) .................................................. 11

*Todd v. STAAR Surgical Co.*,
   2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ............................................... 13, 14

*Tran v. Sioux Honey Ass'n, Coop.*,
   2020 WL 905571 (C.D. Cal. Feb. 24, 2020) ................................................ 7, 9

*Unger v. Amedisys Inc.*,
   401 F.3d 316 (5th Cir. 2005) ......................................................................... 16

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
   2013 WL 2247394 (C.D. Cal. May 9, 2013) ................................................. 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

*In re VeriSign, Inc. Sec. Litig.*,
    2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ................................................................ 5

*Vinh Nguyen v. Radient Pharms. Corp.*,
    287 F.R.D. 563 (C.D. Cal. 2012) ................................................................ 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................ 6

**Statutes**

15 U.S.C. § 77k ................................................................ 18

15 U.S.C. § 77l ................................................................ 18

**Other Authorities**

17 C.F.R. § 239.13 ................................................................ 15

Fed. R. Civ. P. 23 ................................................................ 9, 19

## INDEX OF ABBREVIATIONS

| ABBREVIATION | DEFINITION |
|---|---|
| ¶___ | Citations to paragraphs in the AC (defined herein) |
| Action | Refers to the above-entitled securities class action |
| BOM | Bill of materials—all components, parts, and materials needed to build each R1 (defined herein) vehicle and includes the battery and motors |
| COGS | Cost of goods sold |
| AC | Amended Consolidated Complaint for Violations of the Federal Securities Laws (Doc. 150) |
| Defendants | Rivian Defendants and Underwriter Defendants (both defined herein) |
| Director Defendants | Karen Boone, Jay Flatley, Peter Krawiec, Rose Marcario, Sanford Schwartz, and Pamela Thomas-Graham |
| Ex. | Exhibits attached to the Nirmul Decl. (defined herein) |
| Exchange Act Claims | Plaintiffs' claims brought under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 |
| Exchange Act Defendants | Rivian and the Executive Defendants (both defined herein) |
| Executive Defendants | Robert J. Scaringe, Claire McDonough, and Jeffrey R. Baker |
| EV | Electric Vehicle |
| FE | Former Rivian employees |
| IPO | Initial Public Offering |
| Item 105 | 17 C.F.R. § 229.105 |
| Item 303 | 17 C.F.R. § 229.303 |
| Kessler Topaz | Kessler Topaz Meltzer & Check, LLP |
| McDonough | Defendant Claire McDonough |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

| ABBREVIATION | DEFINITION |
|---|---|
| Mitts Rpt. | Expert Report of Joshua Mitts, Ph.D., dated December 1, 2023, attached as Ex. 2 to the Nirmul Decl. |
| Nirmul Decl. | Declaration of Sharan Nirmul in Support of Plaintiffs' Motion for Class Certification |
| Nye Rpt. | Expert Report of Zachary Nye, Ph.D., dated December 1, 2023, attached as Ex. 1 to the Nirmul Decl. |
| Offering Documents | Rivian's Registration Statement and Prospectus (both defined herein) |
| Plaintiffs | Lead Plaintiff Sjunde AP-Fonden and Additional Plaintiff James Stephen Muhl |
| Prospectus | Prospectus filed on Form 424B4 dated November 9, 2021 and filed with the SEC (defined herein) on November 12, 2021 |
| R1 | R1 is comprised of the R1S and R1T (both defined herein) |
| R1S | Rivian's electric three-row seven-passenger sports utility vehicle |
| R1T | Rivian's electric two-row five-passenger pickup truck |
| Registration Statement | Rivian's Registration Statement filed on Form S-1 with the SEC on October 1, 2021, and declared effective on November 9, 2021, together with its amendments filed with the SEC on October 22, 2021, November 1, 2021, and November 5, 2021 |
| Rivian | Rivian Automotive, Inc. |
| Rivian Defendants | Rivian, the Director Defendants and the Executive Defendants (defined herein) |
| Rivian's IPO or the IPO | Rivian's November 10, 2021 initial public offering (IPO) |
| Rule(s) | Federal Rule(s) of Civil Procedure |
| Scaringe | Defendant Robert J. Scaringe |
| SEC | U.S. Securities and Exchange Commission |

| ABBREVIATION | DEFINITION |
|---|---|
| Securities Act Claims | Plaintiffs' claims brought under Section 11, Section 12(a)(2), and Section 15 of the Securities Act of 1933 |
| Underwriter Defendants | Morgan Stanley & Co. LLC, Goldman Sachs & Co., LLC, J.P. Morgan Securities LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Allen & Company LLC, BofA Securities, Inc., Mizuho Securities USA LLC, Wells Fargo Securities, LLC, Nomura Securities International, Inc., Piper Sandler & Co., RBC Capital Markets, LLC, Robert W. Baird & Co. Inc., Wedbush Securities Inc., Academy Securities, Inc., Blaylock Van, LLC, Cabrera Capital Markets LLC, C.L. King & Associates, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Co., Inc., Siebert Williams Shank & Co., LLC, and Tigress Financial Partners LLC |

Lead Plaintiff Sjunde AP-Fonden ("Lead Plaintiff" or "AP7") and Additional Plaintiff James Stephen Muhl (collectively, "Plaintiffs") respectfully submit this memorandum of points and authorities in support of their Motion to: (i) certify a class pursuant to Rules 23(a) and 23(b)(3) consisting of all persons and entities who purchased or otherwise acquired Rivian Class A common stock ("Rivian Common Stock") between November 10, 2021 and March 10, 2022, inclusive ("Class Period"), and were damaged thereby ("Class");[1] (ii) appoint Plaintiffs as Class Representatives; and (iii) appoint Kessler Topaz as Class Counsel and Larson LLP as Liaison Counsel.

## I.    INTRODUCTION[2]

This is a federal securities class action arising out of the seventh largest IPO in U.S. history: the November 2021 IPO of EV-manufacturer Rivian, which raised over $13 billion from public investors. Plaintiffs contend that the Offering Documents Defendants used to effectuate Rivian's IPO (and certain of their post-IPO statements to investors) violated the federal securities laws by concealing the fact that the "material costs for each R1 EV far exceeded its sale price and that substantively raising prices was inevitable." Doc. 172 at 2. Specifically, by no later than the date of the IPO, Defendants knew—but failed to disclose to investors—that R1 material costs vastly exceeded the vehicles' retail prices, and they had internally acknowledged that, as a result, R1 prices had to be increased. *Id.* at 5-6. Less than four months after the IPO, Rivian announced a massive price hike on all R1s, and its stock price plummeted. By March 14, 2022, Rivian Common Stock was trading at ***less than half*** of its $78 IPO price, and its shareholders had suffered massive losses.

---

[1]    The Class includes those who purchased Rivian Common Stock pursuant and/or traceable to the Offering Documents, and excludes Defendants and their families, the officers, directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

[2]    Unless otherwise noted all emphasis is added, and all internal citations, quotations, and original emphasis omitted and original alterations are incorporated.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

As the Ninth Circuit has explained, class actions alleging violations of the federal securities laws fit Rule 23 "like a glove." *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995). This case is no exception.

*First*, because the Class is comprised of thousands of investors who purchased Rivian Common Stock in the IPO and during the Class Period, joinder of all Class members would be impracticable, if not impossible.

*Second*, this Action involves numerous common issues of law and fact, including whether: (i) whether Defendants misrepresented or omitted material facts; (ii) whether the Exchange Act Defendants acted with scienter; (iii) whether Rivian Common Stock was artificially inflated (and by how much); and (iv) whether the Executive Defendants and Director Defendants had control over Rivian.

*Third*, Plaintiffs' claims are typical of the proposed Class because they arise from the same common course of misconduct, are based on common legal claims, and will be proven by the same evidence. Accordingly, the "permissive" standard for typicality is satisfied.

*Fourth*, the proposed Class Representatives are qualified and adequate to represent the Class, each has a significant financial interest in the outcome of this litigation, and each has demonstrated their commitment to vigorously represent the interests of the Class. Likewise, proposed Class Counsel is highly experienced in complex securities class actions and has steadfastly litigated this case.

*Fifth*, common questions predominate over individual questions. The primary elements of Plaintiffs' claims are issues that affect all Class members and will be established with common proof. Moreover, the fraud-on-the-market presumption establishes reliance for Plaintiffs' Exchange Act claims. Similarly, while not required to satisfy predominance, damages are subject to common methodologies and formulas that can be applied classwide.

*Finally*, the class action device is a superior method for fairly and efficiently adjudicating this Action. Given the large number of Rivian investors who purchased in the IPO and during the Class Period, it would be far too costly and inefficient for each Class member to litigate separate, fragmented actions.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Founded by Defendant Scaringe, Rivian manufactures EVs. ¶30. In November 2018, Rivian announced base model prices of $69,000 and $72,500 for the R1T and R1S, respectively, and began accepting pre-orders. ¶¶61, 65-66. In 2020, Rivian decreased the base prices for the R1T and R1S to $67,500 and $70,000, respectively. ¶87. Rivian set its pricing based in part on a third-party consultant's estimate for the cost of the R1 BOM. ¶113. Following a December 2019 meeting to assess the validity of its consultant's BOM cost estimates, Rivian placed its internal Cost Engineering Group in charge of costing the R1 components except the battery. ¶¶115-16. Thereafter, as Rivian continued to source R1 components, the BOM cost soared. ¶¶117-18. By September 2021, when Rivian began manufacturing its first R1 vehicles, the total R1 BOM cost had ballooned to over $100,000—well above base R1 retail prices. *Id.* The gap between the R1's retail prices and BOM costs guaranteed that Rivian would lose tens of thousands of dollars on each R1 vehicle sold on material costs alone—without regard to its massive fixed costs. ¶¶118-21.

In August 2021, Rivian announced its intent to go public in an IPO underwritten by some of the world's largest investment banks, including Morgan Stanley, Goldman Sachs, and J.P. Morgan. ¶¶93, 258. Plaintiffs contend that the Offering Documents, which Defendants used to raise funds from public investors, and Defendants' post-IPO disclosures misstated and omitted material facts including that: (i) the BOM cost to build each R1 had been rising for years prior to the IPO and exceeded its retail price at the time of the IPO; (ii) absent a significant reduction in the R1's BOM cost and/or a substantial increase in prices, Rivian was guaranteed to lose tens of thousands of dollars on each R1 sold (including its 55,000+ pre-orders as of the date of the IPO) even as production volumes increased; and (iii) a substantial increase R1 prices was inevitable. ¶¶156-71, 294-312.

Through its IPO, Rivian raised more than $13.7 billion from investors. ¶¶63, 68, 102, 201. For their efforts, the Underwriter Defendants received more than $195 million in fees and commissions, in addition to their profits on a "greenshoe" of 22 million shares. ¶¶260, 272. Less than four months after the IPO, on March 1, 2022, Rivian announced price

increases of roughly 17% and 20% on virtually all R1 models. ¶¶142, 175-76. In response to this news, Rivian's stock price dropped more than 20%, and by March 14, 2022, it had collapsed to $35.83—less than half of its IPO price. ¶¶178, 186.

While Defendants have yet to produce a single document in discovery,[3] their unsuccessful efforts to attack Plaintiffs' investigation by deposing two of the FEs cited in the AC have corroborated Plaintiffs' core allegations. Both FE-3 and FE-4 testified that R1 BOM costs exceeded R1 retail prices. *See* Ex. 4 at 83:17-22 (FE-3 testifying that "the cost of the BOM was significantly higher than the revenues" and that "when a single vehicle is sold, the revenue for that vehicle was somewhere in the neighborhood of $80,000, and the BOM itself was much higher than that number"); Ex. 5 at 83:19-24 (FE-4 testifying that R1 BOM costs were "well over a hundred thousand" dollars including the battery). FE-3 further spoke about the implications of this upside-down pricing structure, testifying that "even if you had a free factory and free labor, you'd still take a loss on every vehicle sold." Ex. 4 at 83:22-24. Further, FE-1, who only appeared in the prior complaint, testified that "[t]he bill of material [cost] increased" between 2018 and 2021 and that there was "a general trend" of R1 BOM costs "going up." Ex. 3 at 89:13-15, 187:19-23.

Moreover, these witnesses confirmed the allegations attributed to them in the AC. For example, FE-4 confirmed that it was "a true statement" that "Rivian may have gained some ability to negotiate its material costs downward once its production volumes doubled, but...those savings would be in the vicinity of just 5 percent." Ex. 5. at 79:15-80:25; *see* ¶120. FE-4 also confirmed that Scaringe rejected a proposal to reduce the cost for each R1 by about $2,000 because he wanted to use real wood for the vehicle interior. Ex. 5 at 50:4-20, 52:3-13; *see* ¶195. FE-4 further testified that Project X "tracked the total costs of the

---

[3]    Defendants were served with document requests on July 21, 2023, and interrogatories on July 21, 2023 and October 24, 2023. To date, despite extensive efforts to meet and confer on Defendants' blanket objections to Plaintiffs' discovery requests, Defendants have yet to produce a single document responsive to Plaintiffs' discovery requests or interpose substantive responses to Plaintiffs' interrogatories. Nonetheless, Defendants have opted to proceed with depositions of individuals that Plaintiffs identified in their initial disclosures, without producing any documents from these individuals' files.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

vehicle," and that it was his understanding that Rivian's senior executives had access to Project X. Ex. 5 at 66:25-67:2, 66:10-22; *see* ¶193. Similarly, FE-3 confirmed that the R1 BOM cost was included in regularly-prepared Revenue and Margin Reports, which were "created primarily for Claire [McDonough]." Ex. 4 at 48:19-24, 65:4-6, 83:10-13; *see* ¶118. FE-3 also testified that "[g]enerally speaking, the reason for the price increase was that the vehicles were much more expensive than they were selling for" and that "the price increase was an attempt to mitigate the loss on each vehicle sold." Ex. 4 at 63:16-21; *see* ¶118.

## III.    ARGUMENT

### A.    Securities Cases Are Particularly Well-Suited for Class Action Treatment

"Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants." *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005). Indeed, "[t]he Ninth Circuit has [] recognized that class actions…have proved useful where a large number of purchasers or holders of securities claim to have been defrauded by a common course of dealing on the part of the defendants." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009). Therefore, "any doubts a court has about class certification should be resolved in favor of certification." *Sudunagunta v. NantKwest, Inc.*, 2018 WL 3917865, at *3 (C.D. Cal. Aug. 13, 2018); *see also In re Netsol Techs., Inc. Sec. Litig.*, 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016) ("[T]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws.").

This Action is similar to the numerous recent securities cases in this District where classes were certified, including those brought following an IPO. *See, e.g.*, *Karinski v. Stamps.com, Inc.*, 2020 WL 6572660, at *9 (C.D. Cal. Nov. 9, 2020); *Milbeck v. TrueCar, Inc.*, 2019 WL 2353010, at *5 (C.D. Cal. May 24, 2019); *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 230 (C.D. Cal. 2019); *Sudunagunta*, 2018 WL 3917865, at *9.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## B.    The Proposed Class Satisfies Rule 23(a)

Under Rule 23(a), a party seeking class certification must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Here, each prerequisite is met.

### 1.    Numerosity Is Satisfied

Rule 23(a)(1) requires the class be so numerous that joinder of all class members is "impracticable." *In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018) ("It's generally accepted that when a proposed class has at least forty members, joinder is presumptively impracticable based on numbers alone."); *Peel v. BrooksAmerica Mortg. Corp.*, 2012 WL 3808591, at *4 (C.D. Cal. Aug. 30, 2012) (Staton, J.) (subclass consisting of up to 781 members satisfied numerosity). "Courts generally find that the numerosity requirement is met in securities fraud suits involving nationally traded stocks." *Snap*, 334 F.R.D. at 226; *see also Milbeck*, 2019 WL 2353010, at *1-2.

Here, the Class consists of potentially thousands of investors in Rivian Common Stock, which traded on Nasdaq throughout the Class Period. Indeed, over 175.9 million shares of Rivian Common Stock were sold in the IPO, and during the Class Period, an average of 98.59 million shares traded on a weekly basis. Nye Rpt. ¶¶13, 27. In addition, more than 650 institutional investors held Rivian Common Stock during the Class Period. *Id.* ¶42. Numerosity is easily satisfied.

### 2.    Commonality Is Satisfied

The commonality requirement has been "construed permissively," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), and the Supreme Court has recognized that "even a single common question" will suffice, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Thus, "where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).

Here, there are numerous common questions of law and fact, including:

(i)    Whether Defendants misrepresented or omitted material facts;

(ii)    Whether the Exchange Act Defendants acted with scienter;

(iii)    Whether Rivian Common Stock was artificially inflated (and by how much); and

(iv)    Whether the Executive Defendants and Director Defendants had control over Rivian.

Courts routinely find that common questions of law and fact such as these satisfy Rule 23(a)(2). *See, e.g.*, *Milbeck*, 2019 WL 2353010, at *2 (commonality satisfied when "investors were defrauded by the same misleading statements over the same period of time, and suffered similar losses as a result"); *Snap*, 334 F.R.D. at 226 (same). This is because these cases "all involve the same basic legal claims: securities frauds" and "these legal claims are based on the same nucleus of operative facts." *Conn. Ret. Plans & Tr. Funds v. Amgen, Inc.*, 2009 WL 2633743, at *5 (C.D. Cal. Aug. 12, 2009), *aff'd* 660 F.3d 1170 (9th Cir. 2011).

### 3.    Typicality Is Satisfied

Under Rule 23(a)(3)'s "permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *Tran v. Sioux Honey Ass'n, Coop.*, 2020 WL 905571, at *4 (C.D. Cal. Feb. 24, 2020) (Staton, J.). Specifically, the Ninth Circuit does not require the named plaintiffs' injuries to be "identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Parsons*, 754 F.3d at 685; *see also Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *5 (N.D. Cal. Mar. 16, 2016) ("[T]he focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff.").

Here, Plaintiffs' and the Class's claims arise from Defendants' common course of misconduct and assert common legal theories—alleged violations of Sections 10(b) and 20(a) of the Exchange Act and Sections 11, 12(a)(2) and 15 of the Securities Act—that will

be proven by common evidence on a classwide basis. Plaintiffs, like the other Class members, purchased Rivian Common Stock during the Class Period at prices artificially inflated by Defendants' misconduct and suffered damages when the relevant truth concealed by Defendants' misrepresentations was disclosed to the market and the price of Rivian Common Stock declined. ¶¶28-29; Doc. 150-1 & 150-2 (Plaintiffs' executed certifications); Exs. 8 & 9 (same).

This alignment of factual allegations and legal theories establishes typicality. *See, e.g., Bee, Denning, Inc. v. Cap. Alliance Grp.*, 310 F.R.D. 614, 626 (S.D. Cal. 2015) ("Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability."); *Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 586 (C.D. Cal. 2012) (finding typicality met where "[l]ike the proposed class members, the class representatives purchased shares…at a time that the registration statement and other offering materials contained material misrepresentations and omissions").

Defendants have asserted "traceability" as an affirmative defense (Doc. 183 at 68; Doc. 184 at 91) and thus may assert tracing-related arguments in opposing class certification. However, because Plaintiffs have demonstrated that they purchased shares in, or immediately after, the November 2021 IPO, any such argument is irrelevant. *See Sudunagunta*, 2018 WL 3917865, at *5-6, *9 ("Lead Plaintiffs have met their burden with respect to traceability [by showing they purchased in the IPO], and Defendants' argument that Lead Plaintiffs lack statutory standing and are therefore subject to unique defenses that render them atypical is unpersuasive."). Nevertheless, Plaintiffs submit the Expert Report of Professor Joshua Mitts, Ph.D., wherein Dr. Mitts opines that traceability can be established using common evidence and a common classwide methodology. *See* Ex. 2.

### 4. Adequacy Is Satisfied

Rule 23(a)(4) requires the named parties to "fairly and adequately protect the interests of the class." In order to make this determination courts consider two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members

and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Both prongs are met here.

*First*, there are no conflicts of interests between Plaintiffs or their counsel and the Class. Rather, as explained above, the interests of Plaintiffs and their counsel are fully aligned with those of the Class. *See supra* Section III.B.3. Plaintiffs therefore have every reason to continue prosecuting this Action vigorously on behalf of themselves and other Class members. *See Tran*, 2020 WL 905571, at *6 (proposed class representative's "claims are co-extensive with the claims of proposed class members"); *In re HiEnergy Techs., Inc. Sec. Litig.*, 2006 WL 2780058, at *4 (C.D. Cal. Sept. 26, 2006) (similar).

*Second*, Plaintiffs have demonstrated their adequacy and commitment to prosecuting and supervising this Action on behalf of the Class by, among other things, retaining highly-qualified and experienced counsel, regularly communicating with counsel regarding the status of the case, and reviewing and authorizing submissions to the Court. Additionally, Plaintiffs have expressed their willingness to serve as Class Representatives in this Action and to sit for depositions. *See* Doc. 150-1 & 150-2 (Plaintiffs' certifications); Exs. 8 & 9 (same).

Moreover, Plaintiffs and their counsel, Kessler Topaz and Larson LLP, have demonstrated their adequacy by, among other things: (i) investigating and filing the AC; (ii) successfully opposing Defendants' motions to dismiss; (iii) retaining and consulting with experts; and (iv) propounding document requests, interrogatories, and nonparty discovery requests. Kessler Topaz possesses extensive experience litigating complex securities class actions. *See* Ex. 6. Likewise, Larson LLP has extensive experience in complex litigation, including class actions, and substantial experience litigating within the

Central District of California. *See* Ex. 7. The Court should appoint Kessler Topaz as Class Counsel and Larson LLP as Liaison Counsel under Rule 23(g).[4]

## C.    The Proposed Class Satisfies Rule 23(b)(3)

The Class also satisfies Rule 23(b)(3), which requires that: (i) common questions of law or fact "predominate" over individual issues; and (ii) a class action to be "superior" to other available methods of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809-10 (2011) ("*Halliburton I*").

### 1.    Predominance Is Satisfied

The Supreme Court has explained that where, as here, claims are based upon violation of the securities laws, "[p]redominance is a test readily met." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022; *see also In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 530 (N.D. Cal. 2009) ("[A]ll class members are unified by an interest in proving the same common course of conduct."). Further, Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof. What the rule does require is that common questions *predominate* over any questions affecting only individual class members." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (emphasis in original).

---

[4]    As noted above, Defendants' counsel previously questioned, before this Court, the integrity of Plaintiffs' counsel's investigation and the veracity of allegations attributed to Rivian FEs in the AC. Doc. 170 at 20:6-8 ("I can tell the Court that I have spoken to [FE-4 and FE-5], and they were shocked when they saw the [AC]."). Those representations have proved to be inaccurate. For one thing, it is undisputed that Defendants had not spoken to FE-4 at the time their counsel made these representations. *See, e.g.*, Doc. 187-13, ¶5 (Defendants admitting that "the Rivian Defendants subpoenaed" a former Rivian employee "on the ***mistaken*** belief that he was FE-4"). Moreover, as discussed above, the depositions Defendants have conducted prior to producing any document discovery in this case have confirmed the veracity of the AC's allegations and underscore the strength of Plaintiffs' claims. *See supra* Section II.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### a.  Plaintiffs' Securities Act Claims

Determining whether common questions predominate "begins, of course, with the elements of the underlying cause of action." *Halliburton I*, 563 U.S. at 809. For their Securities Act Claims, Plaintiffs "need not show scienter, reliance, or loss causation." *Katz*, 287 F.R.D. at 582. Instead, they "need only show a material misstatement or omission" in the Offering Documents. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983); *see also* Katz, 287 F.R.D. at 582 (same).[5] Thus, the core questions raised by Plaintiffs' Securities Act claims—i.e., (i) whether there was an actionable misrepresentation or omission in the IPO Offering Documents; and, if so, (ii) whether it was material—are common to all class members and susceptible to classwide proof. Under these circumstances, predominance is easily established. *Amgen*, 568 U.S. at 459 ("The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class."); *Katz*, 287 F.R.D. at 586 ("[T]he core inquiry that underlies the Section 11 and Section 15 claims is whether the prospectus and registration statement contained material, false information…plainly a question common to the claims of the proposed class members.").

### b.  Plaintiffs' Exchange Act Claims

To recover under Section 10(b), Class members must establish: "(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Amgen*, 568 U.S. at 460-61. It is axiomatic that "most of these elements are clearly susceptible to classwide proof, particularly the alleged misrepresentations made by the defendants, scienter, and loss [causation]." *Takiguchi v. MRI Int'l, Inc.*, 2016 WL 1091090, at *7 (D. Nev. Mar. 21, 2016); *accord Amgen*, 568 U.S. at 475 ("essential

---

[5]    Plaintiffs here need not show reliance because they each purchased Rivian Common Stock pursuant or traceable to the IPO, and during the Class Period. *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013) ("[A] plaintiff who purchases a security within twelve months of the registration statement need not show reliance to bring a Section 11 claim.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

elements" of a Section 10(b) claim are subject to common proof). Moreover, materiality and loss causation are common issues and need not be proved at class certification. *See Amgen*, 568 U.S. at 469-70 (materiality); *Halliburton I*, 563 U.S. at 809-15 (loss causation). Thus, "[w]hether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." *Halliburton I*, 563 U.S. at 810.

Here, reliance is a common question susceptible to classwide proof because Plaintiffs and the Class are entitled to rely on the fraud-on-the-market presumption established by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and re-affirmed in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 268 (2014) ("*Halliburton II*"). Under the fraud-on-the-market presumption, reliance on material statements and omissions is presumed where the security traded in an efficient market. *Basic*, 485 U.S. at 247. The fraud-on-the-market presumption is based on the "premise...that the price of a security traded in an efficient market will reflect all publicly available information about a company; accordingly, a buyer of the security may be presumed to have relied on that information in purchasing the security." *Amgen*, 568 U.S. at 458; *see also Halliburton II*, 573 U.S. at 270 ("[T]he market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations."). As a result, "reliance on any public material misrepresentations may be presumed for purposes of a Rule 10b-5 action." *Halliburton II*, 573 U.S. at 268.

To invoke the fraud-on-the-market presumption at class certification, a plaintiff must demonstrate that: (i) the alleged misstatements were made publicly; (ii) class members purchased shares between the date of the misstatement and the disclosure of the full truth; and (iii) the market for the security at issue was efficient. *See id.* at 277-78.[6] Plaintiffs can establish each of these prerequisites. *First*, each alleged misrepresentation was a public statement addressed to the marketplace. *See, e.g.*, ¶156. *Second*, Plaintiffs purchased Rivian

---

[6] While a plaintiff must ultimately establish materiality to invoke the presumption, as noted above, materiality need not be proved at class certification. *See Amgen*, 568 U.S. at 469-70.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Common Stock after Defendants' misrepresentations were made and before full disclosure of the relevant truth. *See* Doc. 150-1 and 150-2. *Third*, as set forth below and in the Nye Report, Rivian Common Stock traded in an efficient market during the Class Period.

Throughout the Class Period, Rivian Common Stock traded on Nasdaq, and "[c]ourts have found a stock's listing on NASDAQ to be a good indicator of efficiency." *Loritz v. Exide Techs.*, 2015 WL 6790247, at *9 (C.D. Cal. July 21, 2015); *see also* Nye Rpt. ¶23. Indeed, courts routinely hold that Nasdaq is a presumptively efficient market. *See, e.g.*, *Brown v. China Integrated Enery Inc.*, 2015 WL 12720322, at *16 (C.D. Cal. Feb. 17, 2015) (listing on Nasdaq is "generally a strong indicator of market efficiency"); *Angley v. UTI Worldwide Inc.*, 311 F. Supp. 3d 1117, 1121 n.4 (C.D. Cal. 2018) (similar).

Moreover, when analyzing market efficiency, "the Ninth Circuit looks to the nonexclusive factors set out in *Cammer v. Bloom*, 711 F. Supp. 1264, 1285-87 (D.N.J. 1989)." *Loritz*, 2015 WL 6790247, at *9. These factors are: (i) a large weekly trading volume; (ii) the existence of a significant number of analyst reports; (iii) the existence of market makers and arbitrageurs in the security; (iv) eligibility to file an S-3 registration statement; and (v) cause-and-effect relationship between unexpected corporate disclosures and resulting stock price movements. *Id.*; *see also Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *6 (C.D. Cal. Jan. 5, 2017) (analyzing "the five *Cammer* factors to determine whether the market for [defendant company's] stock was efficient."). As confirmed in the Nye Report and discussed below, each *Cammer* factor supports a finding that Rivian Common Stock traded in an efficient market throughout the Class Period. Nye Rpt. ¶24.

*Cammer* **Factor 1**: An average weekly trading volume ("AWTV") of 2.0% or more of outstanding shares justifies a "strong presumption that the market for the security is an efficient one." *Todd*, 2017 WL 821662, at *7. During the Class Period, Rivian's AWTV was ***11.1%*** of all outstanding shares. Nye Rpt. ¶27.

*Cammer* **Factor 2**: The existence of analysts following a stock indicates "that the market would rapidly and fully incorporate information into the stock price because analyst reports would likely be closely reviewed by investment professionals, who would in turn

make buy/sell recommendations to client investors." *Brown*, 2015 WL 12720322, at *17. During the Class Period, over 60 analyst reports were issued by at least 17 analyst firms regarding Rivian—further supporting market efficiency. Nye Rpt. ¶¶31, 34; *see also Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 WL 2247394, at *19 (C.D. Cal. May 9, 2013) (fact that "several security analysts from major brokerage firms followed [defendant's] stock and wrote reports that were distributed to customers of those firms and made publicly available" supported market efficiency).

*Cammer* **Factor 3**: The existence of market makers and arbitrageurs, who can "react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level," supports a finding of market efficiency. *Cammer*, 711 F. Supp. at 1286-87. According to *Cammer*, "[t]en market makers for a security would justify a substantial presumption" of market efficiency. *Id.* at 1293. Here, over 120 market makers traded Rivian Common Stock during the Class Period. Nye Rpt. ¶37.

Additionally, the level of short interest, the degree of institutional ownership, and the tightness of bid-ask spreads provide further evidence that arbitrage activity for Rivian's stock was prevalent during the Class Period. *Id.* ¶38; *Todd*, 2017 WL 821662 at *8 ("[W]here institutional investors...are involved in trading a particular stock, their presence may be similar to the presence of market-makers and arbitrageurs: large investors, with more money at stake, may be more likely to inform themselves well before trading."). Here, arbitrageurs were not constrained in their ability to short Rivian Common Stock, with the short interest being 3.4% of Rivian shares outstanding during the Class Period. Nye Rpt. ¶40. In addition, institutional investors held, on average, over 94% of the shares available to trade, and over 650 institutional investors held Rivian stock during the Class Period. *Id.* ¶42. Finally, as discussed below, the bid-ask spreads on Rivian stock were smaller than those of randomly sampled stocks. *Id.* ¶58. Each of these facts supports a "substantial presumption" of efficiency. *Cammer*, 711 F. Supp. at 1293.

*Cammer* **Factor 4**: A company is eligible to file a Form S-3 registration statement if it has been subject to SEC reporting requirements for at least twelve calendar months, it has

filed all required documents in a timely fashion during the preceding twelve calendar months, and it possesses a market capitalization of at least $75 million. 17 C.F.R. § 239.13. S-3 eligibility is an indicator of market efficiency because the "S-3 form is predicated on the [SEC]'s belief that the market operates efficiently for these companies." *Brown*, 2015 WL 12720322, at *17.

As set forth in the Nye Report, Rivian's market capitalization was as high as $153.3 *billion* during the Class Period—well above the $75 million requirement for S-3 eligibility. Nye Rpt. ¶56. While Rivian was ineligible to file a Form S-3 during the Class Period, that was simply because it had not yet been subject to SEC reporting requirements for more than a year. Where S-3 ineligibility exists "only because of timing factors rather than because the minimum stock requirements set forth in the instructions to Form S-3 were not met," "this factor will not necessarily weigh against a finding of market efficiency." *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 101 (S.D.N.Y. 2009); *accord Cammer*, 711 F. Supp. at 1287. Notably, Rivian filed a Form S-3 after the Class Period. Nye Rpt. ¶48.

*Cammer* **Factor 5**: This factor examines whether a plaintiff can illustrate "over time, a cause and effect relationship between company disclosures and resulting movements in stock price." *Cammer*, 711 F. Supp. at 1291. To analyze this relationship, Dr. Nye performed an event study—a universally-accepted methodology to determine whether a particular stock price reacts to new company-specific information. Nye Rpt. ¶¶50-51; *see also Halliburton II*, 573 U.S. at 280.

In particular, Dr. Nye analyzed Rivian's stock price movements on days when Rivian released information related to its quarterly or year-end financial performance ("event dates"). Dr. Nye's analysis demonstrates that Rivian Common Stock experienced a statistically significant price reaction on 67% of event dates. Nye Rpt. ¶53. Dr. Nye concluded that Rivian's stock price reacted to the release of new company-specific information, which supports a finding of market efficiency. *Id.* ¶¶54-55; *see also, e.g.*, *Purple Mountain Tr. v. Wells Fargo & Co.*, 2022 WL 3357835, at *5 (N.D. Cal. Aug. 15, 2022) (market efficiency established where three earnings announcements were analyzed

finding "statistically significant price movement on just one date"); *McIntire v. China MediaExpress Hldgs, Inc.*, 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014) (market efficiency established where statistically significant movements were observed on 42% of news days); *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 635 (3d Cir. 2011) (market efficiency established where statistically significant movements were observed on 60% of news days).

In addition to the *Cammer* factors, some courts have considered the following factors in examining market efficiency: (i) market capitalization; (ii) bid-ask spread; and (iii) public float. *See, e.g.*, *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 349 (C.D. Cal. 2015); *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 574-75 (C.D. Cal. 2012); *Unger v. Amedisys Inc.*, 401 F.3d 316, 323 (5th Cir. 2005); *Krogman v. Sterritt*, 202 F.R.D. 467, 477-78 (N.D. Tex. 2001). Each of these factors provides additional evidence of market efficiency with respect to Rivian Common Stock.

**Market Capitalization**. Market capitalization "may be an indicator of market efficiency because there is a greater incentive for stock purchasers to invest in more highly capitalized corporations." *Krogman*, 202 F.R.D. at 478; *see also* Nye Rpt. ¶56. During the Class Period, Rivian's market capitalization was as high as $153.3 billion. Nye Rpt. ¶56. As of November 10, 2021, Rivian's market capitalization was greater than 95.3% of Nasdaq-listed stocks. *Id.* ¶57.

**Bid-Ask Spread**. The bid-ask spread is "the difference between the price at which investors are willing to buy the stock and the price at which current stockholders are willing to sell their shares." *Krogman*, 202 F.R.D. at 478; *see also* Nye Rpt. ¶43. The average and median bid-ask spreads on Rivian stock were smaller than those of randomly sampled stocks listed on the Nasdaq Global Select Market. Nye Rpt. ¶43. This low bid-ask spread supports a finding of market efficiency. *Id.* ¶44; *see In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 614 n. 83 (C.D. Cal. Dec. 9, 2009) ("A greater bid-ask spread may suggest decreased efficiency....").

**Public Float**. During the Class Period, there was an average of approximately 889.1 million Rivian shares outstanding with an average of 99.9% of shares held by non-

insiders. Nye Rpt. ¶59. These facts support a finding of market efficiency. *Id.*; *McIntire*, 38 F. Supp. 3d at 433 (public float of 31-43% "consistent with a finding of market efficiency").

For all of these reasons, the market for Rivian Common Stock was efficient during the Class Period, and Plaintiffs are therefore entitled to rely on the fraud-on-the-market presumption of reliance.

### c. Damages For Plaintiffs' Exchange Act and Securities Act Claims Can Be Calculated Through a Common Methodology

The Ninth Circuit has repeatedly held that "differences in damage calculations is not sufficient to defeat class certification." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification."); *Snap*, 334 F.R.D. at 216 ("[I]n the Ninth Circuit, the need to engage in individualized damages calculations alone cannot defeat class certification.").[7]

This black-letter law was not altered by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)—an antitrust case involving four disparate theories of liability and damages. As the Ninth Circuit recently explained, *Comcast* merely requires that "plaintiffs be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019); *see also Pulaski*, 802 F.3d at 986-88 (same); *Karinski*, 2020 WL 6572660, at *8 (same); *Milbeck*, 2019 WL 2353010, at *4 (same). As set forth above, Plaintiffs have plainly done so. *See* Nye Rpt. ¶63.

---

[7]    This is true even if Defendants elect to present a negative causation defense. *See, e.g.*, *In re Metro. Sec. Litig.*, 2008 WL 5102303, at *2 (E.D. Wash. Nov. 25, 2008) ("[D]efendants have not cited, and independent research has failed to uncover, a Section 11 case in which a court has ruled that the existence of a loss causation defense precludes certification under Rule 23(b)(3).").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

In any event, as discussed below, here, as in virtually all securities cases, the damages arising out of the alleged Exchange Act and Securities Act Claims can be calculated using well-established methodologies that can be applied classwide.

*Exchange Act Claims*. Courts in the Ninth Circuit routinely hold that common issues concerning damages predominate in Section 10(b) actions, where damages are subject to a well-settled out-of-pocket methodology that can easily be applied using a common formula. *See, e.g.*, *Karinski*, 2020 WL 6572660, at *9 ("Dr. Nye's damages methodology has been routinely accepted by courts examining these same issues at class certification."); *see also* Nye Rpt. ¶62 nn. 98, 99 (collecting cases endorsing the out-of-pocket methodology).

This case is no exception. Utilizing the standard out-of-pocket methodology, Dr. Nye will, at the appropriate time, quantify the amount of artificial inflation caused by Defendants' misconduct that existed in Rivian's Common Stock price on each day of the Class Period. *Id.* ¶¶60-65. This methodology directly aligns with Plaintiffs' theory of liability—i.e., that Rivian's Common Stock price was artificially inflated during the Class Period due to Defendant's misconduct. *Id*. Moreover, the evidence and methodology for calculating the daily artificial inflation, and thus damages, are both common to the Class and applicable on a classwide basis. *Id*.

*Securities Act Claims*. Damages under Sections 11 and 12(a)(2) of the Securities Act are calculated using statutory formulas common to all Class members. *See* 15 U.S.C. §§ 77k(e), 77l(a)(2); Nye Rpt. ¶¶67-70. Common issues concerning damages therefore predominate with respect to the Securities Act Claims. *See, e.g.*, *Snap*, 334 F.R.D. at 217, 220 (finding predominance where Dr. Nye's proposed damages model utilizes the statutory damages model under Section 11); *Sudunagunta*, 2018 WL 3917865, at *8 (noting that "damages under Section 11 are statutory and mechanical"); *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2013 WL 5789237, at *6 (C.D. Cal. Oct. 25, 2013) (predominance satisfied because "the calculation of damages will be governed by statutory formulas" under the Securities Act and "the amount of damages is invariably an individual question and does

1    not defeat class action treatment"); *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171,
2    1184 (N.D. Cal. 2017) (similar).

3              **d.    Plaintiffs' Control Person Claims**

4              Finally, whether the Executive Defendants and Director Defendants exercised
5    control over Rivian under Section 20 of the Exchange Act and Section 15 of the Securities
6    Act "constitutes a common question for all class members because if Plaintiffs are able to
7    prove a primary violation, the controlling person inquiry would not be specific to individual
8    class members." *Loritz v. Exide Techs.*, 2015 WL 12488514, at *5 (C.D. Cal. Dec. 17,
9    2015). Thus, predominance is established.

10             **2.    Superiority Is Satisfied**

11             Rule 23(b)(3) also requires the Court to determine that "a class action is superior to
12   other available methods for fairly and efficiently adjudicating the controversy." In assessing
13   superiority, Rule 23(b)(3) enumerates four factors that courts should consider: (i) the
14   interests of class members in "individually controlling the prosecution or defense of
15   separate actions"; (ii) "the extent and nature of any litigation concerning the controversy
16   already begun by or against class members"; (iii) "the desirability or undesirability of
17   concentrating the litigation of the claims in the particular forum"; and (iv) the manageability
18   of a class action. Each of these factors supports superiority.

19             *First*, the Class includes a large number of geographically dispersed investors whose
20   individual damages are likely small enough to render individual litigation prohibitively
21   expensive. *See, e.g.*, *Peel*, 2012 WL 3808591, at *8 ("[L]itigation costs would likely dwarf
22   potential recovery if each class member litigated individually.").

23             *Second*, concentrating this litigation in a single forum has numerous benefits,
24   including eliminating the risk of inconsistent adjudication and promoting the fair and
25   efficient use of the judicial system. *See, e.g.*, *Hatamian*, 2016 WL 1042502, at *10.

26             *Third*, with the exception of one action filed in California State Court, which the
27   Court dismissed on June 22, 2023 (as a result of a mandatory forum selection clause),
28

Plaintiffs are unaware of any other action asserting claims like those asserted here.[8] *LendingClub*, 282 F. Supp. 3d at 1185 (superiority established where federal court Securities Act class action was more advanced than, and scheduled for trial before, parallel state court action).

*Fourth*, there are no unusual manageability issues. *See, e.g.*, *In re Magma Design Automation Sec. Litig.*, 2007 WL 2344992, at *1 (N.D. Cal. Aug. 16, 2007) (class action "maintainable' in this case because [defendant company] treated . . . all of its shareholders in the same fashion").

Accordingly, Plaintiffs have established superiority.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to certify the proposed class, appoint Plaintiffs as Class Representatives, and appoint Kessler Topaz as Class Counsel and Larson LLP as Liaison Counsel.


Dated:  December 1, 2023              Respectfully submitted,

**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**

*/s/Sharan Nirmul*
SHARAN NIRMUL (*pro hac vice*)
snirmul@ktmc.com
DARREN J. CHECK (*pro hac vice*)
dcheck@ktmc.com
RICHARD A. RUSSO, JR. (*pro hac vice*)
rrusso@ktmc.com
ALEX B. HELLER (*pro hac vice*)
aheller@ktmc.com
AUSTIN W. MANNING (*pro hac vice*)
amanning@ktmc.com
280 King of Prussia Road
Radnor, PA 19807
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

---

[8]    That action is *Smith vs. Rivian Automotive, Inc.*, Orange County Sup. Ct. Case No.  30-2023-01310105-CU-SL-CXC.

-and-

JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Counsel for Lead Plaintiff Sjunde AP-Fonden and additional Plaintiff James Stephen Muhl and Lead Counsel for the Proposed Class*

**LARSON LLP**
STEPHEN G. LARSON (Bar No. 145225)
slarson@larsonllp.com
PAUL A. RIGALI (Bar No. 262948)
prigali@larsonllp.com
555 South Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

*Liaison Counsel for Lead Plaintiff Sjunde AP-Fonden and additional Plaintiff James Stephen Muhl and Liaison Counsel for the Proposed Class*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff Sjunde AP-Fonden and Additional Plaintiff James Stephen Muhl, certifies that this brief contains 6,884 words, which [choose one]:

  _X_  complies with the word limit of L.R. 11-6.1.

  ____  complies with the word limit set by court order

Dated: December 1, 2023                    _/s/Sharan Nirmul_____
                                            Sharan Nirmul

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION