**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Counsel for Class Representatives Sjunde AP-Fonden and James Stephen Muhl and Class Counsel for the Classes*

[Additional Counsel on signature page.]

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| CHARLES LARRY CREWS, JR., Individually and on Behalf of All Others Similarly Situated, riv<br><br>Plaintiffs,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., et al.,<br><br>Defendants. | Case No. 2:22-cv-01524-JLS-E<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 26, 2025<br>Time: 10:30 a.m.<br>Judge: Hon. Josephine L. Staton<br>Ctrm.: 8A, 8th Floor |

# REDACTED VERSION OF
# DOCUMENT FILED
# PROVISIONALLY UNDER SEAL

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................ iii

TABLE OF ABBREVIATIONS ........................................................................................ vi

NOTE ON CITATION FORMATS ................................................................................ viii

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................................... 4

III.  LEGAL STANDARDS .......................................................................................... 10

IV.   SECURITIES ACT CLAIMS ................................................................................ 11

    A.   TRIABLE ISSUES ON THE ELEMENT OF FALSITY EXIST ................ 11

        1.   Triable Issues Exist Concerning Whether the MD&A Section Violated Sections 11 and 12(a)(2) ...................................................... 11

            a.   Triable Issues Exist Regarding Defendants' Item 303 Violations.................................................................................. 11

            b.   Triable Issues Exist Regarding the Falsity of Statements 2-3 ............................................................................................ 13

        2.   Triable Issues Exist Regarding Whether the Risk Factors Violated Sections 11 and 12(a)(2) ...................................................... 15

            a.   Triable Issues Exist Regarding Defendants' Item 105 Violations.................................................................................. 15

            b.   Triable Issues Exist Regarding the Falsity of Statement 1 ....... 16

    B.   Triable Issues Exist Regarding Negative Causation ..................................... 18

        1.   Defendants Have Not Met Their Negative Causation Burden. .......... 18

        2.   Defendants' Truth-on-the-Market Arguments Fail ........................... 21

V.    EXCHANGE ACT CLAIMS ................................................................................. 22

    A.   Triable Issues Exist Regarding Falsity ......................................................... 22

        1.   Triable Issues Exist Regarding the Falsity of Statements 1-4 and 7 ...................................................................................................... 22

        2.   Triable Issues Exist Regarding the Falsity of Statements 5-6 ........... 22

        3.   Statements 4-6 Are Not Protected by the Safe Harbor ...................... 23

1

B.      Triable Issues Exist Regarding Scienter ........................................ 24

C.      Genuine Factual Disputes Exist Regarding Loss Causation ........................ 25

VI.   TRIABLE ISSUES EXIST REGARDING THE DIRECTORS'
      DILIGENCE, GOOD FAITH, AND CONTROL .................................... 26

A.      Triable Issues Exist Regarding Diligence ...................................... 26

B.      Triable Issues Exist Regarding Control ........................................ 28

C.      Triable Issues Exists Regarding Good Faith .................................... 29

VII.  CONCLUSION ............................................................ 29

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akerman v. Oryx Commc'ns Inc.*,
    810 F.2d 336 (2d Cir. 1987) ........................................................................ 20

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ................................................................... 24, 25

*In re Amgen Inc. Sec. Litig.*,
    544 F. Supp. 2d 1009 (C.D. Cal. 2008) ...................................................... 17

*In re Cirrus Logic Sec. Litig.*,
    946 F. Supp. 1446 (N.D. Cal. 1996) ........................................................... 14

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) .................................................................... 11

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................26-27

*In re CytRx Corp. Sec. Litig.*,
    2015 WL 5031232 (C.D Cal. July 13, 2015) .............................................. 29

*Davis v. Yelp, Inc.*,
    2021 WL 4923359 (N.D. Cal. Sept. 17, 2021) ......................................24-25

*Endo v. Albertine*,
    863 F. Supp. 708 (N.D. Ill. 1994) .............................................................. 27

*In re Facebook, Inc.*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013) ........................................................ 13

*In re Finisar Corp. Sec. Litig.*,
    2013 WL 211206 (S.D.N.Y. 2013) ............................................................. 14

*Gebhart v. SEC*,
    595 F.3d 1034 (9th Cir. 2010) .................................................................... 24

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) ............................................................... *passim*

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983) .................................................................................... 27

*Hildes v. Arthur Anderson LLP*,
    734 F.3d 854 (9th Cir. 2013) ............................................................... 18, 20

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Hollinger v. Titan Cap. Corp.*,
   914 F.2d 1564 (9th Cir. 1990) ............................................................................ 29

*In re Homestore.com, Inc. Sec. Litig.*,
   347 F. Supp. 2d 790 (C.D. Cal. 2004) .............................................................. 29

*Hsingching Hsu v. Puma Biotech, Inc.*,
   2018 WL 4945703 (C.D. Cal. Oct. 5, 2018) .................................................... 11

*In re Imperial Credit Indus. Sec. Litig.*,
   252 F. Supp. 2d 1005 (C.D. Cal. 2003) ............................................................ 21

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ............................................................................ 23

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   601 U.S. 257 (2024)........................................................................................... 11

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011).............................................................................................. 25

*Mineworkers' Pension Scheme v. First Solar, Inc.*,
   881 F.3d 750 (9th Cir. 2018) ............................................................ 19, 25, 26

*Estate of Najera v. City of Anaheim*,
   2017 WL 10544043 (C.D. Cal. July 10, 2017)................................................ 20

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ............................................................................ 25

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
   2020 WL 5757628 (S.D.N.Y Sept. 27, 2020) ...........................................15-16

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ......................................................................28-29

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) .................................................................. 17, 24

*In re Quality Sys. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) .......................................................................... 23

*Reckstin Family Tr. v. C3.ai, Inc.*,
   718 F. Supp. 3d 949 (N.D. Cal. 2024)............................................................. 29

*Royal Oak Ret. Sys. v. Juniper Networks*,
   2013 WL 2156358 (N.D. Cal. May 7, 2013)................................................... 17

*In re Software Toolworks Inc. Sec. Litig.*,
   50 F.3d 615 (9th Cir. 1994) .............................................................................. 26

*Soremekun v. Thrifty Payless, Inc.*,
   509 F.3d 978 (9th Cir. 2007) ............................................................... 18, 20

*In re SureBeam Corp. Sec. Litig.*,
   2005 WL 5036360 (S.D. Cal. Jan. 3, 2005) ................................................ 23

*In re Syntex Sec. Litig.*,
   855 F. Supp. 1086 (N.D. Cal. 1994) ......................................................... 29

*In re Tesla, Inc. Sec. Litig.*,
   2022 WL 1497559 (N.D. Cal. Apr. 1, 2022)............................................... 24

*In re Tesla, Inc. Sec. Litig.*,
   2022 WL 7374936 (N.D. Cal. Oct. 13, 2022) ............................................. 19

*In re Twitter, Inc. Sec. Litig.*,
   2020 WL 4187915 (N.D. Cal. Apr. 17, 2020)........................................ 14, 15

*United Ass'n Nat'l Fund v. Carvana*,
   759 F. Supp. 3d 926 (D. Ariz. 2024) ........................................................ 18

*Waswick v. Torrid Holdings*,
   2023 WL 9197563 (C.D. Cal. Dec. 1, 2023)............................................... 17

*In re WorldCom, Inc. Sec. Litig.*,
   2005 WL 638268 (S.D.N.Y. Mar. 21, 2005)............................................... 26

*In re ZZZZ Best Sec. Litig.*,
   1994 WL 746649 (C.D. Cal. Oct. 26, 1994) ............................................... 28

**Statutes**

15 U.S.C § 77k...............................................................................11, 15, 22, 26

15 U.S.C. § 77o.......................................................................................... 29

**Other Authorities**

17 C.F.R. § 229.303 ..................................................................................... 12

Fed. R. Civ. P. 56 ........................................................................................ 10

## TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| ASP | Average Selling Price |
| Behl | Jiten Behl, Chief Strategy Officer |
| Board | Rivian's Board of Directors |
| BOM | Bill of materials |
| COGS | Cost of Goods Sold |
| Defendants | Rivian Defendants, Morgan Stanley & Co., LLC, , Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Allen & Company LLC, BofA Securities Inc., Mizuho Securities USA LLC, Wells Fargo Securities, LLC, Nomura Securities International, Inc., Piper Sandler & Co., RBC Capital Markets, LLC, Robert W. Baird & Co. Inc. , Wedbush Securities Inc., Academy Securities Inc., Blaylock Van, LLC, Cabrera Capital Markets LLC, C.L. King & Associates, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Co., Inc., Siebert Williams Shank & Co., and Tigress Financial Partners LLC |
| Director Defendants | Scaringe, Boone, Schwartz, Marcario, Krawiec, Flatley, and Thomas-Graham |
| Dwyer | Gerald "Ger" Dwyer, Rivian's VP of Business Finance |
| FP&A | financial planning & analysis |
| Independent Directors | Boone, Schwartz, Marcario, Krawiec, Flatley, and Thomas-Graham |
| Individual Defendants | Scaringe, McDonough, Baker, Boone, Schwartz, Marcario, Krawiec, Flatley, and Thomas-Graham |
| Kohn | Jake Kohn, Director of R1 Program |
| LCNRV | Lower of cost or net realizable value |
| MD&A | Section in the Prospectus titled, "Management's Discussion & Analysis |
| Plaintiffs | Lead Plaintiff Sjunde AP-Fonden and additional Plaintiff James Stephen Muhl |
| Prospectus | Rivian's Prospectus Rule 424(b)(4), filed with the SEC on November 12, 2021 |
| R1 or R1 Program | R1T (all-electric pickup truck ) and R1S (a full-size sport utility vehicle) |
| Rivian or the Company | Defendant Rivian Automotive, Inc. |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Abbreviation | Definition |
|---|---|
| Rivian Defendants | Robert J. Scaringe ("Scaringe"), Claire McDonough ("McDonough"), Jeffrey R. Baker ("Baker"), Karen Boone ("Boone"), Sanford Schwartz ("Schwartz"), Rose Marcario ("Marcario"), Peter Krawiec ("Krawiec"), Jay Flatley ("Flately"), and Pamela Thomas-Graham ("Thomas-Graham") |
| S-1 | Form S-1 Registration Statement filed with the SEC on October 1, 2021, and amended the Form S-1/A Registration Statements with the SEC on October 22, 2021, November 1, 2021, November 5, 2021 |
| Solomon | Tom Solomon, Senior Director of Strategic Finance and Development |
| SOP | Start of R1 production in September 2021 |
| Underwriters | Defendants Morgan Stanley & Co. LLC; Goldman; Sachs & Co. LLC; J.P. Morgan Securities LLC; Barclays Capital Inc.; Deutsche Bank Securities Inc.; Allen & Company LLC; BofA Securities, Inc.; Mizuho Securities USA LLC; Wells Fargo Securities, LLC; Nomura Securities International, Inc.; Piper Sandler & Co.; RBC Capital Markets, LLC; Robert W. Baird & Co. Inc.; Wedbush Securities Inc.; Academy Securities, Inc.; Blaylock Van, LLC; Cabrera Capital Markets LLC; C.L. King & Associates, Inc.; Loop Capital Markets LLC; Samuel A. Ramirez & Co., Inc.; Siebert Williams Shank & Co., LLC; and Tigress Financial Partners LLC |

# NOTE ON CITATION FORMATS

Unless otherwise stated, all emphases and ellipses in citations used herein have been added and all quotations, internal quotation marks, citations, and all original emphases and alterations have been omitted.

Commonly used citations in this brief take the following form:

| Citation | Description |
| --- | --- |
| #[•] | Paragraphs to Plaintiffs' Statement of Genuine Disputes and Statement of Additional Material Facts |
| §[•] | Section in this Memorandum in Opposition to Defendants' Motion for Summary Judgment |
| Motion | Defendants' Notice of Motion and Motion for Summary Judgment (ECF 591) |
| MSJ [•] | Citations to Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment (ECF 591-1/599-1) |
| Order | The Court's July 3, 2023 Order Denying (1) Rivian Defendants' Motion to Dismiss (Doc. 152); and (2) Underwriter Defendants' Motion to Dismiss Doc. 153) (ECF 172) |
| PSJX | Exhibits attached to the accompanying Declaration of Jennifer L. Joost in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment |
| SUF | Paragraphs to Defendants' Separate Statement of Uncontroverted Facts in Support of Their Motion for Summary Judgment (ECF 591-2/599-2) |
| "Statement [•]" | Refers to the statements as numbered by the Court's July 3, 2023 Order Denying (1) Rivian Defendants' Motion to Dismiss (Doc. 152); and (2) Underwriter Defendants' Motion to Dismiss (Doc. 153) (ECF 172) |

# I.    INTRODUCTION

In the run-up to Rivian's historic November 2021 IPO, Defendants knew that its path to gross margin profitability was a key focus for investors. They also knew that Rivian was facing a major obstacle: ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ after Rivian raised $13.5 billion.

These facts were not disclosed to investors. Instead, Rivian's S-1 described rising BOM costs and price increases as possibilities—████████████████████████. It attributed Rivian's per-vehicle losses to fixed costs being spread across low volumes when ████████████████████████████████████████████████. And it represented that Rivian could become profitable by scaling production, even though █████████████████████████████████████████████████.

Plaintiffs have developed an evidentiary record that overwhelmingly supports their claims and raises triable issues of fact. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Right after becoming CFO, McDonough recognized that ████████████████████████████████ And Scaringe confirmed that ██ ███████████████████████████████████. The record also demonstrates that ████████████████████████████████████████. Rivian knew that ████████ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT



The record also confirms

Scaringe

The record likewise reflects

Discovery also revealed the incredible circumstances surrounding

1 ████████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████████

4 ████████████████████████████ Later, Defendant Baker

5 ████████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████████

7 ████████████

8 Defendants ███████████████████████████████████████████████

9 ████████████████████████████████████. Indeed, the Board ███████████

10 ████████████████████████████████████████████████, raising the

11 factual question of whether the Independent Directors █████████████████

12 █████████████████

13     Unsurprisingly, Defendants' Motion ignores this record. Instead, it rehashes

14 arguments this Court has twice rejected, attacks claims Plaintiffs have not asserted, and

15 raises arguments that themselves raise factual disputes. For example, Defendants cite

16 ██████████████████████████████████, but they ignore that ████████████

17 ████████████████████████████████████████████████████████████████

18 ██████████████████

19     Factual disputes also exist concerning Defendants' claim that scaling, alone, would

20 lower BOM costs. Internally, Rivian acknowledged ████████████████████

21 ████████████████████████████████████████████████████████████████

22 ████████████████████████████ Moreover, ███████████████████████

23 ████████████████ upends Defendants' narrative. If R1 BOM costs necessarily declined with

24 scaling, ████████████████████████████████████████████. And if scaling

25 was the "widely-known" solution for reducing BOM, ████████████████████

26 ████████████████████████████████████████████████████"[1]

27

28

---

[1]    Defendants trumpet Rivian's 4Q24 financial results, but they are irrelevant.

Finally, the record undermines Defendants' causation arguments by establishing a direct link between the corrective disclosures and Plaintiffs' claims. McDonough, herself, recognized the link, stating that ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ Investors understood the price increase to reveal that ████████ ████████████████████████████ And the record confirms that ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

The Motion must be denied.

## II.    STATEMENT OF FACTS

In early 2021, Rivian found itself at a crossroads: ████████████████████ ████████████████████████████████████████. ##578-89. Rivian set an ambitious goal for 2021: ████████████████████████████ ██████████. ##347, 583-86, 590-93. But that path was complicated.

**_BOM Costs_** ████████████████

████████████████████████████████████████████████████ ████████████████████████████    ████████████████████████ ████████████████████████████████████. ##394, 402, 407-09, 421-26, 497-98, 522-27. ████████████████ ██████████. ##560-62. ████████████████, when a vehicle's BOM cost exceeds its retail price, gross profits per vehicle are negative and will remain so until prices are increased and/or BOM costs are reduced. ##617-18. Until the trend is reversed, more sales would beget more losses.

**_Rivian Prepares to Go Public_**

████████████████████████████████████████. #584. With her experience in IPOs, McDonough was hired as CFO, and she ████████████████████████. #570. ████████████. ████████████████████████████████████████. ##571-76.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    McDonough quickly identified █████████████████████████████

2    █████████████████████████████████████████████████████████

3    ████████████████████████████ #619. ███████████████████████

4    █████████████████████████████████████████████████████████

5    █████████████████████████████████████████████████████████

6    █████████████████████████████████████████████████████████

7    █████████████████████████████████████████████████████████

8    ██████ #607.

9    Rivian's ████████████████ were particularly important given its impending

10   IPO. Rivian's ██████████████████████████████. ##595-608. As

11   McDonough told Scaringe on ██████████████████████████████

12   ████████████████████████████████ #605.

13   ***Rivian's BOM Cost*** ██████████████████

14       ███████████████████████████████████████████████████

15   ██████████████████████████████. ##451-518. Throughout 2021, ███████

16   █████████████████████████████████ #731. █████████████████

17   █████████████████████████████████ #624. A few months later, ██████

18   ████████████████████████████ #654. Yet, Rivian executives did not

19   know ██████████████████████ #627. Unlike fixed costs, BOM costs do not

20   automatically decline when production scales. #352. Instead, BOM cost reductions ██████

21   █████████████████████████████████████████████████████████

22   ████████ ##729, 737. The head of Rivian's R1 Program, Kohn, ████████████

23   ████████████████████████████████████████, #744, while

24   the V.P. of Supply Chain █████████████████ #765. █████████████████

25   ██████████████████████████████████. #745.

26   ***Rivian's Gross Margin*** ██████████

27       █████████████████████████████████████████████████████████

28   ████████████████████████████████ while continuing to market the vehicles at

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT



1  those prices. ##632-37.

5  #638.

7  #639. At the same time,

9  #659.

12  #660.

16  #641.

17  #645.

20  ##645-47, 672-76.

22  ##672-77, 738.

23  #678. Consequently,

26  In the ensuing weeks, Rivian worked towards

28  ##611-14.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1  █████████████████████████████████████████████

2  ███████████████████████████ #682. ████████████

3  █████████████████████████████████████████████

4  ████████████████████████ #684. The Board ██████████

5  ████████████████████████ #685. ██████████████

6  ████████████████████████████████████████████

7  ████████████ Rivian continued towards ████████████

8  ***September 29 Through October 1***

9  On the afternoon of September 29, ██████████████████. #687. ███

10  █████████████████████████████████████████████

11  █████████████████████████████████████████████

12  ████████████████████████████████████████ ##687-

13  697. ████████████████

14  █████████████████████████████████████████████

15  ██████████. ##688, 690.

16  Later that night, ██████████████████████████

17  ##754-55. ██████████████

18  █████████████████████████████████████████████

19  ██████████████████ *Id*. ████████████████████

20  █████████████████████████████████████████████

21  █████████████████████████████████████████████

22  ██████████████ #745. ████████████

23  ████████████████████████████████████████ #755.

24  Despite acknowledging that ████████████████████

25  ████████████████████████████████ #756.

26  Meanwhile, ██████████████████████████████████

27  ████████████████████ ##722-24. But that ██████████████ On the

28  morning of September 30th ██████████████████████-



##595-608, 714-18.

McDonough

##714-18. But she knew t

##680, 802-03.

While McDonough was                              , Scaringe

#753.

##747-52.

Later that day, the Board

DEx. 161 at RIVN-000401326; ##722-27. The following morning,

it was publicly filed that afternoon. ##726-27.

1 ████████████████████████████

2      Between the October 1 public filing and the November 10th IPO, Rivian's ████

3 ████████████ ##757-74. ████████████████████

4 ██████████████████████████████████

5 ██████████████████████████████████

6 ██████████████████████████████████

7 ███████████████████████████████ ##757-64.

8 And throughout October, ████████████████████████████

9 ██████████████████ #767.

10      Then, on November 4, Scaringe and McDonough ██████████

11 ██████████████████████████████████

12 █████████████████ ##769-71. They also learned that

13 ██████████████████████████████████

14 #770. And just *two days* before the IPO, on November 8, ████████████

15 █████

16 ██████████████████████████████

17 ██████████████████████████████

18 █████████████████████████████

19 ████████████████████████████

20 #777.

21      When Defendants filed the Prospectus later that week, they disclosed none of this to

22 investors. Unaware of the truth, investors lined Rivian's coffers with $13.5 billion, making

23 it one of the largest IPOs in U.S. history. #779.

24 ***The 3Q Earnings Call***

25      Rivian was now flush with cash, but ████████████. On December 13, Scaringe

26 and McDonough ████████████████████████

27 ██████████████████████████████████

28 ██████████████████████████████████

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

██████████████    ##791-94. Yet, when Scaringe and McDonough spoke to analysts on December 17, 2021, they said Rivian was simply "evaluat[ing]" pricing due to recent inflation and "very strong demand." ##342-43. That was untrue. Indeed, shortly after the call, ███████████████████████████████████████████████ #796.

### *The March 2022 Price Increase*

In January 2022, Scaringe ██████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████ #710. And on
January 17th, Scaringe ██████████████████████████████████████
███████████████████████ *Id.*

On March 1, however, Rivian increased prices on all R1 vehicles, including pre-orders, by $12,000-$14,500/vehicle due to a "rise in costs" since prices "were originally set in 2018." ##819-21. Its stock price tanked, and the market expressed shock, "especially given what [Rivian] said during its IPO." ##822-29. ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███ #823. ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████ ##830-31.
Scaringe ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
##832-34.

The next day, Rivian rolled back the pre-order price increase, but investors understood that Rivian was now foregoing revenue it thought it needed just two days earlier. ##836-84. Rivian's stock price continued to decline through March 11. *Id.*

### III.    LEGAL STANDARDS

Summary judgment is proper only if "the movant shows that there is no genuine

dispute as to ***any*** material fact." Fed. R. Civ. P. 56(a). The "court must view the evidence

in the light most favorable to the nonmovant [Plaintiffs][,] draw all reasonable inferences

in [Plaintiffs'] favor," and leave "credibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts" to the jury. *City of Pomona v. SQM*

*N. Am. Corp*., 750 F.3d 1036, 1049 (9th Cir. 2014).

# IV.    SECURITIES ACT CLAIMS

## A.    TRIABLE ISSUES ON THE ELEMENT OF FALSITY EXIST

"[W]hether a public statement is misleading, or whether adverse facts were

adequately disclosed is a mixed question to be decided by the trier of fact." *Hsingching Hsu*

*v. Puma Biotech, Inc.*, 2018 WL 4945703, at *6 (C.D. Cal. Oct. 5, 2018).

Under Sections 11 and 12(a)(2), Defendants had a duty to disclose that: (i) BOM

costs "had already increased" and "exceeded retail prices" pre-IPO; and (ii) Rivian decided

to "increase [R1] prices" "before the IPO." Order 17. This duty arose because Defendants

omitted facts (i) required to be stated under Regulation S-K, Items 105 and 303, and

(ii) necessary to make Statements 1-3 not misleading. 15 U.S.C. §77k(a); *Macquarie*

*Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024).

### 1.    Triable Issues Exist Concerning Whether the MD&A Section Violated Sections 11 and 12(a)(2)

#### a.    Triable Issues Exist Regarding Defendants' Item 303 Violations

Contrary to Defendants' Motion, triable issues exist as to whether they violated

Item 303. Order 33-34. Discovery has confirmed that, ███████████████████████████

███████████████████████ ##530-31. In his deposition, the executive in

charge of R1 BOM costs ████████████████████████████ #530.

Moreover, the trend was well-known within Rivian; the Company ████████████████

██████████████████████████████████████████

███████████████ ##379, 619-21, 629, 633, 643, 651, 653. Scaringe knew of

███████████████. #507. McDonough recognized ████████████████

██████████████ #619. Indeed, Rivian's executives ███████████████

1 ██████████████████████████████████████, ##632-39, and each learned before the

2 IPO that ████████████████████████. . ##729-66. The trend is further evidenced

3 by ████████████████████████████████████████████████████

4 ██████████████████████████████. *Id.* This was clearly conveyed to

5 ████████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████████

7 ████████████████████ ##775-78.

8 Discovery has also confirmed that this trend was reasonably likely to have a material

9 impact on Rivian's financial condition. Senior executives discussed ████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████ ##636, 639, 654, 656-57, 731. As a

12 result, Scaringe and McDonough were told that ████████████████████

13 ████████████████████ #733. Senior executives similarly

14 recognized that ████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████████

16 ████████████████████████ #745.

17 It also was "reasonably likely" at the time of the IPO that Rivian would increase R1

18 prices. ████████████████████████████████████████████████████████

19 ████████████████████████████████████ #698; 17 C.F.R.

20 §229.303(a). And the record is replete with documentary evidence confirming that ████

21 ████████████████████████████ ##661-710. ████████████████████

22 ████████████████████████████████████████████████████████████████

23 ████████████████████ *Id.*

24 The pricing increase also was reasonably likely to have a material impact on Rivian's

25 financial condition. ████████████████████████████████████████████

26 ████████████████████████████████████████████████████ ##638,

27 661-62, 731. Rivian even ████████████████████████████████████

28 ████████████████████████████████████████████████████████████████

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    ██████████████    #710. Internally, executives ████████████████████

2    ██████████████████████████    #706.

3    The trend also was not "nascent or temporary," MSJ 26, as Defendants argue. Instead,

4    it reflected a "persistent condition." *See In re Facebook, Inc.*, 986 F. Supp. 2d 487, 512

5    (S.D.N.Y. 2013).████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    ██████████████████████████████████████████████. ##416, 522, 560-62.[2]

8    And, pre-IPO, Rivian knew that ████████████████████████████████

9    ████████████████████████████████████████████████████

10    ██████████████████████████████████████ ##638, 661-710, 729-66, 731.

11    Without addressing this evidence, Defendants posit unsupported contentions that do

12    not relieve disclosure duties. MSJ 26-27. For example, Defendants assert that Item 303 did

13    not require "inclusion of 'future projections'" in the S-1. MSJ 27. But that is irrelevant;

14    Plaintiffs do not allege that it did. *See Facebook*, 986 F. Supp. 2d at 508.

### b.    Triable Issues Exist Regarding the Falsity of Statements 2-3

16    Statements 2-3 conveyed that Rivian's near-term negative gross profits were due to

17    high fixed costs and low volumes, and that it could become profitable through scaling.

18    ##333, 337. In truth, the R1s were not profitable because BOM costs materially exceeded

19    retail prices and this undisclosed "dynamic" could not be resolved by scaling. Order 20-23;

20    *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 770 (9th Cir. 2023).

21    ████████████████████████████████████████████████

22    ██████████████████████████. ##530-31, 653, 802-03. Defendants do not

23    dispute this. ████████████████████████████████████████

24    ████████████████████████████████████. ##622-54. McDonough ████████

25    ████████████████████████████████████████████████████

26    ████████████████████████████████████████████████████

---

[2]    Because Rivian had tracked BOM costs since 2018, #519, Defendants' reliance on
*Progenity* is misplaced. Mot. 27.



##333, 337. The falsity of these statements is further evidenced by

##757-66, 777, 784.

As for scaling, internal documents refute Defendants' claim and instead

#680. Moreover, if scaling was the "widely-known" solution for reducing BOM,

#759. Defendants' reliance on a "universal expectation" (MSJ 12) ignores the complexities of Rivian's particular circumstances. Indeed, Rivian executives

##467, 729, 743-45.

Rather than confront these triable facts, Defendants resort to a strawman attack on imagined claims and reassert arguments the Court has rejected. MSJ 16-17. They argue that GAAP and "the securities laws" *never* require the disclosure of "BOM estimates" or "internal forecasts." *Id.* 14-16. But, as the Court has already considered, that is not Plaintiff's position. Order 18. Nor is it the law.[3] *In re Twitter, Inc. Sec. Litig.*, 2020 WL 4187915, at *10 (N.D. Cal. Apr. 17, 2020). Similarly, Defendants again contend that

---

[3] The *Cirrus* court recognized that a company "ha[s] a duty to disclose internal projections" and data underlying forecasts. *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1473 (N.D. Cal. 1996); *see also In re Finisar Corp. Sec. Litig.*, 2013 WL 211206, at *6 (N.D. Cal. Jan. 16, 2013 ("duty to disclose [internal forecasts] may arise when [its] necessary…to render an affirmative statement not misleading"). Thus, *Cirrus* (and *Finisar*) support disclosure of the BOM cost "dynamic."

Rivian's boilerplate assertion that it "may never be profitable" shields them from liability. MSJ 16-17. The Court has resolved that question against Defendants (Order 22) and the triable issue remains whether what Defendants concealed was not garden-variety adversity, but a major obstacle to profitability unique to Rivian. Order 22; *Forescout*, 63 F.4th at 779.[4]

*Finally*, Defendants argue that summary judgment is appropriate because Rivian projected profitability at scale without a price increase,[5] MSJ 16-17, citing internal forecasts and self-serving declarations that Rivian would, one day, be profitable, *id.* at 17. On this point, the record is replete with triable issues. ██████████████████████████████ ████████████████████████████████████████████ #765, and ██████████████████████████████████ ##729-66. ██████████████ █████████████████████████████████████████████████████████████████ ████████ #745. Factual disputes also exist regarding ████████████████ █████████████████████████████████████████████████████████████████ ████████████ ##641, 731.

## 2. Triable Issues Exist Regarding Whether the Risk Factors Violated Sections 11 and 12(a)(2)

### a. Triable Issues Exist Regarding Defendants' Item 105 Violations

Defendants' failure to disclose that Rivian's BOM costs had increased and it planned to raise retail prices violated Item 105. *See* Order 32-34.[6] The facts supporting this assertion are the same as those identified above in §IV.A.1, and Defendants' Motion should be denied. *Panther Partners Inc. v. Jianpu Tech. Inc.*, 2020 WL 5757628, at *7 (S.D.N.Y Sept. 27, 2020) (facts underlying Item 303 violation and court's rationale support Item 105

---

[4]    Defendants claim that discovery has not substantiated that Rivian knew BOM exceeding price would increase losses as production grew. MSJ at 16. This issue, too, is ███████████████████████████████████████████████ d more vehicles, and knew that ████████████████████████████████████████████. #680.

[5]    Even if Defendants expected to achieve profitability at scale, their duty to not misstate or omit material facts in the S-1 remained. 15 U.S.C §77k; *Twitter*, 2020 WL 4187915, at *10.

[6]    Defendants do not seek judgment as to Plaintiffs' Item 105 claim concerning Rivian's price increase.

violation).[7]

## b.    Triable Issues Exist Regarding the Falsity of Statement 1

Statement 1 identified two risks to Rivian's business: substantial increases in BOM costs and a decision to increase prices. Triable issues exist as to whether those risks had "already have come to fruition," rendering the statement misleading. *Forescout*, 63 F.4th at 781. With respect to increases in BOM costs, there is abundant evidence in the record that ██████████████████████████████████████████.[8] ##381, 530-31. In fact, Rivian ████████████████████████████████████████████████████. ##739-45. Moreover, ████████████████████████████████████████████████ ██████████████████. ##747-66.

As for pricing, here too, triable issues exist. Defendants argue that there was no "pre-IPO plan" or "decision" to raise prices, but a reasonable juror could conclude otherwise.[9] There is evidence that Scaringe █████████████████████████████████████████ ████████████████████████████ (##673-78); that Rivian told its Board and the Underwriters that ███████████████████████████████ ████████████████████ (#689); and, that Rivian ██████████████████ ██████████████████████████████████████ (#690). Indeed, Scaringe testified that ████████████████████████████████████████████████ ██████████████ ##691, 695. Rivian's executives even acknowledged internally that ████████████████████████████████████████████████████████████ ██████████████████████████████████████ #710.

Defendants contend that Statement 1 was "properly phrased" because BOM costs

---

[7]    Here, too, Defendants argue about disclosure duties that no one claims they have. Plaintiffs have identified risks unique to Rivian and explained why they created an Item 105 disclosure duty.

[8]    ████████████████████████████████████████

[9]    Defendants' own papers reference no "pre-IPO plan," (MSJ 2), "decision," (MSJ 1), "definitive agreement" (MSJ 18), "specific decision," (DEx. 102 ¶24), and "final decision," (DEx. 111 ¶17).

were "estimate[s]" and thus, reflected potential material cost increases, as actual costs were "nonexistent." MSJ 2, 13-14.[10] Here, too, there are triable issues, as the record demonstrates



##384-86, 400-16, 536. Thus, by the time Rivian ##412-13. And, at the time Rivian

#465. Moreover, Rivian

*Id.*

As for Defendants' argument that Statement 1 was not misleading because "[t]he market understood" that BOM exceeded what Rivian would recover from sales based on LCNRV disclosures, MSJ 14, this is a truth-on-the-market affirmative defense,[11] which the Court has already rejected,[12] ECF 392 at 22-25. Nothing cited by Defendants changes that conclusion. *See* §IV.B.2. Moreover, what these disclosures actually revealed is the subject of competing experts.

Defendants' contention that Statement 1 was not misleading because Rivian's BOM issues were temporary, MSJ 14, similarly fails. In fact, Scaringe and McDonough were told

. #777. Indeed, there is abundant evidence

---

[10]    Defendants' citation to *Waswick v. Torrid Holdings*, 2023 WL 9197563 (C.D. Cal. Dec. 1, 2023), is flawed. MSJ 14. The *Waswick* court *distinguished* the facts of this case from its holding there. 2013 WL 9197563, at *17.

[11]    This defense excuses a failure to disclose material information *only* where a defendant shows *that* information was "transmitted" publicly "with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by [defendants'] one-sided representations." *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008). "[D]efendants bear a heavy burden of proof" on this "intensely fact-specific" defense. *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996).

[12]    Defendants' reliance on *Royal Oak Ret. Sys. v. Juniper Networks*, 2013 WL 2156358 (N.D. Cal. May 7, 2013) is misplaced. Compliance with FASB is not at issue.

that ████████████████████████████████████████████████

████████████████. ##381-82, 414, 420, 425-26, 522, 530-31.

*Finally*, relying on the Court's February 2023 MTD opinion, Defendants claim there was no falsity regarding pricing because Rivian did not have to disclose "pricing considerations." MSJ 18. But Plaintiffs' claims do not require disclosure of "pricing considerations"—the record is replete with evidence that Rivian, in fact, had ████████ ████████████████████ ##661-710. This suffices to deny summary judgment.

## B.    Triable Issues Exist Regarding Negative Causation

The negative causation defense is a "heavy burden" for Securities Act defendants, who must prove that the plaintiffs' losses "are not attributable to the alleged misrepresentation or omission in the [S-1]." *Hildes v. Arthur Anderson LLP*, 734 F.3d 854, 860 (9th Cir. 2013). "Overcoming a negative causation defense" "requires merely that the misrepresentation *touches upon* the *reasons* for an investment's decline in value." *Id.* at 861 (emphasis in original). Defendants cannot secure judgment on negative causation by arguing that "that there is an absence of evidence to support [Plaintiffs'] case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).[13] They "must affirmatively demonstrate that no reasonable trier of fact could find other than for [them]." *Id.*

### 1.    Defendants Have Not Met Their Negative Causation Burden.

Triable issues exist on Defendants' negative causation defense. First, this Court has already concluded that Rivian disclosed corrective information on at least March 1 and 10. ECF 392 at 27, 29. On this basis alone, the Motion can be denied, and nothing alters the Court's holding or otherwise establishes Defendants' heavy burden. MSJ 24-25. Second,

---

[13]    Defendants conflate their negative causation burden with Plaintiffs' Section 10(b) loss causation burden. For example, Defendants' negative causation arguments appear in a section titled "Plaintiffs Cannot Prove *Fraud Caused* Stock Drop Losses." MSJ at 20. But Securities Act claims do not require proof of fraud or causation. *Hildes*, 734 F.3d at 860. Likewise, Defendants attack Nye for not disaggregating the March 3 and 10 disclosures, which only are relevant to Plaintiffs' Securities Act claims. *See* MSJ at 24-25. Courts have rejected similar attempts to conflate these issues. *See, e.g., United Ass'n Nat'l Fund v. Carvana*, 759 F. Supp. 3d 926, 989 (D. Ariz. 2024) (rejecting "improper[]" attempt to "conflate plaintiffs burden of pleading loss causation" "with [d]efendants' burden of proving a negative causation defense").

discovery has, at a minimum, substantiated the existence of triable issues:

**March 1.** Defendants argue that there is "*[n]o* evidence" suggesting that the March 1 price increase is a corrective disclosure.  MSJ 24. But myriad facts indicate triable issues:

- The March 1 price increase was " ███████████████████ ███████████████ #834.

- The March 1 price increase ████████████████████████ ██. #833.

- Pre-IPO, ████████████████████████████ ███████████████████ ##633, 643, 651, 653, 802-03.

- Pre-IPO, ████████████████████████████ ██████████ #671.

- Prior to the IPO, ███████████████████████. ##673, 682, 689, 702.

- Prior to the IPO, ███████████████████████ ██████████. #710.

- ████████████ understood the March 1 price increase to reveal that ██ ████████████████████████████████ ##831-32.

Nonetheless, Defendants argue the March 1 disclosure is not corrective because Rivian did not admit that BOM costs exceeded retail prices or that pricing decisions were made pre-IPO. MSJ 24. But, "[t]here is no requirement that the disclosure take a particular form or be of a particular quality, such that it be a mirror image tantamount to a confession of fraud." ECF 392 at 26-27. Rather, the "ultimate" question "is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F.3d 750, 753 (9th Cir. 2018).[14] On

---

[14]     Defendants' claim that foreseeability is not widely-accepted in the Ninth Circuit, MSJ at 24, is unfounded. *First Solar*, 881 F.3d at 754; *see also In re Tesla, Inc. Sec. Litig.*, 2022 WL 7374936, at *17 (N.D. Cal. Oct. 13, 2022) (losses caused by "***foreseeable consequence[s]***" of misstatements may be "properly included as damages").

this question, factual disputes abound.[15]

Further, Defendants have failed to demonstrate the absence of a genuine factual dispute as to their recycled claim that Rivian's stock price decline was caused by the size of the price increase, its application to preorders, and customer backlash. MSJ 24. Even if Defendants had produced evidence suggesting that these factors were the sole causes of Rivian's stock price decline, the evidence cited above indicates that they existed before the IPO and relate to Plaintiffs' claims. These facts create triable issues concerning whether Defendants' misstatements "*touch[] upon* the *reasons* for [Rivian's] decline in value." *Hildes*, 734 F.3d at 861.[16]

**March 3-10.** Defendant's attacks on Nye cannot, as a matter of law, satisfy their burden. *Soremekun*, 509 F.3d at 984. Nevertheless, their criticisms are misplaced. Nye has not conceded that Rivian's March 3 and 10 disclosures are not corrective. MSJ 24-25. He opines that they are "directly related" to the alleged misstatements and "revealed the alleged relevant truth" to investors. DEx. 84 ¶¶61-62, 75-76. He also has shown that Rivian's stock price declined between March 3 and March 11, and contemporaneous market reports attributed those declines to Rivian's pricing disclosures. ##836-54.[17] Nye's conservative decision to exclude those declines from his Exchange Act inflation estimate does not relieve Defendants of their negative causation burden. *See Hildes*, 734 F.3d at 860. Likewise, for these dates, it is Defendants—not Plaintiffs—who have the burden of disaggregation. *See*

---

[15]    Defendants make no legal argument that post-IPO BOM cost inflation caused the March 1 price increase. *See* MSJ 20-25. That argument is therefore waived. *Estate of Najera v. City of Anaheim*, 2017 WL 10544043, at *2 n.1 (C.D. Cal. July 10, 2017).

[16]    Defendants do not assert any negative causation or loss causation argument based on purported commodity price increases. They are waived.

[17]    Defendants cannot rely solely on a lack of statistical significance to prove the absence of causation. *See* ECF 392 at 28-29. At most, it demonstrates uncertainty, but Defendants' cases confirm "Congress' desire to allocate the risk of uncertainty to ***the defendants*** in [Securities Act] cases." *Akerman v. Oryx Commc'ns Inc.*, 810 F.2d 336, 341 (2d Cir. 1987) (cited by Defendants at 23-24).

MSJ 25.[18]

## 2. Defendants' Truth-on-the-Market Arguments Fail

Defendants claim that the market knew pre-March 1 that R1 BOM costs exceeded retail prices, and Rivian planned to increase prices. MSJ 21-23. These arguments do not establish the absence of triable issues. *First*, this Court has rejected Defendants' claim that the LCNRV charge revealed to investors that BOM costs exceeded retail prices. MSJ 21; *see* ECF 392 at 22-25.[19]

Defendants identify no evidence that undermines the Court's conclusion. Rather, the record confirms that Rivian's LCNRV calculation did not reflect "the extent to which BOM costs exceeded sales prices." ECF No. 392 at 22-25. Rivian's own Chief Accounting Officer—Defendant Baker—testified that █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ##800-17. At a minimum, triable issues exist.

*Second*, Defendants' claim that the market knew Rivian planned to increase prices pre-March 1, MSJ 21-22, was adjudicated at class certification. The Court cited evidence that the market was surprised by Rivian's disclosure, ECF 392 at 24, and concluded that analysts who expected a price increase because of "inflationary pressures" ***did not know*** that BOM costs exceeded retail prices, *id.* at 25.

Nothing has changed. Defendants cite to one analyst report suggesting that "price increases were expected," MSJ 21, but ignore evidence that the market was surprised, including from one participant who called the increase "***a big surprise, especially given what the Company said during its IPO***." #827. Further, even if Defendants could prove

---

[18]    Having failed to disaggregate, Defendants have no economic basis to argue that any portion of the Rivian-specific declines on these dates is unrelated to Plaintiffs' claims. Indeed, just like the expert in Defendants' disaggregation case, *In re Imperial Credit Indus. Sec. Litig.*, 252 F. Supp. 2d 1005, 1011 (C.D. Cal. 2003), Fischel has conducted "no event study or similar analysis." *Id.*

[19]    Defendants' expert testified that "a mom and pop reader of financial statements" would not have concluded from the LCNRV disclosures that BOM costs exceeded retail prices. #818.

that customer backlash and the pre-order price increase are unrelated to Plaintiffs' claims, they have not shown that these were the sole cause of Rivian's stock price decline. ECF 392 at 26.

*Lastly*, Defendants are wrong that there is no evidence of "a market reaction." MSJ 22. Nye's event study demonstrates that the stock experienced company-specific declines which analysts attributed to the disclosures. ##822, 839, 850. Moreover, the record demonstrates that Rivian's disclosures caused ███████████████████████████ ████████████████████████ ##831-32.[20]

# V.    EXCHANGE ACT CLAIMS

## A.    Triable Issues Exist Regarding Falsity

### 1.    Triable Issues Exist Regarding the Falsity of Statements 1-4 and 7

Triable issues exist regarding the falsity of Statements 1-3 under Section 10(b). *See supra* §IV.A. Because they are substantially similar to Statements 1-3, Order 20-23, triable issues also exist regarding the falsity of Statements 4 and 7, *see supra* §IV.A; ##341, 345, 790-94.

### 2.    Triable Issues Exist Regarding the Falsity of Statements 5-6

Statements 5-6 reassured investors that Rivian "was considering a price increase because of post-IPO inflation and increased demand for its vehicles." Order 24; ##342-43. In reality, ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████ ##791-795. They were also told that █████████████ ████████████████████████████████████████

---

[20]    Defendants' claim that no analyst "viewed [Rivian's] prior disclosure as fraudulent," MSJ at 22, is irrelevant. *See infra* at §V.C. Defendants' argument that "Plaintiffs Have Not Shown Upfront Inflation," MSJ at 23, likewise is inapplicable to Securities Act claims there is no requirement that "back-end price declines [are] a proxy for price inflation," *id.* These declines are recoverable unless ***Defendants*** prove that they "represent[] other than the depreciation in value of such security resulting from" the alleged misstatements and omissions. 15 U.S.C. §77k(e).

1  ██████████████████████████████████████████. ##361, 794. Immediately

2  after the call, █████████████████████████████████████████████████████

3  ██████████████████████████. #796.[21] Thus, triable issues exist regarding

4  the falsity of Statements 5-6.

### 3.    Statements 4-6 Are Not Protected by the Safe Harbor

Statements 4-6 are not protected by the PSLRA safe harbor. MSJ 19-20.[22] Statements 5-6 are present tense or historical statements, *In re Quality Sys. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017),[23] and Statement 4 omits current or historical facts or risks, *id.* Moreover, because triable issues exist as to the actual knowledge of the falsity of Statements 4-6, *infra* §V.B, the safe harbor only protects forward-looking statements identified as such that are accompanied by meaningful cautionary language. *Quality Sys.*, 865 F.3d at 1142. Defendants' failure to cite to any cautionary language undermines their assertion that Rivian's risk disclosures "spoke directly to the subject of Statements 4-6." MSJ 20.

Further, Rivian's warning that it "may never be profitable," MSJ 20, is insufficient "boilerplate" because it "does not mention the specific risk[s] to which [Rivian and the Officer Defendants] had been alerted," or address the misstatements. *Forescout*, 63 F.4th at 780; *In re SureBeam Corp. Sec. Litig.*, 2005 WL 5036360, at *13 (S.D. Cal. Jan. 3, 2005) (generic warning by "start up company" with "no proven track record, no customer base, and no assets" insufficient). As for the other risk disclosure that Defendants cite—"inflation could impact retail prices," MSJ 20—it does not appear to exist. Regardless, "cautionary

---

[21] ████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████

[22] The "bespeaks caution" doctrine, MSJ at 18 n.3, does not apply to Statements 1-3 because the S-1 omitted facts that existed at the time of the IPO, *see Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 948 (9th Cir. 2005). Regardless, Defendants have failed the "stringent showing" necessary to make out the defense. *Livid*, 416 F.3d at 947.

[23] Both statements address what Rivian had done and was doing to evaluate "aggressive[]" historical pricing. #343. Neither statement discusses a "future price increase." MSJ at 20.

language is not meaningful if it discusses as a mere *possibility* a risk that has already materialized." *Forescout*, 63 F.4th at 781; *see also* §IV.2.b.

### B.   Triable Issues Exist Regarding Scienter

"Generally, scienter should not be resolved by summary judgment." *Provenz*, 102 F.3d at 1489. Only when "there is no rational basis in the record for concluding that any of the challenged statements was made with requisite scienter" is summary judgment appropriate. *Id.* It is not appropriate here.

Plaintiffs may prove scienter "by showing that the defendants knew their statements were false, or by showing that defendants were reckless as to the truth or falsity of their statements." *Gebhart v. SEC*, 595 F.3d 1034, 1041 (9th Cir. 2010). "When the defendant is aware of the facts that made the statement misleading, he cannot ignore the facts and plead ignorance of the risk." *In re Tesla, Inc. Sec. Litig*., 2022 WL 1497559, at *15 (N.D. Cal. Apr. 1, 2022). Further, the state of mind of Rivian's senior executives is imputed to the Company. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 705 (9th Cir. 2021).

The evidence showing that Rivian and the Officer Defendants knew or recklessly disregarded the facts constituting fraud is extensive. Each was apprised of, and involved in, the key events leading up to Statements 1-7, and was aware of facts rendering them actionable. Specifically, the Officer Defendants (and other senior Rivian executives):

- knew ██████████████████████████████ *see e.g.,* ##616, 619, 632-35, 642-43, 645-46.

- knew, ██████████████████████████████
  ██████ ##729-66;

- participated in ████████████████████████
  ██████████████████████, *see, e.g.,* ##638, 661-77; and

- pushed ███████████████████████████████
  ████████████████████████, ##678, 681-709.

Moreover, assertions of good faith and truthfulness, MSJ 9-10, are insufficient. Given the evidence, credibility will have to be assessed at trial. *Davis v. Yelp, Inc.*, 2021 WL

4923359, at *13-14 & n.7 (N.D. Cal. Sept. 17, 2021) ("At best, this self-serving testimony creates a genuine factual issue appropriate for a trier of fact."). Similarly unavailing is a lack of stock sales during the Class Period. Motive is not required to establish scienter, *see Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011), and "the lack of stock sales by a defendant is not dispositive," *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003). That is particularly true here as lock-up provisions were in place throughout the Class Period. *See* DEx. 14 at 213.

Triable issues as to Rivian's scienter exist based on the state of mind of its management. *See Alphabet*, 1 F.4th at 705. Here, the record indicates that, in addition to the Officer Defendants, numerous executives—including ███████████████████ ███████████████████—knew or recklessly disregarded the facts constituting fraud. *See, e.g.*, ##435, 489-91, 497, 525, 598-99, 606-07, 622-23, 627, 638, 649, 657, 659-660, 662-65, 690, 706-09, 729-66, 775-78, 783-85.[24]

## C.    Genuine Factual Disputes Exist Regarding Loss Causation

"A plaintiff can satisfy loss causation by showing that the defendant misrepresented or omitted the *very facts* that were a substantial factor in causing the plaintiff's economic loss." *First Solar*, 881 F.3d at 753.

The March 1 price increase is the only corrective disclosure for Exchange Act purposes. Defendants concede that Rivian's stock price experienced a statistically significant company-specific decline of $9.18 following the disclosure. #822. The only question is whether it is related to the misstatements.

The Court has concluded it is, and the record supports that conclusion. *See* §IV.B.1. Defendants contend that: (i) the market knew the full truth prior to March 1; (ii) a "mismatch" exists between the misstatements and corrective disclosures; and (iii) the stock price declined for reasons unrelated to Plaintiffs' claims, which Nye has failed to disaggregate. MSJ 24-25. These arguments fail for the reasons discussed above, *see supra*

---

[24] As the Motion does not address their state of mind, triable issues exist as to Rivian's scienter.

§IV.B, and below.

*First*, Defendants' contention that the market knew the truth before March 1 raises genuine factual disputes. *See supra* §IV.B.2. *Second*, Defendants claim of a "mismatch" is no more than a reformulated, failed price impact argument. ECF 392 at 26-27. Nye has explained why Rivian's March 2 price decline is a proxy for "upfront inflation," MSJ 23, including because the gap between BOM and retail prices at the time of the IPO was larger than the March 1 price increase, meaning that Rivian "could have announced the severity of the situation" at the start of the Class Period. #835. *Third*, Defendants' claim that Nye failed to disaggregate confounding news, MSJ 23, is meritless. Even if Defendants could show that customer backlash or the size of the price increase caused some portion of Rivian's March 2 decline, MSJ 23-25, these issues relate to Plaintiffs' claims, rendering disaggregation unnecessary. *See supra* §IV.B.1.

*Finally*, Defendants' claim that no market participant "viewed any prior disclosure as fraudulent," MSJ 22, ignores Ninth Circuit precedent that loss causation can exist even if the market was unaware at the time that fraud caused the loss, *First Solar*, 881 F.3d at 754. In any event, market participants expressed surprise about the disclosure. ##824-32; *see supra* §IV.B.2.

## VI.    TRIABLE ISSUES EXIST REGARDING THE DIRECTORS' DILIGENCE, GOOD FAITH, AND CONTROL

### A.    Triable Issues Exist Regarding Diligence

Section 11 provides Defendants other than Rivian an affirmative due diligence defense. *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 638268, at *3 (S.D.N.Y. Mar. 21, 2005). To prevail, the Directors must show that "after reasonable investigation," each had "reasonable ground to believe and did believe," that the Prospectus did not contain untrue statements or omit material facts. 15 U.S.C. § 77k(b)(3)(A). As "the standard of reasonableness" is "that required of a prudent man in the management of his own property," *In re Software Toolworks Inc. Sec. Litig.*, 50 F.3d 615, 621 (9th Cir. 1994), this defense generally presents "a fact issue[] rarely suitable for summary judgment," *In re Countrywide*

*Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1175 (C.D. Cal. 2008). Defendants "bear the burden" of establishing the defense. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983).

Citing meeting invitations and professional credentials, the Directors contend their investigation "exceeded" the applicable standard. MSJ 29. But the record reveals triable issues. *First*, triable issues exist as to whether the Directors conducted a "careful[]" review of Statements 1-3. *Id.* ███████████████████████████████████████████████
████████████████████████████████████████ ##714-18, 721. The Directors, however, ██████████████████████████████████—██████
██████████████████████████ ##722-25. ██████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████ ##726-27.[25]

*Second*, triable issues exist as to their knowledge of information that conflicted with the alleged misstatements. Prior to the IPO, ██████████████████████████
████████ ##681-85.[26] Moreover, each Director █████████████████████
██████████████████████. SUF 263; DEx. 108 ¶21; DEx. 102 ¶31. Yet, the Prospectus did not disclose these facts to investors. *Endo v. Albertine*, 863 F. Supp. 708, 732 (N.D. Ill. 1994) (defendants knew information which was "omitted or misrepresented").

*Third*, the Directors' declarations raise triable issues. Flatley's assertion that he "carefully reviewed" the S-1, DEx. 108 ¶9, cannot be squared with ████████████
████████████████████████████████████████████████████████████

---

[25] ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

[26] ████████████████████████████████████████████████████████
████████████████████████████

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

█████████████████████ #892. Boone's claim "to ensure" that the Audit Committee "was well-prepared to discuss" the "pre-read materials," DEx. 102 ¶8, conflicts with ██ ████████████████████████████████████████████████████████████

##893. The credibility of Boone and Marcario is questioned because of identical assertions that "it is common knowledge that costs are expected to decrease as production ramps." DEx. 102 ¶29; DEx. 111 ¶21. This is wrong. A company's costs *increase* as production ramps, due to higher spending. ##111, 352. Both misstate this premise—suggesting that, with respect to their declarations, they failed to conduct the meticulous review they claim to have employed in connection with Rivian's Prospectus.

*Fourth*, there exist triable issues given the decision to purge Board communications. In 1Q21, Rivian implemented Diligent, a system used to disseminate Board materials, and to facilitate communications among the Board and management. ##900-20. Rivian set the retention period for seven days. #907. Thus, materials were purged regularly and destroyed. ##921-29.[27]

*Finally*, there exist triable issues about the Directors' role in ██████████████ ██████████ the disclosure control recommendations Defendants tout in the Motion. MSJ 9. The evidence shows that ████████████████████████████████████████████████ ████████████████████████████████████████████████████████, including at the time of the IPO and the earnings call. ##867-71. Rivian's General Counsel described these ████████████████████████████ ##871-72.

## B.    Triable Issues Exist Regarding Control

Someone who "controls" an entity is "liable for a primary violation" of Sections 11 or 12(a)(2). Order 17. "Control means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of" an entity and the statements at issue. *In re ZZZZ Best Sec. Litig.*, 1994 WL 746649, at *6 (C.D. Cal. Oct. 26, 1994). While there is no presumption of control, being a director creates "a sort of red light."

---

[27] ████████████████████████████████████████████████████████ ████████████████████████████

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996).[28] Where "supplemented by [a]llegations of day-to-day oversight of a company's operations and involvement, a finding of control" is "justified." *Reckstin Family Tr. v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 977 (N.D. Cal. 2024).[29] "Whether a defendant is a controlling person is an intensely factual question." *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 790, 809 (C.D. Cal. 2004).

The Directors' broad assertion of authority for due diligence evidences a triable issue on control. *See* MSJ 29-31; SUF 234, 236, 241-53, 255-69, 273-309; *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *18 (C.D Cal. July 13, 2015).

## C.    Triable Issues Exists Regarding Good Faith

Section 15 provides an affirmative good faith defense to control person liability. 15 U.S.C. § 77o(a).[30] "[T]hose claiming the exemption have the burden of proving it." *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990). A triable issue exists about the Directors' knowledge of or belief in the omitted material information. *See* §IV.A.

## VII.    CONCLUSION

The Motion should be denied.

Dated:  August 8, 2025                    Respectfully submitted,

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

*/s/ Jennifer L. Joost*
JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

---

[28]    Unlike here, the defendant in *Paracor* "was not involved in" preparing the statements. 96 F.3d at 1164. Defendants' other authorities are the same. MSJ 32.

[29]    *Syntex* at 1100 is inapposite, MSJ 32, because it addresses "the group pleading doctrine," not Section 15 control.

[30]    Defendants' cases, MSJ 32, focus on Section 20(a)'s "direct or indirect inducement" language that does not appear in Section 15.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

-and-

2

SHARAN NIRMUL (*pro hac vice*)
snirmul@ktmc.com

3

DARREN J. CHECK (*pro hac vice*)
dcheck@ktmc.com

4

RICHARD A. RUSSO, JR. (*pro hac vice*)
rrusso@ktmc.com

5

DAVID A. BOCIAN (*pro hac vice*)
dbocian@ktmc.com

6

MARGARET E. MAZZEO (*pro hac vice*)
mmazzeo@ktmc.com

7

AUSTIN W. MANNING (*pro hac vice*)
amanning@ktmc.com

8

280 King of Prussia Road
Radnor, PA 19807

9

Telephone: (610) 667-7706
Facsimile: (610) 667-7056

10

11

*Counsel for Class Representatives Sjunde AP-Fonden and James Stephen Muhl and Class Counsel for the Classes*

12

13

**LARSON LLP**
STEPHEN G. LARSON (Bar No. 145225)
slarson@larsonllp.com

14

15

PAUL A. RIGALI (Bar No. 262948)
prigali@larsonllp.com

16

555 South Flower Street, 30th Floor
Los Angeles, CA 90071

17

Telephone: (213) 436-4888
Facsimile: (213) 623-2000

18

19

*Liaison Counsel for Class Representatives Sjunde AP-Fonden and James Stephen Muhl and Liaison Counsel for the Classes*

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

2

## <u>CERTIFICATE OF COMPLIANCE</u>

3      The undersigned, counsel of record for Lead Plaintiff Sjunde AP-Fonden and

4  Additional Plaintiff James Stephen Muhl, certifies that this brief contains 10,000 words,

5  which [choose one]:

6      _____ complies with the word limit of L.R. 11-6.1.

7      _X_ complies with the word limit set by court order dated June 24, 2025.

8

9  Dated: August 8, 2025                    _/s/Jennifer L. Joost_____
                                          Jennifer L. Joost
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT