BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
EUNICE LEONG, State Bar No. 320499
eunice.leong@freshfields.com
REBECCA E. LOCKERT, State Bar No. 348810
rebecca.lockert@freshfields.com
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants Rivian Automotive, Inc.,
Robert J. Scaringe, Claire McDonough, Jeffrey R.
Baker, Karen Boone, Sanford Schwartz, Rose
Marcario, Peter Krawiec, Jay Flatley, and
Pamela Thomas-Graham*

*Additional Counsel Listed on Signature Block*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CHARLES LARRY CREWS, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, CLAIRE MCDONOUGH, JEFFREY R. BAKER, KAREN BOONE, SANFORD SCHWARTZ, ROSE MARCARIO, PETER KRAWIEC, JAY FLATLEY, PAMELA THOMAS-GRAHAM, MORGAN STANLEY & CO., LLC, GOLDMAN SACHS & CO., LLC, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., DEUTSCHE BANK SECURITIES INC., ALLEN & COMPANY LLC, BOFA SECURITIES, INC., MIZUHO SECURITIES USA LLC, WELLS FARGO SECURITIES, LLC, NOMURA SECURITIES INTERNATIONAL, INC., PIPER SANDLER & CO., RBC CAPITAL | Case No.: 2:22-cv-01524-JLS-E<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 26, 2025<br>Time: 10:30 a.m.<br>Judge: Hon. Josephine L. Staton<br>Ctrm: 8A, 8th Floor<br><br>Magistrate Judge: Hon. Charles F. Eick<br><br>**REDACTED VERSION OF DOCUMENT FILED PROVISIONALLY UNDER SEAL** |

1  MARKETS, LLC, ROBERT W. BAIRD &
   CO. INC., WEDBUSH SECURITIES
2  INC., ACADEMY SECURITIES INC.,
   BLAYLOCK VAN, LLC, CABRERA
3  CAPITAL MARKETS LLC, C.L. KING &
   ASSOCIATES, INC., LOOP CAPITAL
4  MARKETS LLC, SAMUEL A.
   RAMIREZ & CO., INC., SIEBERT
5  WILLIAMS SHANK & CO., LLC, and
   TIGRESS FINANCIAL PARTNERS LLC,

6
            Defendants.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 1

   I. NO EVIDENCE OF SCIENTER ................................................................. 2

      A. Plaintiffs Ignore Stock Purchases ..................................................... 2

      B. Cherry-picked "Key Events" Do Not Show Scienter ....................... 2

   II. NO GENUINE DISPUTE OF MATERIAL FACT CONCERNING FALSITY ...... 4

      A. No Triable Issue Regarding BOM ..................................................... 4

         1. No Disclosure Required to Make Statements Truthful .................... 5

         2. No Disclosure Required Under Item 303 ........................................ 8

      B. No Triable Issue Regarding Pricing .................................................. 9

         1. Rivian Warned of Potential Negative Customer Reactions ............. 9

         2. No Genuine Dispute of Material Fact Concerning a Pre-IPO Pricing Decision ......................................................................... 10

         3. No Disclosure Required under Item 105 ....................................... 11

      C. No Triable Issue Concerning December 2021 Statements ............... 12

   III. NO TRIABLE ISSUE ON LOSS CAUSATION ...................................... 12

      A. Plaintiffs Retreat from Section 10(b) Claims ................................. 12

      B. Defendants Meet Their Burden on Negative Causation ................... 14

   IV. NO TRIABLE ISSUE REGARDING DILIGENCE OR LACK OF CONTROL PERSON STATUS ............................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page**

*In re Alphabet, Inc. Securities Litigation*,
    1 F.4th 687 (9th Cir. 2021).................................................................... 4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................... 1

*Belodoff v. Netlist*,
    2008 WL 2356699 (C.D. Cal. May 30, 2008)........................................ 8

*Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.*,
    2010 WL 148617 (S.D.N.Y. Jan. 14, 2010)......................................... 8

*Brown v. Ambow Education Holding Ltd.*,
    2014 WL 523166 (C.D. Cal. Feb. 6, 2014)......................................... 14

*Browning v. Amyris, Inc.*,
    2014 WL 1285175 (N.D. Cal. Mar. 24, 2014)...................................... 3

*In re Cirrus Logic Securities Litigation*,
    946 F. Supp. 1446 (N.D. Cal. 1996)................................................. 7

*Davidoff v. Farina*,
    2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005)..................................... 2

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)..................................................................12, 14

*Espy v. J2 Global, Inc.*,
    99 F.4th 527 (9th Cir. 2024)........................................................ 12

*In re Facebook, Inc. IPO Securities & Derivative Litigation*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013)............................................... 8

*In re Finisar Corporation Securities Litigation*,
    2013 WL 211206 (N.D. Cal. Jan. 16, 2013)........................................ 7

*Garcia v. J2 Global, Inc.*,
    2022 WL 22717936 (C.D. Cal. Aug. 8, 2022)..................................... 3

*Glazer Capital Management, LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008)........................................................ 4

|  | **Page** |
|---|---|
| *Heliotrope General, Inc. v. Ford Motor Company*,<br>189 F.3d 971 (9th Cir. 1999) | 8 |
| *Holwill v. AbbVie Inc.*,<br>2025 WL 1908156 (N.D. Ill. July 10, 2025) | 11 |
| *In re Impax Laboratories, Inc. Securities Litigation*,<br>2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) | 8 |
| *In re Kirkland Lake Gold Ltd. Securities Litigation*,<br>2024 WL 5107289 (S.D.N.Y. Dec. 13, 2024) | 6 |
| *Lilley v. Charren*,<br>936 F. Supp. 708 (N.D. Cal. 1996) | 15 |
| *Matrixx Initiatives, Inc. v. Siracusano*,<br>563 U.S. 27 (2011) | 2 |
| *Metzler Investment GMBH v. Corinthian Colleges, Inc.*,<br>540 F.3d 1049 (9th Cir. 2008) | 14 |
| *Mineworkers' Pension Scheme v. First Solar Inc.*,<br>881 F.3d 750 (9th Cir. 2018) | 13 |
| *Newton v. Uniwest Financial Corporation*,<br>802 F. Supp. 361 (D. Nev. 1990) | 2 |
| *No. 84 Employer-Teamster Joint Council Pension Trust Fund v.*<br>*America West Holding Corporation*,<br>320 F.3d 920 (9th Cir. 2003) | 2 |
| *In re Noah Educational Holdings, Ltd. Securities Litigation*,<br>2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) | 8 |
| *Nuveen Municipal High Income Opportunity Fund v. City of Alameda*,<br>730 F.3d 1111 (9th Cir. 2013) | 13 |
| *In re Oracle Corp. Securities Litigation*,<br>2009 WL 1709050 (N.D. Cal. June 19, 2009) | 13, 14 |
| *In re Oracle Corp. Securities Litigation*,<br>627 F.3d 376 (9th Cir. 2010) | 2, 13 |

**Page**

*Pang v. Levitt,*
  2024 WL 2108842 (W.D. Tex. Apr. 22, 2024)........................................ 11

*Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc.,*
  2023 WL 4418886 (N.D. Cal. May 24, 2023)......................................... 13

*Porter v. Graftech International Ltd.,*
  2025 WL 2393087 (N.D. Ohio Aug. 18, 2025)......................................... 2

*Reckstin Family Trust v. C3.ai, Inc.,*
  718 F. Supp. 3d 949 (N.D. Cal. 2024)................................................ 5, 9

*Shields v. Citytrust Bancorp, Inc.,*
  25 F.3d 1124 (2d. Cir. 1994)......................................................... 2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007).................................................................. 4

*In re Twitter, Inc. Securities Litigation,*
  2020 WL 4187915 (N.D. Cal. April 17, 2020).......................................... 5

*In re Twitter, Inc. Securities Litigation,*
  506 F. Supp. 3d 867 (N.D. Cal. 2020)................................................. 5

*Waswick v. Torrid Holdings, Inc.,*
  2023 WL 9197563 (C.D. Cal. Dec. 1, 2023)........................................... 12

**Regulations**

17 C.F.R. § 229.303(b)(2)(ii)...........................................................9

**TABLE OF ABBREVIATIONS**

| Abbreviation | Definition |
|---|---|
| ¶ or Complaint | Plaintiffs' Amended Consolidated Complaint for Violations of the Federal Securities Laws (March 2, 2023), ECF No. 150 |
| ASP | Average sales price |
| Baker | Defendant Jeffrey Baker |
| BOM | Bill of materials |
| Class Cert. | Order Granting Plaintiffs' Motion for Class Certification, issued July 17, 2024, ECF No. 392 |
| COGS | Cost of goods sold |
| CW | Confidential witness |
| Boone | Defendant Karen Boone |
| Defendants | Rivian Defendants, Morgan Stanley & Co., LLC, Goldman Sachs & Co., LLC, J.P. Morgan Securities LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Allen & Company LLC, BofA Securities Inc., Mizuho Securities USA LLC, Wells Fargo Securities, LLC, Nomura Securities International, Inc., Piper Sandler & Co., RBC Capital Markets, LLC, Robert W. Baird & Co. Inc., Wedbush Securities Inc., Academy Securities Inc., Blaylock Van, LLC, Cabrera Capital Markets LLC, C.L. King & Associates, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Co., Inc., Siebert Williams Shank & Co., and Tigress Financial Partners LLC |
| DEx. | Defendants' exhibits attached to Declaration of Eunice Leong in Support of Defendants' Motion for Summary Judgment filed July 3, 2025, ECF No. 592, or Declaration of Rebecca E. Lockert in Further Support of Defendants' Motion for Summary Judgment filed on September 5, 2025 |

| Abbreviation | Definition |
|---|---|
| Diligent | Diligent Board Portal Software |
| Directors | Boone, Schwartz, Marcario, Krawiec, Flatley, and Thomas-Graham |
| EV | Electric vehicle |
| Flatley | Defendant Jay Flatley |
| Individual Defendants or Individuals | Scaringe, McDonough, Baker, Boone, Schwartz, Marcario, Krawiec, Flatley, and Thomas-Graham |
| IPO | Initial public offering |
| Krawiec | Defendant Peter Krawiec |
| Marcario | Defendant Rose Marcario |
| McDonough | Defendant Claire McDonough |
| Mot. | Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, filed July 3, 2025, ECF No. 650 |
| MTD | Order Denying Rivian Defendants' and Underwriter Defendants' Respective Motions to Dismiss, issued July 3, 2023, ECF. No. 172 |
| Opp. | Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, filed August 8, 2025, ECF No. 617-1 |
| Prospectus | Rivian's Rule 424(b)(4) Prospectus, filed with the SEC on November 12, 2021 |
| PSJX | Plaintiffs' exhibits attached to Declaration of Jennifer L. Joost in Support of Opposition to Defendants' Motion for Summary Judgment, filed August 8, 2025, ECF No. 614-1 |
| R1 | R1S and R1T |

| Abbreviation | Definition |
|---|---|
| Rivian or the Company | Defendant Rivian Automotive, Inc. |
| Rivian Defendants | Rivian, Scaringe, McDonough, Baker, Boone, Schwartz, Marcario, Krawiec, Flatley, and Thomas-Graham |
| SAMF | Plaintiffs' Statement of Additional Material Facts, filed August 8, 2025, ECF No. 617-2 |
| Scaringe | Defendant Robert J. Scaringe |
| Schwartz | Defendant Sanford Schwartz |
| SEC | Securities and Exchange Commission |
| SGD | Plaintiffs' Statement of Genuine Disputes, filed August 8, 2025, ECF No. 617-2 |
| Sitron | Neil Sitron, Rivian's former General Counsel |
| SOP | Start of R1 production in September 2021 |
| SUF | Defendants' Statement of Uncontroverted Facts |
| Thomas-Graham | Defendant Pamela Thomas-Graham |
| Underwriter Defendants | Morgan Stanley & Co., LLC, Goldman Sachs & Co., LLC, J.P. Morgan Securities LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Allen & Company LLC, BofA Securities Inc., Mizuho Securities USA LLC, Wells Fargo Securities, LLC, Nomura Securities International, Inc., Piper Sandler & Co., RBC Capital Markets, LLC, Robert W. Baird & Co. Inc., Wedbush Securities Inc., Academy Securities Inc., Blaylock Van, LLC, Cabrera Capital Markets LLC, C.L. King & Associates, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Co., Inc., Siebert Williams Shank & Co., and Tigress Financial Partners LLC |

Emphasis is added unless otherwise noted.  Certain quotation marks, alteration marks, citations, and emphases have been omitted.

**INTRODUCTION**

Plaintiffs' extraordinary claim that Rivian and its top officers engaged in securities fraud has been debunked. The evidence shows that the Individual Defendants purchased tens of millions of Rivian stock after the IPO, with their own money, knowing that they would not be able to resell for a long time. Rivian's officers and directors believed in the Company and invested in it—a far cry from Plaintiffs' imaginary schemes. Defendants should be granted summary judgment on the fraud claim.

Plaintiffs' remaining case is in equally poor shape. Their Section 11 claim survived dismissal because of allegations (credited to anonymous former employees) that, for years, Rivian incurred rising materials costs for its vehicles, and its only hope for ever turning a profit was raising prices. Those allegations crumbled in the face of reality. The former employees rejected Plaintiffs' characterizations. The documentary evidence showed that Rivian experienced no BOM costs *at all* until a month before the IPO and that what Plaintiffs called a trend of rising costs was simply variability in internal forecasts. Critically, BOM costs were expected to decline and did decline with scale, as Rivian began serial production after the IPO.

To salvage their case, Plaintiffs resurrect a theory the Court already rejected: that Rivian should have disclosed that it had a secret plan to raise vehicle prices after the IPO. As this Court already held, federal securities laws do not require companies to disclose price strategies. Besides, there was no such plan: Rivian always discussed pricing for its vehicles but the decision to raise prices in March 2022 was not made until February of that year, after much internal analysis and debate. Summary judgment is also appropriate on the Section 11 and 12(a)(2) claims. The case should be dismissed in its totality.

**ARGUMENT**

A "mere existence of a scintilla of evidence … [is] insufficient" to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). That is all Plaintiffs offer. *E.g.*, Opp.11 (colloquial use of term-of-art ▮▮▮ purportedly evidence of obligatory disclosure), 24 ("aware[ness]" that BOM for first vehicles exceeded prices

purportedly shows scienter). With no "evidence from which a jury could reasonably render a verdict in [Plaintiffs'] favor," this Court should grant Defendants' motion. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (granting summary judgment where plaintiffs offered evidence snippets).

## I.  NO EVIDENCE OF SCIENTER

Plaintiffs fail to "counter [Defendants'] contention, based upon the evidence, that [Defendants] acted … without the requisite scienter." *Newton v. Uniwest Fin. Corp.*, 802 F. Supp. 361, 368 (D. Nev. 1990).

### A. Plaintiffs Ignore Stock Purchases

Plaintiffs argue only that "a lack of stock *sales* during the Class Period" is unavailing, Opp.25, citing cases stating that "the lack of stock *sales* by a defendant is not dispositive as to scienter." *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011).

Individual Defendants did not just hold stock. They ***purchased*** $17,747,808 of stock in Rivian's IPO, ***at market price with their own funds***. DEx.34-41. They continued buying post-IPO, SUF 76-79, despite being unable to sell under lock-up, DEx.14 at 211. This "accumulat[ion of] stock … undermines a finding of scienter[.]" *Porter v. Graftech Int'l Ltd.*, 2025 WL 2393087, at *38 (N.D. Ohio Aug. 18, 2025). Courts "assume that the defendant is acting in [their] informed economic self-interest." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d. Cir. 1994). No reasonable juror could find that rational individuals "invest[ed] literally [m]illions of dollars in a venture that they knew would fail." *Davidoff v. Farina*, 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005). This "compel[s] the conclusion that [Defendants] did not act with the *scienter* that is required under the securities laws." *Id.*

### B. Cherry-picked "Key Events" Do Not Show Scienter

Plaintiffs cite four "key events" that purportedly "show[]" that Defendants "knew or recklessly disregarded the facts constituting fraud." Opp.24. None supports scienter.

1. <u>"Key Event" #1</u>: Individuals " ████████████████████████
   ███." Opp.24. Rivian undisputedly relied on BOM forecasts pre- and post-IPO.
   SGD 127 ("Undisputed that ████████████████ "); SAMF 531 (noting
   "BOM costs forecasts"). These reflected ████████████████████████
   ███. DEx.117. Individuals also anticipated decreased BOM with scale. SUF 108.
   It is banal in automotives for BOM to exceed prices when production starts.
   DEx.15 ¶20.

2. <u>"Key Event" #2</u>: Individuals " ████████████████████████████
   ████████████████████ " Opp.24. But pre-SOP, Rivian had only
   estimates and could not have experienced " ████████████████ ." *Infra* 6-7. And
   only some of the ████████████████ occurred pre-IPO. DEx.148 ¶42; SUF
   174-181. Cost Attack illustrates Rivian's belief that BOM reductions were possible
   and shows work toward realizing those forecasts. SAMF 739 (intended to
   ████████████████████████████████████████████████
   ████ ). It paid off: since SOP, BOM has reduced by more than ██████ . SUF
   126.[1] That Individual Defendants were understandably "working hard to achieve
   [Rivian's] projections" does not "show[] that [they] ... acted with scienter."
   *Browning v. Amyris, Inc.*, 2014 WL 1285175, at \*20 (N.D. Cal. Mar. 24, 2014).

3. <u>"Key Event" #3</u>: Individuals " ████████████████████████████
   ████████████████████████ " Opp.24. Individuals
   frequently discussed R1 pricing. DEx.3, 142:10-12; SUF 148. To do otherwise
   would be negligent. Courts reject that "companies could be exposed to liability
   simply because executives are informed about their businesses." *Garcia v. J2
   Glob., Inc.*, 2022 WL 22717936, at \*6 (C.D. Cal. Aug. 8, 2022). Importantly, they
   believed a price increase—while unnecessary—could accelerate profitability. SUF
   137.

---

[1] Challenging BOM reductions, *e.g.*, SAMF 755, is not evidence of impossibility.
Confident in its forecasts, the Board established bonus objectives for the executives
reflecting BOM targets. SUF 123.

4. <u>"Key Event" #4</u>: Individuals "pushed ██████████████████████
███████████████████████████████████████████████████████"
Opp.24. This "fact" is Plaintiffs' invention. *Infra* 9-10. Employees ███████
████████████████████████. SUF 148-49. Every witness involved in
forecasting or deciding pricing uniformly testified that Rivian did not decide on
quantum, timing, or application of a potential price increase until Q1'22. SUF
219-20. Besides, no one planning fraud would tell market analysts about it. SUF
153.

Plaintiffs cannot rely on purported knowledge of "numerous executives" without
evidence they "knew or recklessly disregarded [] facts constituting fraud." Opp.25. Nor
can they impute purported knowledge to Individuals. *Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736, 745 (9th Cir. 2008) (rejecting "collective scienter").[2]

Trial is not necessary to assess credibility. Opp.24. Rather than "self-serving
testimony," Opp.25, Individuals submitted declarations, testimony, and documents
showing good faith, SUF 229. This is unlike *Davis v. Yelp, Inc.*, where trial was
appropriate because plaintiffs provided "ample evidence … that Defendants had 'actual
knowledge'" that statements were misleading. 2021 WL 4923359, at *13-14 (N.D. Cal.
Sept. 17, 2021).

Plaintiffs have not shown that "a reasonable person would deem the inference of
scienter cogent and at least as compelling as any opposing inference[.]" *Tellabs, Inc. v.
Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

## II.  NO GENUINE DISPUTE OF MATERIAL FACT CONCERNING FALSITY

### A. No Triable Issue Regarding BOM

Plaintiffs argue Rivian should have disclosed more about its BOM because (1)

---

[2] Plaintiffs argue that "the state of mind of Rivian's senior executives is imputed to
[Rivian]." Opp.24. But the Ninth Circuit holds "that the 'scienter of the ***senior
controlling officers*** of a corporation may be attributed to the corporation[.]'" *In re
Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 705 (9th Cir. 2021). Plaintiffs cannot show scienter
for any senior executive; they cannot impute scienter to Rivian.

otherwise affirmative statements in Rivian's Prospectus are misleading and (2) Item 303 required disclosures. Opp.11-15. Both arguments fail.

### 1. No Disclosure Required to Make Statements Truthful

Plaintiffs admit Rivian made no affirmative statement about BOM. Opp.11. They claim Rivian's silence rendered misleading statements in the Prospectus, unrelated to BOM; and Statements 2-3 should have disclosed that, at SOP, Rivian anticipated BOM to exceed sales price for its first R1s. Opp.13; ¶¶161-163, 298-300. Plaintiffs' Section 11 and 12(a)(2) claims fail for five reasons.

***No Duty to Speak.*** "[M]erely mentioning a topic does not require the company to disclose every tangentially related fact that might interest investors." *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 886 (N.D. Cal. 2020); Opp.13-16. Curiosity does not compel disclosure. *Reckstin Fam. Tr. v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 973 (N.D. Cal. 2024) (no "require[ment of] disclosure of all information a potential investor might take into account"); Mot.13, 15-16.[3]

***Disclosed Operating Loss.*** Rivian's Prospectus disclosed that the first vehicles' cost exceeded sales price. Mot.14, 21. Rivian disclosed that it operated at a loss, and would continue to do so. DEx.14 at 88, SUF 184. This is more useful than Plaintiffs' proposed disclosure, which would be limited to BOM relative to price. DEx.208, 128:14-20 ("It's obvious to financial statement users that Rivian … was not going to be profitable based upon the carrying value of their inventory and the expected cost to complete their inventory, period.").

***Undisputed Evidence Concerning Scale and BOM.*** Plaintiffs next argue Statements 2-3 did not inform investors that losses were caused not just by fixed costs, but also by BOM, a variable cost. Opp.13. Pre-discovery, Plaintiffs' pleadings may have been appealing: the Complaint alleged that "the BOM for the R1 EVs was 'locked in' when these statements were made[.]" MTD 25. Plaintiffs retreat from that position for

---

[3] *In re Twitter, Inc. Securities Litigation* stands for the uncontroversial proposition that if a company speaks, it cannot mislead by omission. 2020 WL 4187915, at *10 (N.D. Cal. Apr. 17, 2020).

good reason: it is wrong. Mot.11-13.

*First*, it is axiomatic that BOM declines with scale. SUF 111. With scale, suppliers spread their own fixed costs, reducing per-unit costs (and therefore prices they offer Rivian). SUF 109. Rivian gains purchasing power, like any customer ordering in bulk. SUF 110. ██████████████████████████████████████. SUF 131. As production ramped, Rivian improved its ability to engineer around—or better, ██ ████████████████—expensive components. SUF 133. Management discussed these levers with the Board. SUF 108, 117, 120-21. Cost reductions were not automatic, but as Rivian used these levers and production scaled, BOM would and did steadily decline. SUF 112. This negates Plaintiffs' new argument that Rivian was "██████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████" Opp.17.

*Second*, Rivian was aware of this reality. Staffed with industry veterans, SUF 114, 116, Rivian ████████████████████████████████████████ as it executed its post-SOP BOM-reduction strategy. DEx.209, 293:8-19; DEx.5 at Slide 19; DEx.6 at Slide 22, DEx.7 at -9898; SUF 125, 127. Every deposed employee with pertinent knowledge testified that Rivian believed in and executed on its BOM-reduction strategy post-SOP. *E.g.*, SUF 108, 114-115. Nothing was assured—BOM was a forecast, not actual, incurred costs. SUF 91. Plaintiffs' own CWs, whom Plaintiffs misrepresented in their Complaint, testified that Rivian's BOM was not locked in, but rather Rivian believed in and achieved BOM reductions. SUF 314.

*Third*, Rivian's projections were not wishful thinking. Rivian achieved BOM reductions and profitability after production scaled. SUF 126, 128. Now, Plaintiffs have abandoned the theory that survived dismissal: that BOM was unchangeable and should have been disclosed as an insurmountable obstacle to profitability. *Compare* ¶118, *with* Opp.17; *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 5107289, at *9 (S.D.N.Y. Dec. 13, 2024) ("[T]he fact that a majority of [defendants'] predictions were correct easily defeats [falsity] claim.").

1   **BOM Was an Estimate.** At all relevant times, BOM was an estimate. Mot.13-14;

2   SUF 94. Plaintiffs admit that BOM was an "internal projection." Opp.14; *In re Cirrus*

3   *Logic Sec. Litig.*, 946 F. Supp. 1446, 1473 (N.D. Cal. 1996) (no requirement to disclose

4   "internal forecasts meant for internal use").[4] Witnesses rejected Plaintiffs'

5   characterizations of BOM as an actual cost, despite attempts to lead otherwise.[5] Plaintiffs

6   keep referring to BOM costs, *e.g.*, Opp.4, but Rivian had no actual costs, save those

7   incurred in producing fewer than 200 vehicles pre-IPO. SUF 104.

8   **Unexpected Cost Spikes Post-IPO.** From IPO to February 2022, EV input costs

9   grew almost the same amount as the prior 36 months *combined*. DEx.148 ¶42.

10  Consequently, Rivian's BOM spiked unexpectedly and significantly *post*-IPO. SUF

11  163-181. Rivian could not predict this. SUF 163-164. Nor could other automotive

12  manufacturers, which faced the same realities. SUF 182.

13  This shock challenged Rivian's BOM-reduction plan. Raising prices was one lever

14  to address this pressure. SUF 137. Another was reducing BOM. Plaintiffs fault Cost

15  Attack for a slow start, but Rivian always forecasted falling BOM *post*-SOP. *E.g.*,

16  DEx.125 at Slide 11; DEx.140 at Slide 4; DEx.6 at Slide 22. Cost Attack would start its

17  work shortly pre-SOP, SAMF 738, because before that, "the focus was very much on

18  getting to [SOP], getting an R1 off the line in the hands of customers." DEx.209,

19

20  [4] Plaintiffs misrepresent *Cirrus* and *Finistar*, which state that "[a]s a general rule, a
    company has no duty to disclose internal projections." 946 F. Supp. at 1473; *In re Finisar*

21  *Corp. Sec. Litig.*, 2013 WL 211206 (N.D. Cal. Jan. 16, 2013) (same). Plaintiffs present
    the exception as the rule. Opp.14 n.3.

22  [5] *E.g.* DEx.209, 202:24-203:6 (Q: ███████████████████████████████████

23  ███████████████████████████████████████████████████████████████████" A:

24  "I think context is really important here … [W]e didn't have a BOM cost as such because
    we hadn't built any vehicles."); DEx.210, 171:21-172:5 (Q: "And was the BOM cost

25  associated with the option something that was fixed, set in stone?" A: "[W]e're
    projecting. … We hadn't produced vehicles period out of the plant, but we certainly

26  hadn't produced vehicles out of the plant at scale … [T]here's a huge level of estimation

27  in what the cost of the vehicle was going to be."); DEx.211, 90:22-91:10 (Q:

28  ███████████████████████████████" A: "███████████████████████████████").

170:18-20. Plaintiffs' second-guessing, Opp.14, ignores testimony that ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████  DEx.209, 236:22-237:4; DEx.15 ¶76 (efforts

generated ████████████████████████████████████). These efforts paid off:

Rivian reduced BOM by more than ████████ and achieved profitability ██████████

than its pre-IPO forecast, despite historic challenges. SUF 126, 129, 138.

### 2. No Disclosure Required Under Item 303

*BOM.* At all relevant times, BOM was an estimate. *Supra* 7. Under Item 303, there
is no liability for "the nondisclosure of a future trend projection." *Belodoff v. Netlist*, 2008
WL 2356699, at *8 (C.D. Cal. May 30, 2008). A changing forecast—common in any
business—is not a trend required to be disclosed: it is an estimation of an evolving future.
Mot.26-27. No court has held that Item 303 requires disclosure of changed forecasts (nor
do Plaintiffs cite one).[6] Courts are clear that there is "no duty to disclose internal …
projections regarding the[ir] expected … costs[.]" *Heliotrope Gen., Inc. v. Ford Motor
Co.*, 189 F.3d 971, 980 (9th Cir. 1999); *In re Impax Labs., Inc. Sec. Litig.*, 2008 WL
1766943, at *5 (N.D. Cal. Apr. 17, 2008) (no requirement "to disclose internal
projections").

The undisputed financial disclosures are clear: pre-SOP, Rivian made no
production vehicles and had no actual BOM. SUF 94, 102. If Plaintiffs claim that in
October 2021, Rivian had an actual BOM, that is one month of data for 200 vehicles.
SUF 104. Not even "a two-month period of time … establish[es] a 'trend,'" particularly
given Rivian's BOM reduction projections. *Blackmoss Invs. Inc. v. Aca Cap. Holdings,
Inc.*, 2010 WL 148617, at *10 (S.D.N.Y. Jan. 14, 2010); *In re Noah Educ. Holdings, Ltd.
Sec. Litig.*, 2010 WL 1372709, at *6 (S.D.N.Y. Mar. 31, 2010) (two-month "increase" not
"a trend of rising costs in raw materials before the IPO"). Also, the non-disclosure must

---

[6] The *only* case cited does not contain the "persistent condition" language Plaintiffs
purportedly quote. *Compare* Opp.13, *with In re Facebook, Inc. IPO Sec. & Derivative
Litig.*, 986 F. Supp. 2d 487, 512 (S.D.N.Y. 2013).

1  be "reasonably likely to ***have a material effect***[.]" *Reckstin*, 718 F. Supp. 3d at 975.

2  Rivan had made fewer than 200 vehicles and was projecting declining BOM: there was

3  no material effect to disclose.

4      ***Pricing.*** That an uncertainty is reasonably likely to occur does not compel Item

5  303 disclosure. The uncertainty needs to be known, not speculative. 17 C.F.R. §

6  229.303(b)(2)(ii). Plaintiffs twist Scaringe's testimony. Opp.12. When asked whether ███

7  ████████████████████████████████████████████████████████████

8  ████████████████ Scaringe responded with respect to ████████████████

9  ████████████████████████████████████████████████████

10 ████████████████████████████████████████████ PSJX56 at

11 187:25-188:7.[7]

## B. No Triable Issue Regarding Pricing

13     Rivian had no obligation to disclose pricing strategy. Opp.16 n.7. Conceding this,

14 Plaintiffs argue that Statement 1 is misleading because it did not disclose that ████████

15 ████████████████████████████ (untrue, *supra* 7) and because Rivian

16 decided, pre-IPO, to increase prices (untrue, *infra* 10-11). Opp.16. Plaintiffs are wrong in

17 two ways.

### 1. Rivian Warned of Potential Negative Customer Reactions

19     Plaintiffs misread Statement 1. Rivian's Prospectus warned that "[a]ny attempts to

20 increase the announced or expected prices of our vehicles in response to increased costs

21 could be viewed negatively by our potential customers[.]" DEx.14 at 27. This discloses

22 that *if* Rivian attempted to increase prices, such increase *could* be viewed negatively by

23 customers. Plaintiffs theorize that Rivian had already decided to raise prices and *knew*

24 negative reactions would follow, meaning the risk had materialized. Undisputed evidence

25 shows otherwise.

---

[7] A former employee's colloquial use of the word ██████ Opp.11, is not an admission concerning Item 303, particularly where the witness testified that the document in question showed a "forecast," i.e., "a forward-looking view to say what is the [BOM] cost date once we launch this vehicle or ████████████." DEx.212, 138:25-139:6.

***Multiple Pricing Scenarios.*** Rivian modeled numerous scenarios, SUF 148, including ▉▉▉▉▉▉▉ (PSJX114 at -4831), ▉▉▉▉▉▉▉▉ (DEx.7 at -9893; DEx.140 at Slide 7), ▉▉▉▉▉▉ (DEx.7 at -9893, DEx.142 at Slide 7), and ▉▉▉▉▉▉ (SUF 143-44). Rivian's strategy team ran scores of scenarios (PSJX75 at -4935), leadership discussed continually (DEx.206, 142:9-14), and the Board reviewed models (DEx.125 at 13, DEx.146 at 30). There was no one ▉▉▉▉▉ that Rivian planned and knew customers would reject. Opp.16; Mot.17-18.

***No Knowledge of Customer Reactions.*** Undisputed evidence shows Rivian tried to *predict* customer reactions to pricing scenarios. DEx.206, 32:25-33:2. Plaintiffs cite evidence that employees guessed how ▉▉▉▉▉▉▉▉▉▉ in different scenarios. PSJX178 at -7450. Conversely, Plaintiffs offer no evidence that pre-IPO, Rivian actually *knew* how potential customers would react to any scenario. While Plaintiffs argue that price increases ▉▉▉▉▉▉▉ the SAMF they cite claims that increases "would be viewed negatively by the *market*." *Compare* Opp.16, *with* SAMF 710. The cited evidence either concerns ▉▉▉▉ ▉▉▉▉▉▉ (PSJX178 at -7450), is post-IPO (PSJX114), or both (PSJX192 at -0221, PSJX193 at -4461), or discusses ▉▉▉▉▉ (PSJX350 at -5443; PSJX351 at -6356).

### 2. No Genuine Dispute of Material Fact Concerning a Pre-IPO Pricing Decision

Plaintiffs cannot create a triable issue about a pre-IPO pricing decision. Opp.16. Pre-IPO, Rivian considered pricing strategy, modeled scenarios, and shared models with executives, directors, and analysts. SUF 146, 148. But Plaintiffs cite nothing establishing that, pre-IPO, Rivian had decided whether, when, by how much, *or* on whom to raise prices. Plaintiffs misconstrue pricing *considerations* as *decisions*. Opp.16.

***No Implementation of Pre-IPO "Decision."*** The alleged price increase decided pre-IPO *never happened*. SUF 161. Rivian did not raise prices in ▉▉. SUF 156. Evidence shows that Rivian continued modeling different pricing scenarios post-IPO (e.g. PSJX114) and ultimately decided upon and approved a price increase in February 2022

1    that was █████████████████████████████████████████████████████

2    █████████████. *Compare* SUF 160, *with* DEx.7 at -9893. Rivian could not have

3    disclosed a decision at its IPO because *no such decision existed*. Mot.17-18.

4    **Pre-IPO, Rivian** ████████████████    Pre-IPO, Rivian focused on ████████████

5    ████████████████████████████    DEx.213, 104:1-2, and ██████████████████

6    ████████████████████████████████████████████    DEx.206,

7    141:22-25. Plaintiffs admit that in December 2021, Rivian was still analyzing █████

8    █████████████████████████    concerning a potential price increase, including █████

9    █████████████████    PSJX114 at 3. Leadership ████████████████████████████

10   ████████████████████████████████████    DEx.206, 228:24-229:1; SUF 152.

11   **Analysts Factored in Pricing.** Plaintiffs concede that Rivian ████████████████

12   ████████████████████████, which ███████████████████████    Opp.6-7; SUF

13   153. If Rivian had decided to raise prices, told analysts, and that decision informed

14   pricing, then the news that Plaintiffs claim was revealed only on March 1, 2022 was

15   actually communicated on September 29, 2021. Given market efficiency, Class Cert. 20,

16   Rivian's stock price would have incorporated this information from day one. "[P]laintiffs

17   cannot have it both ways": they cannot argue for loss causation that the market only

18   learned of a price increase in March, Opp.21-22, but then "then cast the theory aside" and

19   argue for falsity that Rivian told the market about a price increase in September, Opp.6-7.

20   *Holwill v. AbbVie Inc.*, 2025 WL 1908156, at *22 (N.D. Ill. July 10, 2025).

21              ### 3. No Disclosure Required under Item 105

22        Plaintiffs argue that Item 105 required Rivian to disclose its purported plan to

23   increase prices.[8] But "[a] theory that relies solely on a duty to disclose a future plan

24   cannot support a violation of Section 11 of the Securities Act[.]" *Pang v. Levitt*, 2024 WL

25   2108842, at *4 (W.D. Tex. Apr. 22, 2024) (no §11 violation for failure to disclose future

26   plan to abandon "fixed pricing"). No case holds that Item 105 requires such disclosure,

27   and Plaintiffs cite no law at all. Even if Rivian *had* decided to raise prices, no disclosure

28   _____

[8] Plaintiff's Item 105 claim regarding BOM fails for the reasons *supra* 8-9.

obligation would arise. Price increases are an everyday phenomenon. Mot.14.[9] No customer would reasonably expect a company to maintain prices indefinitely.[10]

### C. No Triable Issue Concerning December 2021 Statements

Because Plaintiffs only challenge Statements 4-7 under Section 10(b), finding for Defendants on scienter is sufficient for summary judgment.

Separately, there is no triable issue concerning Statements 5-6.[11] Plaintiffs do not dispute that Rivian factored demand into its pricing considerations. Opp.22-23. Plaintiffs also ignore post-IPO inflation and supplier pressure. *Id.* It is undisputed that post-IPO, inflation hit unexpected highs, supply chains buckled, and suppliers applied extraordinary cost pressure to Rivian. *E.g.*, SUF 174 (████████████████████████████ ████████████████████████); *supra* 7-8. Plaintiffs do not dispute that the day before the earnings call, Rivian's CFO and VP, Supply Chain discussed the "inflationary impact[s] on auto supply chain." SUF 195. With no falsity evidence as to any challenged statement, Defendants are entitled to summary judgment.

## III.   NO TRIABLE ISSUE ON LOSS CAUSATION

### A. Plaintiffs Retreat from Section 10(b) Claims

Plaintiffs concede that for Section 10(b), "[t]he March 1 price increase is the only corrective disclosure." Opp.25.[12] For loss causation, Plaintiffs must show that the alleged false statements, "not [] some other negative information about the company," caused the decline. *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 540 (9th Cir. 2024). They cannot.[13]

---

[9] Plaintiffs are wrong that *Waswick v. Torrid Holdings* distinguished the "facts of this case." Opp.17 n.10. *Torrid* distinguished Plaintiffs' now disproven *allegations*. 2023 WL 9197563, at *7 (C.D. Cal. Dec. 1, 2023).

[10] Plaintiffs' waiver assertion ignores Defendants' motion. Mot.28.

[11] Because Plaintiffs challenge Statements 4 and 7 on identical grounds as Statements 1-3, Defendants are entitled to summary judgment.

[12] Nye's argument that the price decline on March 2 is a "proxy" for upfront inflation, Opp.26, is not economic evidence—it is a legal argument that *Dura Pharmaceuticals v. Broudo* forecloses. 544 U.S. 336, 347 (2005); Mot.23.

[13] Plaintiffs' waiver argument is baseless. Opp.20 n.15-16. Defendants highlighted dramatic increases in input costs throughout their motion, Mot.2, 5, 19-22, as a reason

***No Revealed Falsity.*** Plaintiffs cannot show that Rivian "revealed previously undisclosed facts about" its BOM, pricing decisions, or profitability *at the IPO*, Opp.25-26, "or that the market recognized the [price increase] as being caused by previously undisclosed problems" known *at the IPO*. *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *16 (N.D. Cal. June 19, 2009). While they invoke the Court's class certification holding on reliance, Opp.21, 25-26, Plaintiffs must prove loss causation. *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119 (9th Cir. 2013). Without evidence that the "market learn[ed] of and react[ed] to Defendants' purported fraud," Plaintiffs' loss causation claim fails. *Oracle*, 627 F.3d at 392.

***No information corrected any challenged statement.*** Plaintiffs offer no evidence of "linking the [alleged corrective] disclosure[] with Defendants' [challenged] statements." *Plumbers v. CareDx, Inc.*, 2023 WL 4418886, at *13 (N.D. Cal. May 24, 2023); Mot.23. Plaintiffs insist that "[t]he only question is whether [the March 1 announcement] *related* to the misstatements." Opp.25. Plaintiffs misstate the law: Section 10(b) requires *causation*, not *relation*. Mot.23-24.[14]

On March 1, Rivian announced price increases due to post-IPO inflationary and supply chain pressures. It is unclear how that "corrected" any challenged statement:

- **Statements 1-3, 7: BOM.** Plaintiffs' expert conceded that the pricing announcement did not address BOM, nor convey that Rivian was structurally unprofitable. Mot.24.

- **Statements 4-6: Pricing Increase.** Plaintiffs do not identify how any of Rivian's statements about inflation, fixed costs, or demand were "corrected" by the mere fact of a price increase, Mot.23-25, which Rivian attributed to the very same

_____

why "the [m]arket [e]xpected a [p]rice [i]crease" and the stock drop is therefore attributable to other factors. *Id.* 21-22.

[14] Plaintiffs' citation does not show otherwise. Opp.19-20. *Mineworkers' Pension Scheme v. First Solar, Inc.* held that "caus[ation]" was required under Section 10(b) and did not discuss Plaintiffs' theory of relation. 881 F.3d 750, 753 (9th Cir. 2018).

issues. "As a matter of logic, [Rivian] cannot have revealed the fraud by repeating the purported misrepresentations." *Oracle*, 2009 WL 1709050, at *16.

"To 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law requires." *Dura*, 544 U.S. at 343. Plaintiffs' "argu[ment] that the [alleged corrective disclosure] *'related to'* the [challenged statement] … does not hold water." *Brown v. Ambow Educ. Holding Ltd*, 2014 WL 523166, at *10 (C.D. Cal. Feb. 6, 2014).

**The market already knew the allegedly "corrective" information.** Rivian indisputably ███████████████████████████████████████████████

██████████████. Opp.7. Consequently, the market's reaction was to the scope, quantum, and application of the price increase to pre-orders—not to the mere fact of raised prices. Mot.24. Plaintiffs double down on the "foreseeable consequence" theory, Opp.25-26, that this Circuit rejects, Mot.24-25. Plaintiffs fail to prove loss causation.

**B. Defendants Meet Their Burden on Negative Causation**

Plaintiffs cannot refute Defendants' negative causation arguments for the same reasons. *Supra* 12-14. Furthermore, Plaintiffs' expert offered no economic evidence of loss causation on March 3 and 10. Mot.24-25. There is no factual dispute as a result. Nye's actions belie Plaintiffs' protests that he "has not conceded that Rivian's March 3 and 10 disclosures are not corrective." Opp.20; *supra* 12. Gestures to the "truth," "situation," and "fraud," Opp.26, do not link to the alleged "fraudulent activity that [they] contend[] forced down the stock that caused [their] losses." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008).

**IV. NO TRIABLE ISSUE REGARDING DILIGENCE OR LACK OF CONTROL PERSON STATUS**

Plaintiffs' Opposition underscores the Directors' diligence. Opp.27.[15] Plaintiffs acknowledge that Directors were informed participants in pricing discussions. *Id.* Their evidence shows a proposal in flux: ██████████████████████████████████,

---

[15] Plaintiffs' contention that materials in Diligent were "purged" is baseless. Opp.28. Defendants do not rely on those materials and had no obligation to maintain them. Plaintiffs similarly fail to articulate why post-IPO implementation of recommendations undermines pre-IPO diligence. *Id.*

PSJX155, that ultimately *did not occur*. *Supra* 10-11. They acknowledge the Board tracked forecasted BOM, while omitting that those forecasts anticipated BOM decreasing. Opp.27; *supra* 6. The Board incorporated these into bonus targets. SUF 123.

Plaintiffs attempt to create a triable issue of ███████████████████ ████████████████████████████████████████. Opp.27; SAMF 714-16. Yet Plaintiffs echo undisputed evidence, Mot.30-31, acknowledging ██████ ██████████████████████ Opp.27. They do not dispute that the Directors were equipped to assess the accuracy of any alleged misstatement. *Supra* 14-15. Moreover, █ ██████████████████████████████████████. DEx.214. Last, *over a month remained before the effective date*. SUF 7. During that time, the Prospectus was amended thrice, and the Audit Committee sought accuracy assurances for disclosures in its final pre-IPO meeting. SUF 268-69; SAMF 326. As Bartlett opined, the Directors demonstrated "an exceptional level of engagement[.]" DEx.90 ¶91.

Control over the Directors' own due diligence is not control over Rivian. Opp.29; *Lilley v. Charren*, 936 F. Supp. 708, 716 (N.D. Cal. 1996) (must "show[] that each defendant possessed the actual power to control the *person* primarily liable").

Dated: September 5, 2025

FRESHFIELDS US LLP

By: */s/Doru Gavril*
     Doru Gavril**

*Attorneys for Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham*

Dated: September 5, 2025

ORRICK HERRINGTON & SUTCLIFFE LLP

By: */s/ Darrell S. Cafasso*

JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com

ORRICK, HERRINGTON
& SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

DARRELL S. CAFASSO
(*Admitted Pro Hac Vice*)
dcafasso@orrick.com
JENNIFER KEIGHLEY
(*Admitted Pro Hac Vice*)
jkeighley@orrick.com
ORRICK, HERRINGTON
& SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

*Attorneys for Defendants Morgan Stanley &
Co., LLC, Goldman Sachs & Co. LLC, J.P.
Morgan Securities LLC, Barclays Capital
Inc., Deutsche Bank Securities Inc., Allen &
Company LLC, BofA Securities Inc., Mizuho
Securities USA LLC, Wells Fargo Securities,
LLC, Nomura Securities International, Inc.,
Piper Sandler & Co., RBC Capital Markets,
LLC, Robert W. Baird & Co. Inc., Wedbush
Securities Inc., Academy Securities Inc.,
Blaylock Van, LLC, Cabrera Capital Markets
LLC, C.L. King & Associates, Inc., Loop
Capital Markets LLC, Samuel A. Ramirez &
Co., Inc., Siebert Williams Shank & Co., and
Tigress Financial Partners LLC*

\*\*Pursuant to Local Rule 5-4.3.4(2)(i), the
electronic filer hereby attests that all
signatories concur in the filing's content and
have authorized this filing

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Rivian Defendants, certifies that this brief contains 4,986 words, which complies with the word limit set by court order dated June 23, 2025.

Dated: September 5, 2025      FRESHFIELDS US LLP

By: /s/ *Doru Gavril*
Doru Gavril

*Attorneys for the Rivian Defendants*