BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
EUNICE LEONG, State Bar No. 320499
eunice.leong@freshfields.com
REBECCA LOCKERT, State Bar No. 348810
rebecca.lockert@freshfields.com
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHARLES LARRY CREWS, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, CLAIRE MCDONOUGH, JEFFREY R. BAKER, KAREN BOONE, SANFORD SCHWARTZ, ROSE MARCARIO, PETER KRAWIEC, JAY FLATLEY, PAMELA THOMAS-GRAHAM, MORGAN STANLEY & CO., LLC, GOLDMAN SACHS & CO., LLC, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., DEUTSCHE BANK SECURITIES INC., ALLEN & COMPANY LLC, BOFA SECURITIES, INC., MIZUHO SECURITIES USA LLC, WELLS FARGO SECURITIES, LLC, NOMURA SECURITIES INTERNATIONAL, INC., PIPER SANDLER & CO., RBC CAPITAL MARKETS, LLC, ROBERT W. BAIRD & CO. INC., WEDBUSH SECURITIES | Case No.: 2:22-cv-01524-JLS-E<br><br>**RIVIAN DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE SPECIFIC OPINIONS AND TESTIMONY OF DANIEL R. FISCHEL**<br><br>Date: October 24, 2025<br>Time: 10:30 a.m.<br>Judge: Hon. Josephine L. Staton<br>Ctrm: 8A, 8th Floor |

INC., ACADEMY SECURITIES INC., BLAYLOCK VAN, LLC, CABRERA CAPITAL MARKETS LLC, C.L. KING & ASSOCIATES, INC., LOOP CAPITAL MARKETS LLC, SAMUEL A. RAMIREZ & CO., INC., SIEBERT WILLIAMS SHANK & CO., LLC, and TIGRESS FINANCIAL PARTNERS LLC,

Defendants.

DEFS' OPP TO PLTFS' MTN TO EXCLUDE OPINIONS & TESTIMONY OF D. FISCHEL
CASE NO. 2:22-cv-01524-JLS-E

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES**..................................................................................... ii
**TABLE OF ABBREVIATIONS**............................................................................. iv
**INTRODUCTION**....................................................................................................1
**BACKGROUND**.....................................................................................................2
**ARGUMENT**...........................................................................................................3
    I. RULE 702 PERMITS PROFESSOR FISCHEL'S EXPERT TESTIMONY..............3
    II. PLAINTIFFS ATTEMPT TO FAULT PROFESSOR FISCHEL FOR THEIR OWN LACK OF A LOSS CAUSATION THEORY.................................................4
        A. Plaintiffs Fail to Understand the Requirements of Loss Causation.......................5
        B. Plaintiffs' Motion is Based on a Misunderstanding of the Elements of Securities Fraud............................................................................................................8
            1. Plaintiffs Fail to Distinguish Between Causation and Price Impact.................8
            2. Plaintiffs Conflate Causation and Damages................................................... 10
**CONCLUSION**....................................................................................................11

# TABLE OF AUTHORITIES

**Cases** Page

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
 738 F.3d 960 (9th Cir. 2013) ................................................................................ 4

*In re Barclays Bank PLC Sec. Litig.*,
 756 F. App'x 41 (2d Cir. 2018) ............................................................................. 9

*In re BofI Holding, Inc. Sec. Litig.*,
 977 F.3d 781 (9th Cir. 2020) ............................................................................ 5, 8

*City of Mia. Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*
 302 F. Supp. 3d 1028 (N.D. Cal. 2018) ................................................................ 8

*Edmonds v. Air & Liquid Sys. Corp.*,
 2024 WL 3250463 (M.D. Fla. July 1, 2024) ........................................................ 7

*Lloyd v. CVB Fin. Corp.*
 811 F.3d 1200 (9th Cir. 2016) .............................................................................. 8

*McCrary v. Elations Co. LLC*,
 2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) ...................................................... 4

*In re Novatel Wireless Sec. Litig.*,
 830 F. Supp. 2d 996 (S.D. Cal. 2011) ................................................................... 9

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
 730 F.3d 1111 (9th Cir. 2013) ....................................................................... 4, 11

*In re Nuveen Sec. Litig.*,
 2011 WL 1842819 (N.D. Cal. May 16, 2011) .................................................. 4, 6

*Orshan v. Apple Inc.*,
 2024 WL 4353034 (N.D. Cal. Sep. 30, 2024) ...................................................... 7

*Ramos v. Comerica Inc.*,
 2024 WL 2104398 (C.D. Cal. Apr. 12, 2024) ...................................................... 9

*In re REMEC Inc. Sec. Litig.*,
 702 F. Supp. 2d 1202 (S.D. Cal. 2010) ................................................................. 9

*Spintouch, Inc. v. Outform, Inc.*,
 2022 WL 17363902 (C.D. Cal. Sept. 28, 2022) ................................................. 11

| Cases | Page |
|---|---|
| *Vaporstream, Inc. v. Snap Inc.*, 2020 WL 2543814 (C.D. Cal. Jan. 10, 2020) | 4 |

**Other Authorities**

| | |
|---|---|
| Fed. R. Evid. 702 | 3 |

# TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
| --- | --- |
| Class Cert Order | Order Granting Plaintiffs' Motion for Class Certification (July 17, 2024), ECF No. 392 |
| Joost Decl. Ex. | Exhibits attached to the Declaration of Jennifer L. Joost in Support of Plaintiffs' Motions to Exclude Opinions and Testimony of Experts (1) Robert Bartlett; (2) Daniel R. Fischel; (3) Peter Hasenkamp; (4) Steven Schwartz; and (5) Lawrence W. Smith (Aug. 29, 2025), ECF No. 677 |
| Leong Decl. Ex. | Exhibits attached to the concurrently filed Declaration of Eunice Leong in Support of Rivian Defendants' Oppositions to Plaintiffs' Motions to Exclude Opinions and Testimony of Experts (1) Robert Bartlett; (2) Daniel R. Fischel; (3) Peter Hasenkamp; (4) Steven Schwartz; and (5) Lawrence W. Smith |
| Motion | Memorandum in Support of Plaintiffs' Motion to Exclude Specific Opinions and Testimony of Daniel R. Fischel (Aug. 29, 2025), ECF No. 671-1 |
| MSJ | Defendants' Motion for Summary Judgment, ECF No. 650 |
| Rivian | Rivian Automotive, Inc. |
| Rivian Defendants | Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham |

Emphasis is added unless otherwise noted.  Certain quotation marks, alteration marks, citations, and emphases have been omitted.

# INTRODUCTION

Plaintiffs' ever-changing legal theories tell the story of a corrective disclosure in search of a misstatement. From a "locked-in" BOM to the "impossibility" that Rivian could become profitable, Plaintiffs' legal theory has evolved through every phase of this litigation, as each prior iteration is proven unsound. *See* ECF No. 299 at 5.

Now, economic evidence underscores the latest glaring problem facing Plaintiffs: Only one new piece of information allegedly entered the market on March 1, 2022, the only corrective disclosure date still in play. That information does not on its face reveal that any challenged statement was false.

Plaintiffs' *Daubert* motion against the Rivian Defendants' loss causation expert, Daniel R. Fischel, is an attempt to distract from their ongoing inability to supply the required link between the statements they challenge and the drop in Rivian's stock price for which they seek to recover. As Plaintiffs well know, careful disaggregation of economic evidence—such as an economic expert is required to provide—unravels their entire theory: They have no proof that the announcement on March 1 has any causal link to *any* challenged statement. MSJ at 35. Understandably concerned with that potential outcome, Plaintiffs seek to prevent the Court and the jury from considering this unquestionably relevant evidence and the corresponding expert opinions offered by Professor Fischel.

But far from discrediting Professor Fischel, Plaintiffs' *Daubert* motion reveals fundamental flaws in Plaintiffs' understanding of their own claims. Plaintiffs confound causation—an element of liability—with damages. They propose that Professor Fischel assume they have proven liability in his analysis of causation, when causation is an element of liability that *they* must prove. Plaintiffs also continue to invoke this Court's class certification order on *reliance*—a different element from *causation*—in their challenge of Professor Fischel.

Notably, Plaintiffs challenge little of Professor Fischel's methodology, and do not address his qualifications at all. The improper—and unsound—legal challenges

they raise are out of place here. Professor Fischel's opinions should not be excluded on account of Plaintiffs' confusion about the securities laws under which they bring this lawsuit.

## BACKGROUND

Professor Fischel is a professor emeritus at the University of Chicago Law School and the Chairperson of Compass Lexecon, a consulting firm that applies economics to legal and regulatory issues. Joost Decl. Ex. 7 ¶ 1. He specializes in the economics of corporate law and financial markets. *Id.* ¶ 2.

Rivian Defendants tasked Professor Fischel with (1) analyzing whether or not the economic evidence supports Plaintiffs' theory of alleged corrective disclosures, and (2) identifying "statistically significant stock price declines from Rivian's IPO on November 10, 2021 through March 10, 2022." *Id.* ¶ 23. To carry out this assessment, Professor Fischel relied upon Plaintiffs' economics expert's own event study. *Id.* ¶ 34. He also adopted an efficient market hypothesis in accordance with the Court's determination that the market was efficient beginning November 11, 2021. *Id.* ¶ 31 (citing Class Cert Order at 20). Relying on these assumptions, Professor Fischel concluded that:

> a. There is no reliable economic basis to attribute Rivian's price decreases following the Alleged Corrective Disclosures to the market learning that R1T and R1S BOM costs were higher than their respective retail prices at the time of the IPO or that there was an undisclosed trend of material costs "far exceeding" the EVs' retail prices.
>
> b. There is no reliable economic basis to attribute any of the other statistically significant stock price declines during the Class Period to the market learning that R1T and R1S BOM costs were higher than their respective retail prices at the time of the IPO or that there was an undisclosed trend of material costs "far exceeding" the EVs' retail prices.

Joost Decl. Ex. 7 ¶ 24. Both Professor Fischel and Plaintiffs' expert, Zachary Nye, agreed that no downward movement in Rivian's stock price was statistically

significant between March 3 and March 10, 2022. *See id.* ¶ 49; Joost Decl. Ex. 12 ¶ 62 ("Company-specific returns during this period are not statistically significant at above the 90% confidence level, ***either individually or cumulatively***.").

Professor Fischel also reviewed and responded to the opinions contained in the Expert Report of Zachary Nye. Joost Decl. Ex. 8 ¶ 3. Professor Fischel concluded that "Dr. Nye's loss causation analysis is fundamentally flawed and unreliable because he has not established that there was a decline in Rivian's stock price attributable to a correction of the alleged misstatements and/or omissions." *Id*. For example, Professor Fischel explained that Dr. Nye does not provide economic evidence supporting Plaintiffs' theory because "none of the extensive market commentary Dr. Nye provides supports his claims that the market learned 'the relevant truth' from the [a]lleged [c]orrective [d]isclosures." *Id*. ¶ 5. Professor Fischel's rebuttal report also highlighted two key flaws in the circular assumptions that undergird Dr. Nye's report: first, that Dr. Nye may assume the truth of Plaintiffs' allegations for the purposes of proving that they are true, *see, e.g., id*. ¶¶ 6, 8, 11, and second, that showing a tenuous relationship between *all* of the alleged corrective disclosures and *all* of the misstatements would suffice as economic evidence supporting loss causation, *id*. ¶¶ 6, 8, 11. Professor Fischel also pointed out that Dr. Nye's purported artificial inflation figure is "based on no analysis whatsoever." *Id*. ¶ 17.

Plaintiffs move to exclude Professor Fischel's "causation opinions expressed in Parts III, V, and VI of his Report and Parts I and II of his Rebuttal." Mot. at 8. As explained below, their motion should be denied.

## ARGUMENT

### I. RULE 702 PERMITS PROFESSOR FISCHEL'S EXPERT TESTIMONY

Expert testimony is admissible if it will help the jury "to understand the evidence or to determine a fact in issue" and is based on a reliable methodology. Fed. R. Evid. 702. "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to

give that testimony." *E.g., Vaporstream, Inc. v. Snap Inc.*, 2020 WL 2543814, at *2 (C.D. Cal. Jan. 10, 2020). Thus, on a motion to exclude an expert, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013). This is a "flexible inquiry" that favors admission of expert opinion "[a]s long as the process [the expert used] is generally reliable." *McCrary v. Elations Co. LLC*, 2014 WL 12589137, at *15 (C.D. Cal. Dec. 2, 2014).

Plaintiffs cannot and do not challenge Professor Fischel's qualifications or his reliance on Professor Nye's event study as his methodology. Nor do they question the relevance of his testimony. Professor Fischel's testimony satisfies Rule 702.

## II. PLAINTIFFS ATTEMPT TO FAULT PROFESSOR FISCHEL FOR THEIR OWN LACK OF A LOSS CAUSATION THEORY

Professor Fischel's analysis of economic evidence poses an existential threat to Plaintiffs' case. MSJ at 23–25. Rebutting Defendants' argument that there is no loss causation at summary judgment would require Plaintiffs to show "a causal connection between the alleged [misrepresentations] and the economic loss" alleged. *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1121 (9th Cir. 2013). Unable to do so, Plaintiffs throughout this case have relied on vague attempts to "relate" "each alleged corrective disclosure . . . to all challenged statements collectively." MSJ at 34. By contrast, Professor Fischel's analysis of economic evidence attempts to disaggregate between information relevant and irrelevant to Plaintiffs' claims, *as is required to prove or disprove loss causation*. *In re Nuveen Funds/City of Alameda Sec. Litig.*, 2011 WL 1842819, at *11 (N.D. Cal. May 16, 2011).

Because they lack evidence to substantiate their loss causation theory, Plaintiffs instead accuse Professor Fischel of mischaracterizing their theory. *See* Mot. at 5. In turn, they mischaracterize both Professor Fischel's report and the law. With respect to

Professor Fischel's analysis of the March 1, 2022 disclosure, Plaintiffs raise an incorrect and improper legal argument that his disaggregation of economic evidence is unsound. With respect to Professor Fischel's analysis of the statistically insignificant stock price movement between March 3 and March 10, Plaintiffs continue to rely improperly on the Court's class certification Order, which did not purport to make evidentiary findings on the merits. *See* Mot. at 7 (citing Class Cert Order). They also conflate loss causation, *an element of liability*, with damages, illustrating a fundamental misunderstanding of Professor Fischel's report and this case. Plaintiffs' attempt to frame their own inability to prove their case as a failure in Professor Fischel's analysis should not succeed.

### A. Plaintiffs Fail to Understand the Requirements of Loss Causation

Plaintiffs misconstrue Professor Fischel's review of economic evidence relating to the March 1, 2022 stock price decline so as to mount an improper, strawman *legal* argument against it. This fails for three reasons. First, Professor Fischel does not apply a "mirror image" theory, as Plaintiffs claim. Second, Plaintiffs' *own lack of evidence for their claims* is not a failure in Professor Fischel's analysis. Third, Plaintiffs' *Daubert* motion is not the proper forum for their merits disputes.

**No permissible theory of loss causation allows grouping multiple distinct challenged statements into a single bucket.** Plaintiffs' "mirror image" argument misinterprets Professor Fischel's report and the law. Mot. at 3–5. As a starting point, Professor Fischel never asserts that the alleged corrective disclosures must precisely mirror a challenged statement. Moreover, Plaintiffs' cited case law provides both that plaintiffs need not establish that a corrective disclosure is a mirror image of the challenged statement, *and* the corrective disclosure must *at least* "reveal[] new facts that, [if] taken as true, render some aspect of the defendant's prior statements false or misleading." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020). Notably, the court in *BofI* addressed the burden that *plaintiffs*, rather than defendants, must carry: *BofI* reiterates the requirement that "the *plaintiff* must still show that the

disclosure of the truth caused the company's stock price to decline." *Id.*

Proving their case would thus require Plaintiffs at least to connect each relevant challenged statement to a related stock drop. *Id.* Defendants, too, as Plaintiffs acknowledge in their Opposition to Defendants' Motion for Summary Judgment, must disaggregate between information relevant and irrelevant to Plaintiffs' claims to show negative causation. *See* ECF No. 711 at 29–30. As a loss causation expert, Professor Fischel thus must disaggregate Plaintiffs' claims to analyze the causal link—if any—between the alleged corrective disclosures and the alleged economic loss. *Nuveen*, 2011 WL 1842819, at *11.

That is precisely what he does. For example, for the alleged corrective disclosure on March 1 and stock drop on March 2, Professor Fischel looked for economic evidence linking the March 1 price increase to market commentary addressing the content of challenged statements. *See* Joost Decl. Ex. 7 ¶ 40. He found none. *Id.* Professor Fischel's conclusion that there was thus no casual link between the stock drop on March 2 and any challenged statement does not impose a requirement that the corrective disclosure on March 1 needed to be identical to a prior misstatement.

**Plaintiffs mistake lack of evidence supporting loss causation for an error in Professor Fischel's analysis.** Because Professor Fischel was unable to find any evidence that an alleged corrective disclosure revealed that Rivian had decided to raise R1 prices prior to the IPO, *id.* ¶ 24, Plaintiffs accuse him of "writ[ing] Plaintiffs' price increase allegations out of the case," Mot. at 6. This is nonsensical. Although Plaintiffs' theories in this lawsuit have shifted repeatedly in the past two years, Professor Fischel identified two key aspects of Plaintiffs' claims as they currently stand: increasing BOM cost forecasts and an alleged pre-IPO decision to raise R1 prices. Mot. at 5–6. Professor Fischel opined: "There is no reliable economic basis to attribute" the alleged stock drops following the alleged corrective disclosures *or* any other statistically significant stock drop during the Class Period to (1) "the market

learning that R1T and R1S BOM costs were higher than their respective retail prices at the time of the IPO," or (2) "that there was an undisclosed trend of material costs 'far exceeding' the EVs' retail prices." Joost Decl. Ex. 7 ¶ 24.

To the extent that Plaintiffs argue Rivian raised prices *because* of forecasted BOM costs, Professor Fischel's analysis considers the impact of the alleged disclosure of Rivian's forecasted BOM costs on its stock price, as Plaintiffs concede. *See* Mot. at 6. In addition, Professor Fischel found other potential reasons to explain the price increase on R1 vehicles, including: "EV input costs increased substantially after the IPO", Joost Decl. Ex. 7 ¶ 41; "Consistent with these cost increases and other unrelated factors, other automotive manufacturers also increased EV retail prices", *id.* ¶ 44; and "the price decline on March 2 can also be explained, at least in part, by the negative reaction to Rivian's announced price increases on existing preorders", *id.* ¶ 46. Lack of evidence for Plaintiffs' claims is not a basis for excluding Professor Fischel's opinions. *Edmonds v. Air & Liquid Sys. Corp.*, 2024 WL 3250463, at *6 (M.D. Fla. July 1, 2024) (denying *Daubert* motion because the absence of "evidence . . . in the record" is unrelated to whether an expert's "methodology is sufficiently reliable").

**Plaintiffs' *legal* challenge to Professor Fischel's expert opinion is improper.** Plaintiffs' argument that Professor Fischel improperly applied a mirror image contrary to "well-established law" is not only wrong, but it raises a legal issue as to the merits. "Such merits issues 'are not grounds for exclusion of expert testimony,' and it is 'wholly inappropriate' to raise merits arguments in *Daubert* briefing." *Orshan v. Apple Inc.*, 2024 WL 4353034, at *7 (N.D. Cal. Sep. 30, 2024).

Moreover, Plaintiffs misrepresent the law they purport to invoke. *See* Mot. at 3–5. Plaintiffs cite three cases for the proposition that courts have "universally" "held that 'a corrective disclosure need not be a mirror image of the prior misstatement.'" *See* Mot. at 4. As a starting point, each of those cases are motion to dismiss rulings addressing what a plaintiff must *plead* to support loss causation, not what is required for a plaintiff to *prove* loss causation, as Plaintiffs must here. *See* Mot. at 4 (citing

*BofI*, 977 F.3d; *Lloyd v. CVB Fin. Corp.* 811 F.3d 1200, 1210 (9th Cir. 2016); *City of Mia. Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 302 F. Supp. 3d 1028, 1046 (N.D. Cal. 2018)).

Furthermore, all of those cases reinforce the requirement of a "causal connection between the fraud and the securities transaction in question," *e.g. RH*, F. Supp. 3d at 1045, showing that the alleged "loss was caused by the defendant's misrepresentations, rather than some intervening event," *Lloyd*, 811 F.3d 1209. Plaintiffs unsuccessfully attempt to invert the law. Although they are "not 'required to show "that a misrepresentation was the *sole* reason for the investment's decline in value,"'" this does not relieve them of the burden of "showing that 'the defendant misrepresented or omitted the very facts that were a substantial factor in causing [their] economic loss.'" *RH*, 302 F. Supp. 3d at 1046.

Plaintiffs make no challenge to the relevance of Professor Fischel's opinion or his expertise. They also do not express a single issue with his application of *economic* principles, theory, or analysis. Their improper, and incorrect, legal challenge does not represent a basis for exclusion.

### B. Plaintiffs' Motion is Based on a Misunderstanding of the Elements of Securities Fraud

Plaintiffs' challenge to Professor Fischel's analysis of Rivian's stock price movement between March 3 and March 11, 2022 ultimately reveals two fundamental flaws in their understanding of their own claims. First, Plaintiffs' improper legal challenges to Professor Fischel's statistical analysis reflect their misconception that the Court's class certification ruling decided the merits of this case for summary judgment. Second, and most astonishingly, Plaintiffs conflate loss causation, an element of liability, with damages. Neither of Plaintiffs' misunderstandings is a basis for excluding Professor Fischel's expert opinions.

#### 1. Plaintiffs Fail to Distinguish Between Causation and Price Impact

Plaintiffs confuse the relevance of statistical significance in analyzing price

impact at class certification versus for loss causation at summary judgment. Mot. at 8. Their effort to attack Professor Fischel is based on an erroneous characterization of both Professor Fischel's opinions and the Court's ruling.

**Plaintiffs do not challenge Professor Fischel's economic analysis.** Plaintiffs raise no issue with the expertise or methodology resulting in Professor Fischel's conclusion that the stock drops following the alleged corrective disclosures on March 3 and March 10 were not statistically significant. Mot. at 7. Indeed, Plaintiffs' own expert agrees that the alleged stock drops on those dates are not statistically significant. Joost Decl. Ex. 12 ¶¶ 62, 77. Plaintiffs instead purport to disagree with Professor Fischel's conclusion that the stock drops on March 3 and March 11 are therefore "attributable to random chance." Mot. at 7. As a starting point, this is an improper legal and merits argument that does not belong in a *Daubert* challenge. *See supra* 7–8. Furthermore, their purported disagreement is belied by their own summary judgment briefing: Plaintiffs do not claim March 3 and March 10 as corrective disclosures in their Opposition to Defendants' Motion for Summary Judgment. *See* ECF No. 711 at 29–30.

The position Plaintiffs advance runs afoul of both legal and economic principles. Courts consistently recognize that a lack of statistical significance supports the conclusion that an outcome is attributable to random chance. *E.g.*, *Ramos v. Comerica Inc.*, 2024 WL 2104398, at *4 (C.D. Cal. Apr. 12, 2024) (plaintiffs could not support their theory of causation because stock drop was not statistically significant); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1266 (S.D. Cal. 2010) (to prove loss causation, "the decline in stock price caused by the revelation of that truth must be statistically significant"); *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1019 (S.D. Cal. 2011) (same). This is why, for Section 11, a defendant "satisfie[s] its negative causation burden regarding this theory of section 11 liability" "as a matter of law" by showing lack of statistical significance. *In re Barclays Bank PLC Sec. Litig.*, 756 F. App'x 41, 49–50 (2d Cir. 2018). If Plaintiffs' position were

correct, proving negative causation would be impossible. Absent the conclusion that a "residual return that is not statistically significant is statistically indistinguishable from zero and attributable to random chance," Joost Decl. Ex. 7 ¶ 33, Section 11's negative causation defense would be rendered meaningless.

**Plaintiffs wrongly assume that the Court's class certification ruling on price impact is a merits decision on loss causation.** Plaintiffs also ignore the Court's qualification that its holding as to lack of statistical significance at the class certification stage does *not* guarantee their success on this issue in subsequent stages: "Though the absence of clear statistical significance and the mixed nature of the disclosures may affect Plaintiffs' success at later stages of the litigation, they are not enough at [the class certification] stage to establish a lack of *price impact*." Class Cert Order at 29.

Price impact is not the same as loss causation, and courts in this Circuit have held that a stock drop must be statistically significant to prove the latter. *Supra* at 9. Simply because Plaintiffs confuse price impact and loss causation does not render Professor Fischel's analysis of statistical significance flawed.

### 2. Plaintiffs Conflate Causation and Damages

Most strikingly of all, Plaintiffs fail to comprehend the distinction between causation and damages. Plaintiffs contend that Professor Fischel should have "assume[d] . . . that Plaintiffs would prove their liability allegations" for the purposes of analyzing causation. Mot. at 6 n.5. This circular statement reflects Plaintiffs' apparent failure to understand that causation is an element that they must prove *before* liability may be found.

Professor Fischel's report discussing "the ***causes*** of a security's price movements" does not mention damages a single time. *See generally* Joost Decl. Ex. 7 ¶ 26. But courts in this District make clear that assuming liability, as Plaintiffs' urge, is only appropriate for economic experts considering *damages*. For example, Judge Carter explained that "It is entirely appropriate for a damages expert to assume

liability for the purpose of his or her opinion. To hold otherwise would be illogical." *Spintouch, Inc. v. Outform, Inc.*, 2022 WL 17363902, at *6 (C.D. Cal. Sept. 28, 2022) ("it is well-established that experts on damages can assume causation.").

Professor Fischel submitted opinions regarding causation, not damages. *See* Joost Decl. Ex. 7 ¶¶ 23–24. Plaintiffs are required to prove causation for a finding of liability. *Nuveen*, 730 F.3d at 1121, 1123. Their attempt to challenge Professor Fischel's proper refusal to assume liability instead reveals the flaws in their own analysis.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court deny Plaintiffs' motion to exclude the opinions of Professor Fischel.

Dated: September 19, 2025            FRESHFIELDS US LLP

By: /s/ Doru Gavril
    Doru Gavril

*Attorneys for Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham certifies that this brief contains 3,494 words, which [choose one]:

   _X_  complies with the word limit of L.R. 11-6.1.

   ___  complies with the word limit set by court order.

Dated: September 19, 2025            By: _/s/ Doru Gavril_
                                                      Doru Gavril