BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
EUNICE LEONG, State Bar No. 320499
eunice.leong@freshfields.com
REBECCA LOCKERT, State Bar No. 348810
rebecca.lockert@freshfields.com
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants Rivian Automotive, Inc.,
Robert J. Scaringe, Claire McDonough, Jeffrey R.
Baker, Karen Boone, Sanford Schwartz, Rose
Marcario, Peter Krawiec, Jay Flatley, and
Pamela Thomas-Graham*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHARLES LARRY CREWS, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, CLAIRE MCDONOUGH, JEFFREY R. BAKER, KAREN BOONE, SANFORD SCHWARTZ, ROSE MARCARIO, PETER KRAWIEC, JAY FLATLEY, PAMELA THOMAS-GRAHAM, MORGAN STANLEY & CO., LLC, GOLDMAN SACHS & CO., LLC, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., DEUTSCHE BANK SECURITIES INC., ALLEN & COMPANY LLC, BOFA SECURITIES, INC., MIZUHO SECURITIES USA LLC, WELLS FARGO SECURITIES, LLC, NOMURA SECURITIES INTERNATIONAL, INC., PIPER SANDLER & CO., RBC CAPITAL MARKETS, LLC, ROBERT W. BAIRD & CO. INC., WEDBUSH SECURITIES | Case No.: 2:22-cv-01524-JLS-E<br><br>**RIVIAN DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE SPECIFIC OPINIONS AND TESTIMONY OF LAWRENCE W. SMITH, CPA**<br><br>Date:   October 24, 2025<br>Time:   10:30 a.m.<br>Judge: Hon. Josephine L. Staton<br>Ctrm:  8A, 8th Floor |

1  INC., ACADEMY SECURITIES INC.,
   BLAYLOCK VAN, LLC, CABRERA
2  CAPITAL MARKETS LLC, C.L. KING &
   ASSOCIATES, INC., LOOP CAPITAL
3  MARKETS LLC, SAMUEL A.
   RAMIREZ & CO., INC., SIEBERT
4  WILLIAMS SHANK & CO., LLC, and
   TIGRESS FINANCIAL PARTNERS LLC,

5
                    Defendants.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................ii

TABLE OF ABBREVIATIONS........................................................................iv

INTRODUCTION................................................................................................1

BACKGROUND.................................................................................................1

ARGUMENT.......................................................................................................3

    I. MR. SMITH'S OPINIONS ARE ADMISSIBLE UNDER RULE 702......................3

    II. MR. SMITH IS UNQUESTIONABLY AN ACCOUNTING EXPERT...................4

    III. PLAINTIFFS DISLIKE MR. SMITH'S CONCLUSIONS, SO ATTEMPT TO CHALLENGE HIS METHODOLOGY INSTEAD..........................................................5

        A. Mr. Smith's Methodology Is Based on Application of His Experience and Standard Accounting Principles.................................................................5

        B. Mr. Smith's Analysis of Public Information Is Reliable and a Proper Basis for His Opinions...................................................................................8

    IV. APPLICATION OF GAAP IS ADMISSIBLE EXPERT TESTIMONY ON A QUESTION OF FACT...........................................................................................11

CONCLUSION..................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                     **Page**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
  738 F.3d 960 (9th Cir. 2013)..................................................................4

*Baker v. SeaWorld Entertainment, Inc.*,
  423 F. Supp. 3d 878 (S.D. Cal. 2019)..............................................6, 8

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
  2015 WL 138168 (N.D. Cal. Jan. 9, 2015)........................................9

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993).................................................................1, 4, 9

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004)................................................................5

*Krouch v. Wal-Mart Stores, Inc.*,
  2014 WL 5463333 (N.D. Cal. Oct. 28, 2014)..............................9, 10

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)............................................................................5

*Longoria v. Kodiak Concepts LLC*,
  2021 WL 1100373 (D. Ariz. Mar. 23, 2021)......................................9

*McCrary v. Elations Co. LLC*,
  2014 WL 12589137 (C.D. Cal. Dec. 2, 2014).....................................4

*In re Novatel Wireless Sec. Litig.*,
  2013 WL 12144150 (S.D. Cal. Oct. 25, 2013)....................................9

*Oracle Corp. v. SAP AG*,
  765 F.3d 1081 (9th Cir. 2014).............................................................9

*Otto v. LeMahieu*,
  2021 WL 1615311 (N.D. Cal. Apr. 26, 2021)..............................9, 10

*In re Pandora Media, LLC*,
  2025 WL 1090408 (C.D. Cal. Jan. 21, 2025).....................................4

*S.E.C. v. Cotton*,
  2006 WL 6382128 (C.D. Cal. Dec. 21, 2006)..................................11

**Cases**                                                                            **Page**

*S.E.C. v. Todd*,
   642 F.3d 1207 (9th Cir. 2011)......................................................................... 11

*Sanchez v. Kia Motors Am., Inc.*,
   2024 WL 4730654 (C.D. Cal. Nov. 7, 2024).........................................9, 10

*Sec. & Exch. Comm'n v. Jensen*,
   2013 WL 12216855 (C.D. Cal. Jan. 9, 2013)..........................................11

*United States v. Casher*,
   2020 WL 977997 (D. Mont. Feb. 28, 2020)................................................ 6

*United States v. Holguin*,
   51 F.4th 841 (9th Cir. 2022)........................................................................5

*Vaporstream, Inc. v. Snap Inc.*,
   2020 WL 2543814 (C.D. Cal. Jan. 10, 2020)............................................ 4

**Other Authorities**

Fed. R. Evid. 702................................................................................... 3, 4

## TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| BOM | Bill of materials |
| CPA | Certified public accountant |
| FASB | Financial Accounting Standards Board |
| GAAP | Generally accepted accounting principles |
| Joost Decl. Ex. | Exhibits attached to the Declaration of Jennifer L. Joost in Support of Plaintiffs' Motions to Exclude Opinions and Testimony of Experts (1) Robert Bartlett; (2) Daniel R. Fischel; (3) Peter Hasenkamp; (4) Steven Schwartz; and (5) Lawrence W. Smith (Aug. 29, 2025), ECF No. 677 |
| KPMG | KPMG LLP |
| LCNRV | Lower of cost or net realizable value |
| Leong Decl. Ex. | Exhibits attached to the concurrently filed Declaration of Eunice Leong in Support of Rivian Defendants' Oppositions to Plaintiffs' Motions to Exclude Opinions and Testimony of Experts (1) Robert Bartlett; (2) Daniel R. Fischel; (3) Peter Hasenkamp; (4) Steven Schwartz; and (5) Lawrence W. Smith |
| MD&A | Management discussion and analysis |
| Motion | Memorandum in Support of Plaintiffs' Motion to Exclude Specific Opinions and Testimony of Lawrence W. Smith, CPA (Aug. 29, 2025), ECF No. 679-4 |
| MSJ | Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment (Aug. 18, 2025), ECF No. 650 |
| Rebuttal Report | Rebuttal Report of Lawrence W. Smith, CPA, dated May 9, 2025 |

| Abbreviation | Definition |
|---|---|
| Report #1 | Corrected Expert Report of Lawrence W. Smith, CPA, dated April 5, 2024, attached to the Joost Declaration as Ex. 16 |
| Report #2 | Expert Report of Lawrence W. Smith, CPA, dated April 25, 2025, attached to Joost Declaration as Ex. 17 |
| Rivian | Rivian Automotive, Inc. |
| Rivian Defendants | Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham |
| SEC | Securities and Exchange Commission |

Emphasis is added unless otherwise noted.  Certain quotation marks, alteration marks, citations, and emphases have been omitted.

# INTRODUCTION

Before its IPO, Rivian disclosed that it would initially lose money on each R1 it sold. MSJ at 25, 32. Specifically, in accordance with Generally Accepted Accounting Principles ("GAAP"), Rivian disclosed that "much of our current inventory has a lower net realizable value than its cost," and "in the near term[,] . . . we will continue to have significant LCNRV-related charges until such time as we have reached more significant production levels." ECF No. 593-13 at 101. Dense accounting principles, however, often lie outside the purview of the average factfinder. To that end, the Rivian Defendants retained an accounting expert, Lawrence Smith, to assess how the market would understand Rivian's disclosures. He approached that assignment as any expert accountant would: by analyzing the disclosures and public analysis of those disclosures. With 15 years at the Financial Accounting Standards Board ("FASB"), 25 years at KPMG LLP ("KPMG"), and a certified public accountant ("CPA") license, Mr. Smith's decades of relevant accounting experience informed his analysis of how the market would have understood Rivian's disclosures. He concluded that Rivian's disclosures provided the market with sufficient information to determine that Rivian's forecasted R1 bill of materials ("BOM") costs would exceed the R1 retail price.

But Mr. Smith's expert conclusions are too damaging to Plaintiffs' case to go unchallenged. Grasping at straws, Plaintiffs make two failing arguments. First, they challenge Mr. Smith for reviewing publicly available materials—materials that are *by definition* core to any assessment of market interpretation. Second, they challenge Mr. Smith's discussion of GAAP, even though courts are clear that the application of GAAP does not constitute a legal conclusion. Plaintiffs are making a desperate attempt to bury unfavorable expert conclusions. The Court should deny their *Daubert* motion.

# BACKGROUND

Mr. Smith is an accounting expert with over "forty-five years of experience in accounting, auditing, accounting standard-setting, and dispute consulting services." Joost Decl. Ex. 17 ¶ 4. In his current role at FTI Consulting, he "serve[s] as a

testifying expert in dispute matters involving the application of Generally Accepted Accounting Principles ("GAAP")" and "consult[s] with . . . clients on complex accounting and financial reporting matters." *Id*. He also "completed two five-year terms as a member of the [FASB], the independent accounting standard setter in the U.S.," where he was "responsible for advancing the FASB's mission to establish and improve financial accounting and reporting standards to increase transparency for users of financial statements and build investor confidence in the capital markets." *Id.* ¶ 5. As a member of the FASB, he also "collaborated with project teams and fellow board members to issue new accounting standards in several areas, including issuing amendments to the authoritative GAAP literature addressing the measurement of inventory." *Id.*

Before Mr. Smith's appointment to the FASB, he served for "five years as the FASB's Director of Technical Application and Implementation Activities," where he "managed FASB activities related to accounting application and implementation issues." *Id.* ¶ 6. Before "joining the FASB," he "spent twenty-five years at the public accounting firm KPMG," where he "was an audit partner," "served as an SEC reviewing partner on a number of Fortune 1000 audit clients," and "respond[ed] to inquiries from various offices related to complex accounting topics, including those relating to the measurement of inventory." *Id.* ¶ 7. He is also a CPA licensed in New York. *Id.* ¶ 8. Mr. Smith's curriculum vitae lays out his experience in greater detail. *See* Joost Decl. Ex. 17 at App'x A.

Mr. Smith is "an expert in accounting because of [his] 25 years' experience with KPMG and being with the FASB for 15 years." Leong Decl. Ex. 1 at 35:20–22. He is qualified as an expert with respect to SEC disclosures based on his "significant amount of experience with SEC disclosures when [he] was practicing as a CPA with KPMG" and his experience "interacting with the SEC while at the FASB." *Id.* at 36:1–5. He has "audited SEC disclosures with public companies" and "reviewed MD&A disclosures in connection with [his] audits of public companies and in

connection with [his] concurring reviews of audits of public companies." *Id.* at 36:10–18.

In this case, Mr. Smith was tasked with "evaluat[ing] Rivian's disclosures to assess whether a reader of . . . Rivian's public statements would understand that Rivian's raw materials, or its BOM, exceeded the retail price of the vehicles they were selling." *See Id.* at 52:14–21. To fulfill his task, Mr. Smith performed a robust evaluation of Rivian's financial reporting and disclosures, analyst reports, and other materials, informed by his 45 years of experience. As a result of that evaluation, he opined that:

> A. Rivian's public disclosures within the Class Period provided users of the financial statements with sufficient information to determine that Rivian's BOM costs for the R1 Platform exceeded the amounts that could be realized upon the sale of a finished vehicle during the Class Period. Indeed, analyst reports published during the Class Period demonstrate that the market was aware of this allegedly withheld information.
> B. Allegations that Rivian exclusively attributed "negative gross profits per vehicle" to high fixed costs being spread over low production volume are inconsistent with Rivian's public disclosures, internal forecasts, and analysts' expectations during the Class Period.
> C. Rivian's public disclosures within the Class Period appropriately highlighted Rivian's use of judgment within its financial statements, as well as risks related to high raw materials costs.
> D. There are no GAAP or SEC accounting requirements to disclose the BOM costs of individual products, and [he] ha[s] not observed such information disclosed by Rivian's public company peers.

Joost Decl. Ex. 17 ¶ 12. Plaintiffs now move to exclude all of Mr. Smith's opinions, including the corresponding opinions in his report submitted at the class certification stage. *See* Joost Decl. Ex. 16. As explained below, their motion should be denied.

## ARGUMENT

### I.   MR. SMITH'S OPINIONS ARE ADMISSIBLE UNDER RULE 702

Expert testimony is admissible if it will help the jury "to understand the evidence or to determine a fact in issue" and is based on a reliable methodology. Fed. R. Evid. 702. "When an expert meets the threshold established by Rule 702 as

explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Vaporstream, Inc. v. Snap Inc.*, 2020 WL 2543814, at *2 (C.D. Cal. Jan. 10, 2020)). Thus, on a motion to exclude an expert, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013). This is a "flexible inquiry" that favors admission of expert opinions "as long as the process [the expert used] is generally reliable." *McCrary v. Elations Co. LLC*, 2014 WL 12589137, at *15 (C.D. Cal. Dec. 2, 2014).

Mr. Smith's opinions and testimony satisfy Rule 702. First, there can be no question that Mr. Smith is generally qualified as an accounting expert. Second, Mr. Smith's opinions are the product of reliable principles and methods. Specifically, Mr. Smith applied standard accounting methodology, informed by 45 years of experience in accounting, to evaluate Rivian's financial reporting and disclosures. Unable to dispute Mr. Smith's qualifications as an expert of accounting and disclosure, Plaintiffs make a weak attempt to argue that he drew legal conclusions and evaluated only public information. But application of GAAP is a question of fact, not law, and expert opinions on this topic are thus admissible. And consideration of public information is necessary for answering a question regarding *public* disclosures.

## II.   MR. SMITH IS UNQUESTIONABLY AN ACCOUNTING EXPERT

There can be no dispute that Mr. Smith is qualified as an accounting expert. "Under Rule 702, a witness may be qualified as an expert by 'knowledge, skill, experience, training, or education.'" *In re Pandora Media, LLC*, 2025 WL 1090408, at *2 (C.D. Cal. Jan. 21, 2025) (quoting Fed. R. Evid. 702). Mr. Smith has 45 years of experience in accounting, including 15 at FASB and 25 at KPMG. Joost Decl. Ex. 17 at App'x A; *see also supra* at 2. That experience involved reviewing and interpreting financial statements, consulting "clients on complex accounting and financial reporting matters," and working on GAAP amendments. *See* Joost Decl. Ex. 17 ¶¶

4–8, App'x A. Much of his experience has focused on accounting topics related to the
measurement of inventory, the topic of Mr. Smith's expert opinion. *See id.* ¶¶ 5–7.

### III.    PLAINTIFFS DISLIKE MR. SMITH'S CONCLUSIONS, SO ATTEMPT TO CHALLENGE HIS METHODOLOGY INSTEAD

Mr. Smith offered opinions about (1) what Rivian disclosed, and (2) what the
market could have—and did—glean from Rivian's disclosures. *Supra* at 3. Because
Plaintiffs dislike Mr. Smith's conclusion that Rivian disclosed that forecasted R1
BOM exceeded its retail price, Joost Decl. Ex. 17 ¶ 12, they attempt to dispute his
methodology instead.

#### A. Mr. Smith's Methodology Is Based on Application of His Experience and Standard Accounting Principles

**Mr. Smith's analysis is informed by 45 years of experience.** Mr. Smith's
review of Rivian's disclosures was not a review by just *anyone* but rather by someone
with over four decades of experience in accounting, including in reviewing financial
statements. Plaintiffs ignore his extensive experience because they cannot challenge it.
"Experience" is "a 'method' that can reliably support expert testimony." *United States
v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022). "In certain fields, experience is the
predominant, if not sole, basis for a great deal of reliable expert testimony." *Hangarter
v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004); *see also
Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (stating that "no one denies
that an expert might draw a conclusion from a set of observations based on extensive
and specialized experience.").

Mr. Smith explained that his review was guided by his many years of
experience. For example, he explained that he "relied on [his] professional experience
in reaching the conclusions in [his] report." Joost Decl. Ex. 17 ¶ 10. Further, he
specified that he reached his conclusions "[b]ased on [his] review of the evidence in
this case, and [his] knowledge, training, and professional experience." *Id.* ¶ 12. When
interpreting earnings call statements by CFO Claire McDonough, Mr. Smith explained
that he used his "experience"—"25 years with KPMG and reading financial
statements for the clients" he served and answering "questions that [he] received in

the national office"—"to effectively interpret what she was saying in her earnings call." Leong Decl. Ex. 1 at 119:16–120:3. He brought to bear his experience at KPMG and FASB responding to questions about complex accounting rules: "I used that experience and judgment[] in order to evaluate what Rivian disclosed." *Id.* at 55:19–22. He also testified that during his time at KPMG and the FASB, he never came across a company that disclosed its BOM relative to its selling price, or users requesting such information be disclosed. *E.g.*, *Id.* at 40:22–41:11; 126:1–16.Through his decades of experience, Mr. Smith is able to review and understand the statements Plaintiffs challenge the way an analyst would, and did. *See id.* at 87:24–88:2.[1]

**Mr. Smith explained his methodology in detail.** Mr. Smith's methodology followed standard processes applied by practitioners in the accounting industry faced with a similar task. *See United States v. Casher*, 2020 WL 977997, at *3 (D. Mont. Feb. 28, 2020) (applying GAAP); *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 901–02 (S.D. Cal. 2019) (reviewing analyst and media reports to opine on market interpretation of disclosures). He explained precisely what that methodology entailed. In particular, he described each step of his process to "evaluate Rivian's disclosures to assess whether a reader of . . . Rivian's public statements would understand that Rivian's raw materials, or its BOM, exceeded the retail price of the vehicles they were selling." Leong Decl. Ex. 1 at 52:14–21. His description spans six pages of deposition testimony. *See id.* at 52:14–58:20.

Specifically, Mr. Smith explains that he read and analyzed Rivian's financial

---

[1] Plaintiffs repeatedly argue that a "mom and pop investor" would not be able to perform the same financial analysis that Mr. Smith did. *See* Mot. at 9, 23. That is irrelevant. First, Plaintiffs take this quote from Mr. Smith out of context. Mr. Smith simply said that his experience was similar to that of an analyst rather than a "mom and pop reader of financial statements." Leong Decl. Ex. 1 at 87:22–25. That is not an admission that a "mom and pop investor" would understand Rivian's financial statements differently than Mr. Smith. Second, a "mom and pop investor's" understanding of a financial statement is irrelevant here because the Court has ruled that the market for Rivian's common stock was efficient beginning November 11, 2021. ECF No. 392 at 20.

statements in the Q3 2021 10-Q, the Prospectus, and disclosures included therein. *Id.* at 53:1–5. He also reviewed a summary of the Q3 2021 analyst call and comments by Rivian's CFO, Claire McDonough. *Id.* at 53:6–8. In addition, he reviewed analyst reports "by Wells Fargo, RBC Capital and Deutsche Bank, and evaluated and read how those analysts . . . were interpreting the disclosures in their reports." *Id.* at 53:9–13. He then performed his own analysis of Rivian's financial statements, applying the accounting principle of "professional skepticism." *Id.* at 53:14–54:17, 58:22–59:4. He explains that this review was informed by his experience, *id.* at 55:2–22, and then, step-by-step, how his review led him to the conclusion that Rivian's financial statements and disclosures adequately informed the market that Rivian's BOM would not be covered by its expected retail price. *Id.* at 58:15–20.

In his report, Mr. Smith explained his process of reviewing and evaluating disclosures by Rivian's peer companies, including the specific search parameters Mr. Smith used on *Intelligize* for his analysis of disclosures by peer companies. *See* Joost Decl. Ex. 17 ¶¶ 78–79.

**The documents Mr. Smith relies on support his opinions.** Plaintiffs' arguments against Mr. Smith's methodology reveal that Plaintiffs failed to read certain paragraphs and footnotes in his report. *See* Mot. at 9, 15–16. Those paragraphs *do not* contradict Mr. Smith's opinions and show that he used and explained his methodology in his report. For example, when critiquing the data Mr. Smith used from the Deutsche Bank analyst report, Plaintiffs ignore Mr. Smith's explanation of his rationale for using the 2025 cost figures from Figure 25, which breaks down the BOM of a Rivian vehicle. *See id.* at 15–16; Joost Decl. Ex. 17 ¶ 39. Mr. Smith explained that he used 2025 cost figures because GAAP requires estimated conversion costs per unit to be calculated based on hypothetical normal production capacity when determining any LCNRV adjustment. *See* Joost Decl. Ex. 17 ¶¶ 19–24, 40. Thus, Mr. Smith explains, it would be inappropriate to use 2022 costs, which were inflated due to abnormally low production, to analyze an LCNRV adjustment. *Id.* ¶ 40. Instead, "financial statement

1  users would use the lower "long-term fixed cost per unit, based on normal capacity

2  estimated by analysts, in determining the driver of Rivian's LCNRV adjustment." *Id.*

3  The same rationale applies to Plaintiffs' critique of Mr. Smith's use of the long-term,

4  fixed costs estimate in the Wolfe Research report. *See* Mot. at 9.

5       Similarly, Plaintiffs claim that Mr. Smith "failed to justify his methodology" in

6  selecting an average selling price to use in his analysis. Mot. at 9. On the contrary, Mr.

7  Smith explains precisely why he used a $70,000 price in his analysis rather than the

8  $95,000 price from another page in the Deutsche Bank report: "In my opinion, DB's

9  earlier $70,000 pricing estimate is the more relevant and comparable datapoint rather

10 than its 2022 average sale price projections" of $95,000. Joost Decl. Ex. 17 ¶ 44 n. 55

11 The $95,000 price "appear[ed] to reflect anticipated future shifts in the pricing of

12 Rivian vehicles," which "could include the effect of price increases on the long-term

13 average selling price projected by Deutsche Bank" whereas the $70,000 price

14 "appears to reflect the R1T and R1S launch prices of $69,000 and $72,500,

15 respectively." *Id.* Yet, in their motion, Plaintiffs ignore Mr. Smith's explanations of his

16 methodology in his report.

17         **B. Mr. Smith's Analysis of Public Information Is Reliable and a Proper Basis for His Opinions**

18         Plaintiffs ask the Court to exclude Mr. Smith's Conclusions A and B of Report

19 #1 and Report #2 and Conclusion C of Report #2 because he relied on publicly

20 available documents. But this case is about what the market understood from Rivian's

21 disclosures. Public information *necessarily* forms the basis of an opinion about what

22 the market understood. Courts routinely admit expert testimony based on publicly

23 available financial disclosures and analyst reports. In *SeaWorld Entertainment*, for

24 example, the plaintiffs' expert in a securities action relied on analyst and media

25 reports to form his opinion as to how the market interpreted the defendant's

26 statements. 423 F. Supp. 3d at 901. The court admitted the expert's opinions and

27 testimony, holding that "[c]ontrary to Defendants' assertion that [the expert] simply

28 lists and summarizes these reports and articles, [the expert's] opinion of how the

market interpreted [the challenged statement] will assist the trier of fact in determining loss causation." *Id.* at 901–02; *see also In re Novatel Wireless Sec. Litig.,* 2013 WL 12144150, at *7 (S.D. Cal. Oct. 25, 2013) (denying *Daubert* motion where the expert formed opinion based on review of press releases and analyst reports). Here, too, Mr. Smith's review of analyst reports and media reports informed his opinion as to how the market interpreted Rivian's disclosures, and will assist a jury in determining loss causation. Courts in the Ninth Circuit have also held that expert opinion and testimony may be based on internet research. *E.g.*, *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1095 (9th Cir. 2014) (rejecting argument that expert opinion was unreliable because it was based on internet research); *Longoria v. Kodiak Concepts LLC*, 2021 WL 1100373, at *15 (D. Ariz. Mar. 23, 2021) ("[C]onducting internet research and extrapolating from it can be a reliable methodology.").

Plaintiffs cite a number of cases for the proposition that review of publicly available documents, without more, does not clear the threshold reliability for admission of expert testimony. *See* Mot. at 7, 12, 15 (citing *Sanchez v. Kia Motors Am., Inc.*, 2024 WL 4730654, at *10 (C.D. Cal. Nov. 7, 2024); *Otto v. LeMahieu*, 2021 WL 1615311, at *4–5 (N.D. Cal. Apr. 26, 2021); *Krouch v. Wal-Mart Stores, Inc.*, 2014 WL 5463333, at *6 (N.D. Cal. Oct. 28, 2014); *Biotechnology Value Fund, L.P. v. Celera Corp.*, 2015 WL 138168, at *2 (N.D. Cal. Jan. 9, 2015)). But these cases are distinguishable for at least two reasons.

First, the cited cases concern review of simple materials easily understood by the fact-finder. For example, in *Kia Motors*, the proffered expert merely quoted consumer complaints about safety issues related to windshield cracks. 2024 WL 4730654, at *10. In *Otto*, the proffered expert simply repeated social media posts. 2021 WL 1615311, at *4–5. In *Wal-Mart*, the expert considered the plain meaning of a term in a car owner's manual, a task the court deemed "fully within the comprehension of the jury." 2014 WL 5463333, at *6. Plaintiffs quoted *Celera*, as saying: "'where the expert does little more than read' materials 'and then proposes to

render findings to the jury as to what happened, we should draw the line and bar such testimony.'" Mot. at 7 (quoting *Celera*, 2015 WL 138168, at *2). But Plaintiffs misleadingly conceal qualifying language by substituting the word "materials" in their motion for the phrase "depositions and deposition exhibits and other such materials" in *Celera*. 2015 WL 138168, at *2. In addition, Plaintiffs omit that the *Celera* court later explained that a jury decides the facts on the more complete trial record, rather than a deposition record. *Id.*

Second, the courts in each of these cases noted that the respective proffered expert either lacked applicable experience or did not apply applicable expertise.[2] Specifically, in *Kia Motors*, the court found the expert could have, but did not, rely on his experience to explain the danger in windshield cracks. 2024 WL 4730654, at *10. The court excluded "the bulk of [the expert's] safety opinion" due to his "failure to connect any of the consumer anecdotes to his automotive expertise." *Id.* In *Otto*, the court held the proffered expert's report was unreliable because "[f]atally, [the expert] concedes he has no specific experience with the cryptocurrency platform or asset . . . at issue." 2021 WL 1615311, at *5. In *Wal-Mart*, 2014 WL 5463333, at *6, the court reasoned that the expert "does not have any specialized knowledge upon which he bases this opinion" on the plain meaning of a term in the owner's manual of a car.

Mr. Smith's independent analysis, however, reflects his review of complex documents such as financial statements, SEC filings, analyst reports, and accounting workpapers and is informed by his specialized understanding of accounting, measurement of inventory, GAAP, and SEC disclosure requirements that he obtained over his 45 years of extensive accounting experience. *Supra* at 1–2. As a result, he provided expert analysis, and did not "merely regurgitate" the documents. *See Otto*, 2021 WL 1615311, at *5.

---

[2] In *Celera*, the court did not apply the quoted proposition to the facts of the case and did not discuss the experts' qualifications with respect to their review of materials. *Id.*

## IV.    APPLICATION OF GAAP IS ADMISSIBLE EXPERT TESTIMONY ON A QUESTION OF FACT

Plaintiffs argue that Mr. Smith's Conclusions C and D in Report #2 and Conclusion A in his Rebuttal Report constitutes legal conclusions as to the application of GAAP. Mot. at 15–18. First, none of Mr. Smith's opinions draw conclusions as to Rivian's compliance with GAAP or SEC requirements or evaluate the adequacy of Rivian's disclosures relative to GAAP or SEC requirements. Rather, Mr. Smith opines that Rivian's disclosures "appropriately highlighted Rivian's use of judgment within its financial statements, as well as risks related to high raw materials costs," and that "[t]here are no GAAP or SEC accounting requirements to disclose the BOM costs of individual products, and I have not observed such information disclosed by Rivian's public company peers." Joost Decl. Ex. 17 ¶ 12D.

Second, even if Mr. Smith *did* draw conclusions as to Rivian's compliance with GAAP, "consisten[cy] with GAAP is a question of fact, best resolved by expert testimony." *S.E.C. v. Cotton*, 2006 WL 6382128, at *8 (C.D. Cal. Dec. 21, 2006); *cf. S.E.C. v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011) ("We recognize that GAAP tolerates a range of reasonable accounting treatments."). Courts thus admit expert testimony proffered "to prove whether the Defendant's conduct complied with GAAP," and reject arguments that GAAP testimony constituted legal conclusions. *See Sec. & Exch. Comm'n v. Jensen*, 2013 WL 12216855, at *1 (C.D. Cal. Jan. 9, 2013). Mr. Smith's professional experience, including his 15 years with the FASB *deliberating and issuing GAAP standards*, distinctly qualifies him to proffer such opinions. The Court should admit Mr. Smith's testimony here.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion to exclude the opinions of Mr. Smith.

1    Dated: September 19, 2025              FRESHFIELDS US LLP

2

3                                          By: */s/ Doru Gavril*
                                               Doru Gavril

4

5                                          *Attorneys for Defendants Rivian*
                                           *Automotive, Inc., Robert J. Scaringe,*
                                           *Claire McDonough, Jeffrey R. Baker,*
6                                          *Karen Boone, Sanford Schwartz, Rose*
                                           *Marcario, Peter Krawiec, Jay Flatley,*
7                                          *and Pamela Thomas-Graham*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham certifies that this brief contains 3,890 words, which [choose one]:

   <u>X</u>  complies with the word limit of L.R. 11-6.1.

   <u>   </u>  complies with the word limit set by court order.


Dated: September 19, 2025               By: <u>*/s/ Doru Gavril*</u>
                                   Doru Gavril