BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
EUNICE LEONG, State Bar No. 320499
eunice.leong@freshfields.com
REBECCA LOCKERT, State Bar No. 348810
rebecca.lockert@freshfields.com
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CHARLES LARRY CREWS, JR., Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, CLAIRE MCDONOUGH, JEFFREY R. BAKER, KAREN BOONE, SANFORD SCHWARTZ, ROSE MARCARIO, PETER KRAWIEC, JAY FLATLEY, PAMELA THOMAS-GRAHAM, MORGAN STANLEY & CO., LLC, GOLDMAN SACHS & CO., LLC, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., DEUTSCHE BANK SECURITIES INC., ALLEN & COMPANY LLC, BOFA SECURITIES, INC., MIZUHO SECURITIES USA LLC, WELLS FARGO SECURITIES, LLC, NOMURA SECURITIES INTERNATIONAL, INC., PIPER SANDLER & CO., RBC CAPITAL MARKETS, LLC, ROBERT W. BAIRD & CO. INC., WEDBUSH SECURITIES

Case No.: 2:22-cv-01524-JLS-E

**RIVIAN DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE SPECIFIC OPINIONS AND TESTIMONY OF ROBERT BARTLETT**

Date: October 24, 2025
Time: 10:30 a.m.
Judge: Hon. Josephine L. Staton
Ctrm: 8A, 8th Floor

INC., ACADEMY SECURITIES INC., BLAYLOCK VAN, LLC, CABRERA CAPITAL MARKETS LLC, C.L. KING & ASSOCIATES, INC., LOOP CAPITAL MARKETS LLC, SAMUEL A. RAMIREZ & CO., INC., SIEBERT WILLIAMS SHANK & CO., LLC, and TIGRESS FINANCIAL PARTNERS LLC,

Defendants.

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ........ ii

**TABLE OF ABBREVIATIONS** ........ iv

**INTRODUCTION** ........ 1

**BACKGROUND** ........ 2

**ARGUMENT** ........ 4

I. Professor Bartlett's Analysis of Industry Custom for Independent Director Diligence Assists the Factfinder ........ 5

A. Professor Bartlett's Opines About Industry Custom, Not the Law ........ 6

B. Professor Bartlett Does Not Opine on Mental States or the SEC's Beliefs ........ 9

C. Plaintiffs' Arguments Only Underscore that Their Proffered Expert's "Practitioner Frameworks" Are Pure Legal Opinion ........ 11

**CONCLUSION** ........ 12

# TABLE OF AUTHORITIES

**Cases** **Page**

*Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443 (9th Cir. 1992)....................8

*Arriaga v. Logix Fed. Credit Union*, 2022 WL 3052318 (C.D. Cal. Apr. 22, 2022).................... 4, 6

*Bettencourt v. SharkNinja Operating LLC*, 2024 WL 3187148 (N.D. Cal. June 25, 2024).................... 9-10

*Carter v. Johnson & Johnson*, 2022 WL 4700575 (D. Nev. Sept. 29, 2022)....................12

*Chavez v. Charter Commc'ns, LLC*, 2022 WL 2079323 (C.D. Cal. Jan. 19, 2022)....................8

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).................... 4

*Dunbar v. City of Riverside*, 2017 WL 11636155 (C.D. Cal. June 6, 2017)....................4

*Ellis v. Infinite Labs, LLC*, 2014 WL 12558861 (C.D. Cal. Aug. 25, 2014).................... 6

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85 (2d Cir. 2017)....................7

*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004)....................5, 7

*In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2022 WL 1814440 (N.D. Cal. June 2, 2022)....................4, 10

*Labbe v. Dometic Corp.*, 2025 WL 1755823 (E.D. Cal. June 25, 2025).................... 10

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051 (9th Cir. 2008)....................7

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 674 F. Supp. 3d 772 (C.D. Cal. 2023)....................3

**Cases** **Page**

*Panchenko v. Comenity Cap. Bank*, 2025 WL 2372597 (N.D. Cal. Aug. 13, 2025) .......... 5, 10

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) .......... 4

*S.E.C. v. Criterion Wealth Mgmt. Ins. Servs., Inc.*, 2023 WL 5321081 (C.D. Cal. Apr. 6, 2023) .......... 4, 8

*S.E.C. v. Dain Rauscher, Inc.*, 254 F.3d 852 (9th Cir. 2001) .......... 7, 9

*In re Software Toolworks Inc. Sec. Litig.*, 50 F.3d 615 (9th Cir. 1994) .......... 6

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) .......... 5

*United States v. Sullivan*, 2022 WL 3716594 (N.D. Cal. Aug. 28, 2022) .......... 4

*Updike v. Am. Honda Motor Co. Inc.*, 2024 WL 4182232 (D. Ariz. Sept. 13, 2024) .......... 12

**Other Authorities**

Red. R. Evid. 702 .......... 10

Fed. R. Evid. 703 .......... 9

Fed. R. Evid. 704(a) .......... 4

## TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| Independent Directors | Defendants Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham |
| IPO | Initial public offering |
| Joost Decl. Ex. | Exhibits attached to the Declaration of Jennifer L. Joost in Support of Plaintiffs' Motions to Exclude Opinions and Testimony of Experts (1) Robert Bartlett; (2) Daniel R. Fischel; (3) Peter Hasenkamp; (4) Steven Schwartz; and (5) Lawrence W. Smith (Aug. 29, 2025), ECF No. 677 |
| Leong Decl. Ex. | Exhibits attached to the concurrently filed Declaration of Eunice Leong in Support of Rivian Defendants' Oppositions to Plaintiffs' Motions to Exclude Opinions and Testimony of Experts (1) Robert Bartlett; (2) Daniel R. Fischel; (3) Peter Hasenkamp; (4) Steven Schwartz; and (5) Lawrence W. Smith |
| Motion | Memorandum in Support of Plaintiffs' Motion to Exclude Specific Opinions and Testimony of Robert Bartlett (Aug. 29, 2025), ECF No. 679-1 |
| MSJ | Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment (Aug. 18, 2025), ECF No. 650 |
| MSJ Reply | Defendants' Reply in Support of Motion for Summary Judgment (Sept. 19, 2025), ECF No. 735 |
| Rivian | Rivian Automotive, Inc. |
| Rivian Defendants | Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham |

Emphasis is added unless otherwise noted. Certain quotation marks, alteration marks, citations, and emphases have been omitted.

## INTRODUCTION

Initial public offerings ("IPOs") are newsworthy events that often generate significant public attention. But the mechanisms and processes behind IPOs are (purposefully) shrouded in confidentiality, with pre-IPO companies closely guarding their financials, forecasts, and other internal metrics before entering public markets. This case directly implicates Rivian's IPO process, including how Rivian's Independent Directors—Defendants Boone, Schwartz, Marcario, Krawiec, Flatley, and Thomas-Graham—conducted themselves in the leadup to Rivian going public. Jurors cannot be presumed to know how IPOs happen: IPOs are the domain of bankers, lawyers, accountants, executives, and directors, who represent a slim minority of the population.

Proper expert opinions on common practices for IPOs are therefore helpful to provide the factfinder with the factual backdrop to evaluate the Independent Directors' diligence. The Rivian Defendants retained Stanford Law School Professor Robert Bartlett to provide expert opinions specific to the Independent Directors' due diligence process. In his reports, Professor Bartlett lays out industry standards for outside directors contributing to IPOs, and opines on whether and how the Independent Directors' due diligence comported with those common practices. He also provides a revealing contrast to Plaintiffs' proffered expert, Professor Robert Jackson. Whereas Professor Bartlett's reports lean on his deep experience working in the venture capital and IPO ecosystem and with public company leaders on cutting edge corporate governance matters, Professor Jackson (whose only law firm experience is two years as a junior associate decades ago for a firm that does not conduct IPOs) provides thinly veiled advocacy that Rivian's offering documents were fraudulent.

Plaintiffs' *Daubert* motion to exclude Professor Bartlett emphasizes this distinction. Unable to prove that the Independent Directors' due diligence was flawed—and unable to explain their millions of dollars of share purchases during the

IPO—Plaintiffs resort to labeling Professor Bartlett's opinions "legal conclusions." Mot. at 4, 7, 8. Instead, Professor Bartlett's reports and opinions comprise useful context for examining the Independent Directors' conduct, and an experienced scholar's determination that their conduct aligned with industry standards for outside directors.

## BACKGROUND

Professor Bartlett is the W. A. Franke Professor of Law and Business and faculty co-director of the Arthur and Toni Rembe Rock Center for Corporate Governance at Stanford Law School. Joost Decl. Ex. 2 ¶ 1. He maintains appointments with several prestigious institutions, such as the Stanford Graduate School of Business, the Stanford Institute for Economic Policy Research, the American College of Governance Counsel, and the European Corporate Governance Initiative. *Id.* He was previously a professor at the law schools of UC Berkeley, the University of Georgia, and Fordham, and spent four years as an associate at a leading Silicon Valley law firm. *Id.* ¶ 2, 4. In his roles at Stanford, Professor Bartlett studies corporate and securities law and oversees a broad range of corporate governance programming, including the Rock Center's annual Directors College, "the nation's premier executive education program for directors and C-level executives of publicly traded firms." *Id.* ¶ 3. In this capacity, he trains directors on their duties and cutting-edge legal issues.

The Rivian Defendants retained Professor Bartlett to opine on "the customary conduct of reasonable, prudent, and diligent independent directors in reviewing a registration statement" in the context of the "customary standard of care" within "industry practice for IPOs," and the extent to which Rivian's Independent Directors acted within that framework. *Id.* ¶ 22, 24. These are unfamiliar topics to most jurors, who may know that directors have a role to play in IPOs, but are unlikely aware of what that role entails in practice.

Given Professor Bartlett's scholarship and experience, there are few individuals better positioned to provide a jury with this context. Specifically, he opined that:

- "[T]he Rivian Independent Directors readily met or exceeded customary standards of care in conducting a reasonable investigation, including with respect to the challenged statements, sufficient to meet the level of diligence that is the customary industry practice for IPOs," *id.* ¶ 24; *see also* ¶ 57 (setting out sub-opinions comprising Professor Bartlett's primary opinion);
- The Independent Directors' decision to purchase shares in the IPO "gave each [] a strong incentive to ensure that the registration statement was materially accurate and complete" and "indicate[d] that the Independent Directors believed in the prospects of the Company and the offering," *id.* ¶ 58; and
- Professor Jackson's "opinion that 'practitioner frameworks' guide the questions 'disclosure professionals' would ask of the Challenged Statements is not a proper expert opinion," but instead a legal conclusion, Joost Decl. Ex. 3 ¶ 4; *see also* Joost Decl. Ex. 4 ¶ 17 (at the summary judgment stage, "whether the registration statement was materially accurate and complete as a matter of law").

Plaintiffs challenge each of these opinions. But their *Daubert* motion "does not impugn" Professor Bartlett's "credentials as a foremost expert in his field." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 674 F. Supp. 3d 772, 778 (C.D. Cal. 2023) (denying motion to exclude). Nor do Plaintiffs challenge Professor Bartlett's decades spent studying, teaching, and—critically important—*working* on corporate governance matters. Instead, Plaintiffs insist that Professor Bartlett's reports and testimony comprise "legal conclusions." Mot. at 4–5, 7–8. Their argument mischaracterizes the corporate governance regime, IPO processes, and Professor Bartlett's opinions. Rather than opining on legal issues such as whether Rivian met its "disclosure obligations," Professor Bartlett's reports elucidate critical factual issues unfamiliar to juries: whether "Defendants' conduct []

conform[ed] to industry customs and practices." *S.E.C. v. Criterion Wealth Mgmt. Ins. Servs., Inc.*, 2023 WL 5321081, at *4–5 (C.D. Cal. Apr. 6, 2023) (allowing expert testimony). His expert testimony is eminently useful to the factfinder and should be admitted.

## ARGUMENT

Professor Bartlett's testimony is "admissible under Rule 702" because "it is relevant and reliable." *Dunbar v. City of Riverside*, 2017 WL 11636155, at *5 (C.D. Cal. June 6, 2017) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).

**Reliability.** Professor Bartlett's testimony is reliable. His reports reflect his tremendous "basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010); *see* Joost Decl. Ex. 2 ¶¶ 1–8 (setting out Professor Bartlett's decades of academic and hands-on experience in corporate governance). And the evidence he provides is grounded "within h[is] area of expertise." *In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2022 WL 1814440, at *18 (N.D. Cal. June 2, 2022) (denying motion to exclude).

**Relevance.** Because this case relates to subject matters that are not common knowledge—IPOs (among other complex topics)—Professor Bartlett's "knowledge and experience . . . may help the jury contextualize and make sense of complicated information." *Arriaga v. Logix Fed. Credit Union*, 2022 WL 3052318, at *3 (C.D. Cal. Apr. 22, 2022) (expert did not "invade[ ] the authority of the trier of fact" by providing useful information about "the credit reporting industry"). Such expert opinions are especially helpful where they shed light on the customs and practices underlying already-complex subject matters. *E.g.*, *United States v. Sullivan*, 2022 WL 3716594, at *8 (N.D. Cal. Aug. 28, 2022) (allowing expert testimony as to whether defendant's "alleged actions were not consistent with industry best practices").

**Ultimate Issues.** While the jury may choose to rely on aspects of Professor Bartlett's testimony to determine "ultimate issue[s]" in this case, the Federal Rules

allow for "[e]xpert testimony [that] concern[s] an ultimate issue." Fed. R. Evid. 704(a); *Panchenko v. Comenity Cap. Bank*, 2025 WL 2372597, at *4 (N.D. Cal. Aug. 13, 2025) (Rule "704(a) provides that expert testimony that is otherwise admissible is 'not objectionable just because it embraces an ultimate issue' to be decided by the trier of fact."). That an expert's opinion bears on an ultimate issue does not render it a "legal conclusion." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("While Caliri's testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, Caliri never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law)."). Professor Bartlett's opinions on industry practice do not supplant the jury's role; they simply provide the necessary information for the jury to make its own informed conclusions.

## I. Professor Bartlett's Analysis of Industry Custom for Independent Director Diligence Assists the Factfinder

Professor Bartlett's opinions are of great value to the factfinder. As an experienced scholar of corporate governance and securities law, Professor Bartlett has worked with attorneys, academics, investors, and corporate executives and directors across the lifecycles of large and emerging companies. As a faculty leader of the Rock Center's Directors College, Professor Bartlett engages annually "with leading CEOs, directors, regulators, jurists, and scholars on a rigorous and balanced examination of a broad range of issues that confront modern boards[.]" Joost Decl. Ex. 2 ¶ 3 n.1. This experience, in addition to his full-time academic endeavors, provides Professor Bartlett's unique insight into "customary conduct of reasonable, prudent, and diligent independent directors in reviewing a registration statement." *Id.* ¶ 22. Given the opaque nature of pre-public companies and the complexity of IPOs, Professor Bartlett's opinions are likely to help the "jury understand unfamiliar terms and concepts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (finding expert testimony "particularly" useful "in complex cases involving the securities

industry"); *Arriaga*, 2022 WL 3052318, at *3 (holding that expert's "testimony based on his specialized knowledge and experience . . . may assist the trier of fact").

Plaintiffs argue that Professor Bartlett's reports and testimony are legal opinions and seek to exclude his reports on that ground.[1] Mot. at 4–5, 7–8. Not so. As a threshold matter, Professor Bartlett's Opening Report explicitly states his "opinions are based on customary practice rather than the legal standards governing director conduct under U.S. securities laws." Joost Decl. Ex. 2 ¶ 22 n.16. He affirmed this distinction in deposition. Leong Decl. Ex. 4 at 31:19–22. Nowhere in his reports does Professor Bartlett describe the Independent Directors' "reasonableness" under the federal securities laws. *See* Mot. at 4–5 (quoting *In re Software Toolworks Inc. Sec. Litig.*, 50 F.3d 615, 621 (9th Cir. 1994) (the Section 11 standard of care for reasonable due diligence is "that required of a prudent man in the management of his own property")). Indeed, Plaintiffs cannot identify instances where Professor Bartlett usurps legal issues to be decided by this Court or the jury. Yet Plaintiffs advance two arguments purporting to show that Professor Bartlett "substitut[es] his judgment as a law professor for that of the jury." *Id.* 4. Each fails.

### A. Professor Bartlett's Opines About Industry Custom, Not the Law

In his Opening Report, Professor Bartlett opined that "the scope and extent of the due diligence processes undertaken by Rivian's Independent Directors were appropriate and consistent with the . . . common industry practices for independent directors." Joost Decl. Ex. 2 ¶ 56. Plaintiffs attempt to excise Professor Bartlett's

---

[1] Plaintiffs' motion (infrequently) asserts that Professor Bartlett's opinions were "unreliable" while taking no real issue with the *reliability* of Professor Bartlett's reports. *E.g.*, Mot. at 8 ("unreliable" because Professor Bartlett "attempts to substitute his judgment for that of the jury"), 14 (Professor Bartlett's "unreliable opinions would mislead the jury as to the nature of the SEC's review"). These are merely regurgitations of Plaintiffs' arguments about whether Professor Bartlett's opinions are legal opinions, masquerading as arguments about reliability. *See Ellis v. Infinite Labs, LLC*, 2014 WL 12558861, at *2 (C.D. Cal. Aug. 25, 2014) (reliability is tested on whether the testimony "has a reliable basis in the knowledge and experience of the relevant discipline").

opinions on the Independent Directors' investigation from their context by arguing that the "reasonableness" of the Independent Directors' due diligence reflects "the very legal standard set forth in Section 11." Mot. at 5. But Professor Bartlett's reports expressly speak to whether and how the Individual Directors' due diligence investigation comported with *industry practices*, not whether they satisfied the securities laws. *Cf. Hangarter*, 373 F.3d at 1016 (admitting expert opinion that "supported a finding" of bad faith, but did not "reach[] a legal conclusion that Defendants actually acted in bad faith").

Plaintiffs' own cases confirm this distinction between an opinion based on industry practice and a legal opinion. *See* Mot. at 7. As the Second Circuit explained in the context of Section 12 of the Securities Act of 1933, while "industry standards and customs are highly persuasive in setting the standard of care, . . . they are not controlling." *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 131–32 (2d Cir. 2017). The Ninth Circuit has similarly foreclosed the possibility that industry standards could displace judicially ordained standards of care in securities cases. *S.E.C. v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001) ("[T]he SEC contends the standard of care by which [defendant]'s conduct must be measured is not defined solely by industry practice, but must be judged by a more expansive standard of reasonable prudence, for which the industry standard is but one factor to consider. We agree."). In short, Professor Bartlett's opinions that the Independent Directors complied with *industry* standards do not supplant the Court's or the factfinder's role of determining whether the Independent Directors complied with *legal* standards.

Plaintiffs' additional cases, Mot. at 4, 6, are inapposite:

- In *Nationwide Transport Finance*, the excluded expert opined on contractual rights and liability, classic examples of legal questions. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("It, and Cass, *must pay* Nationwide. . . . The report repeatedly described Cass's conduct as

'*wrongful*.'");

- In *Aguilar*, the expert concluded that "almost anyone reading these [application] instructions . . . would conclude that a *definite promise had been made*." *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 447 (9th Cir. 1992); and
- In *Chavez*—where the expert's report "read[] like a legal brief"—the testimony established both a "duty to" and "fail[ure] to take reasonable steps to ensure compliance" with California law. *Chavez v. Charter Commc'ns, LLC*, 2022 WL 2079323, at *1, 4 (C.D. Cal. Jan. 19, 2022).

Here, by contrast, Professor Bartlett did not opine on liability, nor did he find and make determinations based on legal duties. His reports describe, and his opinions weigh on, whether the Independent Directors' investigation conformed to industry practices across IPOs. *E.g.*, Joost Decl. Ex. 2 ¶ 56 (considering whether the Independent Directors "regularly attend[ed] Board meetings," "underst[ood] the disclosure requirements," "receive[d] updates from the Company," and reviewed drafts); *see also Criterion Wealth Mgmt.*, 2023 WL 5321081, at *5 (SEC's expert could "testify that Defendants' conduct did not conform to industry customs and practices").

Plaintiffs also argue that "Bartlett's recitation of industry standards embraces the ultimate legal issue of reasonableness," Mot. at 7, yet do not show how. Different experts offered by both Plaintiffs and Defendants in this case and opining on different substantive areas all agree that the securities laws, legal precedent, and practical experience inform individuals' and entities' conduct in IPOs. *See, e.g.*, Joost Decl. Ex. 2 ¶¶ 60–63 (Professor Bartlett describing the Independent Directors' awareness of their obligation to make accurate disclosures); Leong Decl. Ex. 2 ¶¶ 28–30 (Lawrence explaining that underwriters' due diligence informed by "authoritative and informative sources, including the SEC, FINRA, . . . various SEC committees, various ABA committees and task forces, judicial decisions, and informative practitioner and

academic literature"); Leong Decl. Ex. 3 ¶ 54 (Jackson opining that risk-factor language is influenced by "decades of interactions among practitioners, companies and regulators"). In a highly regulated environment such as IPOs, it is no surprise that industry standards reflect ever-developing legal and practical principles, combined with "authoritative, publicly available pronouncements." *See Dain Rauscher*, 254 F.3d at 857. Professor Bartlett's expert opinions provide essential context on how the Independent Directors conducted themselves in the leadup to Rivian's IPO. *E.g.*, Joost Decl. Ex. 2 ¶¶ 57–63. These opinions are useful to the factfinder, and should be allowed.

**B. Professor Bartlett Does Not Opine on Mental States or the SEC's Beliefs**

Plaintiffs further assert two arguments about opinions Professor Bartlett did not state: (1) that his Opening Report "improperly opines on the Independent Directors' motives, intent, and states of mind," Mot. at 8, and (2) that his Rebuttal Report "draws inferences and divines meaning from the SEC's review of Rivian's draft Registration Statement," *id.* at 13. Neither is grounded in Professor Bartlett's reports or testimony.

***Discussions about the Independent Directors' actions are not opinions about their states of mind.*** Plaintiffs conflate Professor Bartlett's review of the evidence with attempts to get inside the Independent Directors' minds. But it is axiomatic that expert witnesses "may base an opinion on facts or data in the case that the expert has been made aware of." Fed. R. Evid. 703. Based on his review of hundreds of documents in the record, Joost Decl. Ex. 2 ¶ 23 & App'x B, his decades of experience, and his knowledge of industry custom, Professor Bartlett provides his observations about the Independent Directors' *actions* and sworn testimony regarding their *actions*. *E.g.*, *id.* ¶ 61 (recounting Krawiec's testimony that Rivian's board "was making sure that we were accurately assessing the -- the risks that management identified as part of the offering"), 62 (recounting Schwartz's testimony that "[e]veryone took this very seriously as part of our fiduciary responsibility"). Experts may offer opinions based on their analysis of behaviors and conduct. *See, e.g.*, *Bettencourt v. SharkNinja Operating*

*LLC*, 2024 WL 3187148, at *7 (N.D. Cal. June 25, 2024) ("Mr. King's opinion that the warnings are evidence of SharkNinja's awareness of the hazard is admissible because it is relevant and reliable."); *Labbe v. Dometic Corp.*, 2025 WL 1755823, at *13 (E.D. Cal. June 25, 2025) (denying "motion to exclude the [] experts' testimony regarding defendant's knowledge of a potential product defect" where the expert's opinions were based on "fact testimony gleaned from the deposition of another witness").[2]

Plaintiffs similarly challenge Professor Bartlett's analysis of the Independent Directors' decision to purchase Rivian stock with their own money during the IPO. *See* Mot. at 9–10. They claim that "Bartlett provides no methodological basis to support his conclusion." *Id.* 9. First, this is factually wrong. As Professor Bartlett explained, his review of the testimonial and documentary evidence and his experience "*indicate[s]* that the Independent Directors believed in the prospects of the Company." *See Panchenko*, 2025 WL 2372597, at *3 (expert status can be conferred by "experience, training, or education") (quoting Fed. R. Evid. 702)). Second, Plaintiffs' argument is a mere deflection from the fact that they cannot explain why any officer or director would buy Rivian's stock at the IPO price if they believed that price was fraudulently inflated. *See* MSJ at 42–43; *see also* MSJ Reply at 11.

***Professor Bartlett does not "divine[] meaning" from the SEC's review.*** Plaintiffs' accusation that Professor Bartlett "draws inferences and divines meaning" from the SEC's review of Rivian's registration statement has no basis in Professor Bartlett's Rebuttal Report. Plaintiffs mischaracterize Professor Bartlett's statement that the SEC did not "signal to Rivian during its IPO process that any of Rivian's final risk factors were problematic, deficient, or misleading." Joost Decl. Ex. 3 ¶ 24; Mot. at 13.

[2] Plaintiffs' attempt to exclude Professor Bartlett's opinions is both overbroad and premature. As the *Labbe* court explained, that "[g]enerally, 'state of mind' and 'intent' objections are better ruled on at trial: the context of the testimony and the purposes for which it is offered are critical." 2025 WL 1755823, at *13 (quoting *In re Juul Labs*, 2022 WL 1814440, at *14).

First, Professor Bartlett made this opinion to rebut the improper opinion of Plaintiffs' proffered expert Robert Jackson "that 'practitioner frameworks' guide the questions 'disclosure professionals' would ask of the Challenged Statements." *See* Joost Decl. Ex. 3 ¶ 4; *infra* at I.C. For example, Professor Bartlett explained that Professor Jackson's opinion that "standard practitioner frameworks for preparing risk-factor disclosure should lead disclosure professionals to inquire whether the risks described in those terms had actually materialized" effectively states that lawyers should endeavor to avoid including "materially misleading" statements in "risk factor or MD&A disclosures." Joost Decl. Ex. 4 ¶ 16 (quoting Leong Decl. Ex. 3 ¶ 6). Professor Jackson's "opinion," of course, merely restates legal requirements.

Second, nowhere does Professor Bartlett opine that the absence of a negative "SEC signal to Rivian during its IPO process," Joost Decl. Ex. 3 ¶ 24, is equivalent to a "representation that the SEC has determined [a] prospectus is truthful," Mot. at 14. Rather, Professor Bartlett explained that the SEC's review is a matter of "ensur[ing] the disclosures are adequate and comply with SEC rules," Joost Decl. Ex. 2 ¶ 36, and confirmed in his deposition that SEC review does not provide guarantees of accuracy, Leong Decl. Ex. 4 at 202:9–203:4. In short, his opinion accurately reflects the SEC's review of Rivian's IPO disclosures.

### C. Plaintiffs' Arguments Only Underscore that *Their* Proffered Expert's "Practitioner Frameworks" Are Pure Legal Opinion

As set forth in Defendants' motion to exclude Professor Jackson's opinions, it is Plaintiffs' expert whose opinions veer into impermissible legal conclusions. *See* ECF No. 667. A comparison of Professor Jackson's "practitioner framework" and Professor Bartlett's reports on industry customs illustrates the propriety of Professor Bartlett's opinions. For example, Professor Bartlett's Opening Report explains what comprises industry custom during an IPO—legal due diligence, business due diligence, and financial due diligence—and outside directors' roles in those processes. Joost Decl. Ex. 2 ¶¶ 37–41. Professor Jackson's opinions, by contrast, do not "provid[e] relevant

evidence of industry practice nor trade usage for this matter," and instead speak to issues of liability.[3] Joost Decl. Ex. 3 ¶ 7–8 (Professor Jackson's "practitioner frameworks" "provide[] little in the way of industry custom beyond inquiring into whether corporate disclosures (a) comply with relevant SEC requirements and policy preferences at a specific moment in time and (b) are not materially misleading."). In Professor Jackson's Opening Report, for example, he opines that "practitioners drawing on [risk factor] language used by a peer firm should ask whether that language should be 'tailor[ed]' to the company's 'circumstances and particular risk profile.'" But for factual support, he merely states that this "inquiry is customarily made" by several types of industry professionals without explaining what that inquiry is or how it is typically conducted. *See* Leong Decl. Ex. 3 ¶ 110.

Rather than aiding the factfinder in understanding how IPOs work, Professor Jackson's opinions play no informative role and instead instruct the factfinder what they should find. Contrary to Plaintiffs' contention, it is not an "inadmissible legal opinion" for Professor Bartlett to identify these deficiencies. *See* Mot. at 15; *see also Updike v. Am. Honda Motor Co. Inc.*, 2024 WL 4182232, at *15 (D. Ariz. Sept. 13, 2024) ("Furthermore, Dr. Wolfe is not 'misstating the law' as he does not opine on any 'ultimate issue.' . . . Instead, his testimony attempts to rebut the credibility of Dr. Fowler's expert opinion."); *Carter v. Johnson & Johnson*, 2022 WL 4700575, at *3 (D. Nev. Sept. 29, 2022) ("[A]n expert can criticize another expert's methodology without affirmatively disproving the matter[.]").

## CONCLUSION

For the foregoing reasons, Rivian Defendants respectfully request that the Court deny Plaintiffs' motion to exclude Professor Bartlett's opinions.

---

[3] Professor Bartlett's statement that "it will be up to the Court to determine if Rivian's registration statement was materially accurate" is a mere observation of the procedural posture of this case. *See* Joost Decl. Ex. 4 ¶ 20; Mot. at 15–16. It presents no risk of misleading the jury since—should this case reach a jury—that threshold legal question will have either been answered on summary judgment or presented to the jury.

Dated: September 19, 2025

FRESHFIELDS US LLP

By: */s/ Doru Gavril*
Doru Gavril

*Attorneys for Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham certifies that this brief contains 3,972 words, which [choose one]:

_X_ complies with the word limit of L.R. 11-6.1.

____ complies with the word limit set by court order.

Dated: September 19, 2025

By: */s/ Doru Gavril*
Doru Gavril