BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
EUNICE LEONG, State Bar No. 320499
eunice.leong@freshfields.com
REBECCA LOCKERT, State Bar No. 348810
rebecca.lockert@freshfields.com
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

COURTNEY Y. SOHN (*pro hac vice*)
courtney.sohn@freshfields.com
FRESHFIELDS US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007

*Attorneys for Defendants Rivian Automotive, Inc.,*
*Robert J. Scaringe, Claire McDonough, Jeffrey R.*
*Baker, Karen Boone, Sanford Schwartz, Rose*
*Marcario, Peter Krawiec, Jay Flatley, and*
*Pamela Thomas-Graham*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHARLES LARRY CREWS, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, CLAIRE MCDONOUGH, JEFFREY R. BAKER, KAREN BOONE, SANFORD SCHWARTZ, ROSE MARCARIO, PETER KRAWIEC, JAY FLATLEY, PAMELA THOMAS-GRAHAM, MORGAN STANLEY & CO., LLC, GOLDMAN SACHS & CO., LLC, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., DEUTSCHE BANK SECURITIES INC., ALLEN & COMPANY LLC, BOFA | Case No.: 2:22-cv-01524-JLS-E<br><br>**RIVIAN DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE SPECIFIC OPINIONS AND TESTIMONY OF STEVEN SCHWARTZ, Ph.D.**<br><br>Date:   October 24, 2025<br>Time:   10:30 a.m.<br>Judge: Hon. Josephine L. Staton<br>Ctrm:  8A, 8th Floor<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED PARTIALLY UNDER SEAL** |

1  SECURITIES, INC., MIZUHO
   SECURITIES USA LLC, WELLS FARGO
2  SECURITIES, LLC, NOMURA
   SECURITIES INTERNATIONAL, INC.,
3  PIPER SANDLER & CO., RBC CAPITAL
   MARKETS, LLC, ROBERT W. BAIRD &
4  CO. INC., WEDBUSH SECURITIES
   INC., ACADEMY SECURITIES INC.,
5  BLAYLOCK VAN, LLC, CABRERA
   CAPITAL MARKETS LLC, C.L. KING &
6  ASSOCIATES, INC., LOOP CAPITAL
   MARKETS LLC, SAMUEL A.
7  RAMIREZ & CO., INC., SIEBERT
   WILLIAMS SHANK & CO., LLC, and
8  TIGRESS FINANCIAL PARTNERS LLC,

9         Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................. ii

TABLE OF ABBREVIATIONS............................................................................ iv

INTRODUCTION.................................................................................................1

BACKGROUND.................................................................................................. 1

ARGUMENT........................................................................................................2

   I. DR. SCHWARTZ'S OPINIONS ARE RELEVANT AND RELIABLE..................... 2

   II. DR. SCHWARTZ'S OPINIONS ARE RELEVANT AND THEREFORE ADMISSIBLE................................................................................................. 4

      A. Dr. Schwartz's Opinions Regarding "Economic Reasonableness" are Relevant and Helpful to Provide Economic Context................................4

      B. Dr. Schwartz Provides Relevant Opinions Regarding Pricing Strategies in the EV Industry.........................................................................................6

   III. PLAINTIFFS BASELESSLY CLAIM THAT DR. SCHWARTZ'S METHODOLOGY IS UNRELIABLE.......................................................................7

      A. Dr. Schwartz's Analysis of Market Reaction to March 1, 2022 Pricing Announcement is Not "State of Mind" Testimony.................................7

      B. Plaintiffs Inconsequentially Find Fault With Dr. Schwartz's Analysis of Rivian's Financial Projections............................................................ 8

      C. Plaintiffs Engage in Baseless Ad Hominem Attacks......................... 10

   IV. DR. SCHWARTZ'S OPINIONS REGARDING PRICING STRATEGIES ARE PROPER REBUTTAL OPINIONS.............................................................. 12

CONCLUSION.................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
  738 F.3d 960 (9th Cir. 2013)..................................................................2

*Apple iPod iTunes Antitrust Litig.*,
  2014 WL 4809288 (N.D. Cal. Sept. 26, 2014)...................................12

*Andrews v. Plains All Am. Pipeline, L.P.*,
  2017 WL 10543402 (C.D. Cal. Feb. 28, 2017)...................................10

*In re Apple Inc. Sec. Litig.*,
  2023 WL 4556765 (N.D. Cal. Jul. 17).............................................7, 13

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  613 F. Supp. 3d 1308 (S.D. Cal. 2020)...............................................8

*Biotech. Value Fund, L.P. v. Celera Corp.*,
  2015 WL 138168 (N.D. Cal. Jan. 9, 2015)..........................................8

*Chan v. ArcSoft, Inc.*,
  2023 WL 8260886 (N.D. Cal. Nov. 29, 2023)......................................7

*Datalex (Ireland) Ltd. v. PSA, Inc.*,
  2003 WL 25667620 (C.D. Cal. Jan. 30, 2003).....................................7

*Flores v. United States*,
   023 WL 3341080 (C.D. Cal. Mar. 21, 2023).......................................7

*Fujifilm Corp. v. Motorola Mobility LLC*,
  2015 WL 757575 (N.D. Cal. Feb. 20, 2015)........................................12

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004)..............................................................4

*Johns v. Bayer Corp.*,
  2013 WL 1498965 (S.D. Cal. Apr. 10, 2013)......................................12

*Lanard Toys Ltd. v. Anker Play Prods., LLC*,
  2020 WL 6873647 (C.D. Cal. Nov. 12, 2020).......................................8

*McCrary v. Elations Co. LLC*,
  2014 WL 12589137 (C.D. Cal. Dec. 2, 2014).......................................3

*Messick v. Novartis Pharms. Corp.*,
  747 F.3d 1193 (9th Cir. 2014).............................................................2

**Cases**                                                              **Page**

*SEC. v. Daifotis*,
    2012 WL 2051193 (N.D. Cal. June 7, 2012)...............................................................4

*SEC v. Frost*,
    2021 WL 6103551 (C.D. Cal. Nov. 15, 2021)...........................................................12

*Space Data Corp. v. Alphabet Inc.*,
    2019 WL 2603285 (N.D. Cal. June 25, 2019)............................................................2

*Sumotext Corp. v. Zoove, Inc.*,
    2020 WL 533006 (N.D. Cal. Feb. 3, 2020)..............................................................12

*In re Twitter, Inc. Sec. Litig.*,
    2020 WL 9073168 (N.D. Cal. Apr. 20, 2020)............................................................7

*United States v. Holmes*,
    2021 WL 2044470 (N.D. Cal. May 22, 2021)..........................................................13

**Other Authorities**

Fed. R. Evid. 702.............................................................................................................2

# TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| AC | Plaintiffs' Amended Consolidated Complaint for Violations of the Federal Securities Laws (March 2, 2023), ECF No. 150 |
| BOM | Bill of materials |
| EV | Electric vehicle |
| IPO | Initial public offering |
| Joost Decl. Ex. | Exhibits attached to the Declaration of Jennifer L. Joost in Support of Plaintiffs' Motions to Exclude Opinions and Testimony of Experts (1) Robert Bartlett; (2) Daniel R. Fischel; (3) Peter Hasenkamp; (4) Steven Schwartz; and (5) Lawrence W. Smith (Aug. 29, 2025), ECF No. 677 |
| Leong Decl. Ex. | Exhibits attached to the concurrently filed Declaration of Eunice Leong in Support of Rivian Defendants' Oppositions to Plaintiffs' Motions to Exclude Opinions and Testimony of Experts (1) Robert Bartlett; (2) Daniel R. Fischel; (3) Peter Hasenkamp; (4) Steven Schwartz; and (5) Lawrence W. Smith |
| Motion | Memorandum in Support of Plaintiffs' Motion to Exclude Specific Opinions and Testimony of Steven Schwartz, Ph.D. (Aug. 29, 2025), ECF No. 679-3 |
| MSJ | Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment (Aug. 18, 2025), ECF No. 650 |
| MTD Order | Order Denying: (1) Rivian Defendants' Motion to Dismiss; and (2) Underwriter Defendants' Motion to Dismiss (July 3, 2023), ECF No. 172 |
| Rivian | Rivian Automotive, Inc. |

| Abbreviation | Definition |
|---|---|
| Rivian Defendants | Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham |

Emphasis is added unless otherwise noted. Certain quotation marks, alteration marks, citations, and emphases have been omitted.

## INTRODUCTION

Fact discovery has established that Rivian did not decide to increase R1 prices until shortly before it announced the change in March 2022. *See* ECF No. 650 at 16. In order to explain EV industry pricing strategy and decision making and economic landscape in the time leading up to Rivian's ultimate pricing decision, the Rivian Defendants retained economist Steven Schwartz, Ph.D. Plaintiffs seek wholesale exclusion of Dr. Schwartz's opinions on relevance and reliability grounds and engage in *ad hominem* attacks against Dr. Schwartz. However, any quibbles about Dr. Schwartz's expert testimony and report go to weight, not admissibility. Plaintiffs' attempt fails on three grounds:

(1) Opinions that provide context as to the "economic reasonableness" of Rivian's approach to disclosure of potential future pricing changes are relevant. In order for the jurors to evaluate and understand Rivian's approach, opinions that shed light on standard pricing practices in the electric vehicle ("EV") industry are also relevant and helpful.

(2) Dr. Schwartz employed reliable methodology by analyzing publicly available market data, witness testimony, and internal and external financial projections to draw conclusions about what an efficient market expected regarding Rivian's potential future pricing change.

(3) Dr. Schwartz's rebuttal clarified misimpressions left by Plaintiffs' own expert Benjamin Sacks and appropriately responded and opined on the economic relevance of Sacks's assignments and opinions.

As such, Dr. Schwartz's opinions and testimony should not be excluded.

## BACKGROUND

Dr. Schwartz is an economist and Managing Director at Secretariat Advisors. Joost Decl. Ex. 14 ¶ 4. Dr. Schwartz is an expert in applied microeconomics, which applies foundational economic principles to answer questions about the behavior of individual actors within the economy (*e.g.,* consumers and businesses) and the way in

which the economy is organized into markets. *Id.* ¶ 6. He has expertise in pricing theory, a central element of microeconomic theory, and has studied pricing behavior in a variety of industrial and consumer markets, especially in those where technology is rapidly developing—like EVs. *Id.*

The Rivian Defendants retained Dr. Schwartz to analyze from an economic perspective Rivian's pricing strategies and decisions in light of the economic landscape that Rivian and other EV firms were operating in at the time of Rivian's IPO and throughout the Class Period. *Id.* ¶ 7. Given that Rivian's decision to increase R1 pricing is a central pillar in Plaintiffs' lawsuit, Dr. Schwartz's opinions will assist jurors in understanding how EV companies make pricing decisions in rapidly changing environments, what information was disseminated into the markets leading up to and at the time of Rivian's March 1, 2022 pricing announcement, and what contemporaneous macroeconomic conditions influenced pricing strategies in the EV industry. As a trained economist who has dedicated his professional experience and training to this topic, there are few individuals better positioned to provide a jury with this context.

## ARGUMENT

## I.    DR. SCHWARTZ'S OPINIONS ARE RELEVANT AND RELIABLE

Dr. Schwartz's opinions should be admitted because they will help the jury "to understand the evidence or to determine a fact in issue" and are based on a reliable methodology. Fed. R. Evid. 702. "So long as an expert's methodology is sound and her opinions satisfy the requirements of Rule 702, underlying factual disputes and how much weight to accord the expert's opinion are questions for the jury." *Space Data Corp. v. Alphabet Inc.*, 2019 WL 2603285, at *1 (N.D. Cal. June 25, 2019). Thus, on a motion to exclude an expert, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013); *see also Messick v. Novartis*

*Pharms. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014) (holding that "issues regarding the correctness of [an] opinion, as opposed to its relevancy and reliability, are a matter of weight, not admissibility"). This is "a flexible inquiry" that favors admission of expert testimony "as long as the process [the expert used] is generally reliable." *McCrary v. Elations Co. LLC*, 2014 WL 12589137, at *15 (C.D. Cal. Dec. 2, 2014).

*First*, Dr. Schwartz's opinions regarding Rivian's "economically rational" decision not to announce potential price changes until a final decision had been made is relevant to provide industry context and decision-making frameworks. Importantly, his opinions relate specifically to jurors' ability to determine the reasonableness of inferences Plaintiffs ask them to draw—all without opining on the ultimate legality of Rivian's conduct under the federal securities laws. Similarly, Dr. Schwartz's analysis of pricing strategies in the EV industry is relevant because it will assist the fact-finder in assessing materiality.

*Second*, Plaintiffs' challenge to Dr. Schwartz's analysis of analyst and investor reaction to anticipated changes to R1 pricing is unfounded. Contrary to Plaintiffs' argument, Dr. Schwartz does not opine on the "state-of-mind" of analysts, investors, and the market. Mot. at 7–8. Instead, Dr. Schwartz engaged in a standard and accepted practice for economists in securities cases by synthesizing market data and analyst reports to infer market expectations. Plaintiffs' attempt to distort Dr. Schwartz's conclusions drawn from analyzing Rivian's management and street case financial projections, both of which reflect Rivian's business reality that ████████████ ████████████████████, is also unfounded as even their own expert agreed Rivian faced ████████████████████████. *See* Joost Decl. Ex. 13 at 14–16 (████████████████████████). Plaintiffs' *ad hominem* attacks against Dr. Schwartz are improper and disregard well-established case law holding that qualitative assessment of an expert's interpretation of data and documents is admissible.

*Third*, as is the case in Dr. Schwartz's opening report and testimony, Dr. Schwartz's rebuttal opinions do not contain legal opinions as Plaintiffs suggest. Mot. at 18–19. On rebuttal, Dr. Schwartz simply clarified misimpressions left by Plaintiff expert Benjamin Sacks' opinions that Rivian *knew* it had to increase R1 prices prior to its IPO. Joost Decl. Ex. 13 ¶¶ 23–25 (dedicating an entire section on plaintiffs' allegation that Rivian was already aware that "price increases were necessary to address increases 'on the cost of supplier components and raw materials.'").

## II.   DR. SCHWARTZ'S OPINIONS ARE RELEVANT AND THEREFORE ADMISSIBLE

### A. Dr. Schwartz's Opinions Regarding "Economic Reasonableness" are Relevant and Helpful to Provide Economic Context

Providing industry context is a cornerstone of expert testimony, and courts regularly allow experts to opine on such topics. *See, e.g.*, *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (upholding admission of expert testimony that a certain practice violated industry standards); *SEC v. Daifotis*, 2012 WL 2051193, at *3 (N.D. Cal. June 7, 2012) (expert opinion regarding the regulatory framework and industry practice for mutual funds' communication with the public was proper testimony and helpful to the jury). That is exactly what Dr. Schwartz does here. Specifically, Dr. Schwartz provides context for how "economically rational" actors in the market—such as Rivian—approach disclosure of unfinalized pricing considerations. Joost Decl. Ex. 14 ¶¶ 12(b), 88. He opines that until a final decision as to details, such as amount, models, and timeline, has been made, it is economically rational for businesses to wait to publicly disclose a price increase, given the competitive and proprietary nature of pricing. *Id.* Importantly, Dr. Schwartz's opinions provide more color on the macroeconomic conditions that shift costs beyond a firm's projections and factors that contribute to a firm finalizing pricing decisions. *Id.* at Sections 2–3.

Plaintiffs incorrectly assume that Dr. Schwartz's analysis is irrelevant to the question of "whether Defendants were legally obligated to disclose certain information to potential investors." Mot. at 5. To the contrary, Dr. Schwartz's opinions are directly relevant to the issues of materiality and scienter. Without analyzing the legal disclosure duty of an issuer, Dr. Schwartz explains why firms do not announce tentative pricing until decision parameters such as amount, product scope, and effective timing are set. Joost Decl. Ex. 14 ¶¶ 12, 57, 88. This opinion assists the factfinder for two key reasons. First, the jury will be able to apply this context to determine whether Rivian's decision to not disclose a *potential* price change in its IPO disclosures was consistent with the standard practice of not announcing "competitive" information. *Id.* at ¶ 88. Second, Dr. Schwartz's opinions will help jurors evaluate Plaintiffs' theory that "Defendants had already 'decided' on a specific price increase" rather than "considering" one "prior to the IPO[.]" Joost Decl. Ex. 15 ¶ 16.

Dr. Schwartz's opinions are also relevant to Plaintiffs' loss causation argument. Dr. Schwartz opined that, given ███████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████ Joost Decl. Ex. 14 ¶ 84. Therefore, investors were expecting a price increase, information that was incorporated into the Rivian stock price in an efficient market. *Id.* at ¶ 85. Furthermore, Plaintiffs' fall-back argument that Dr. Schwartz's methodology for this opinion is "unreliable" because Dr. Schwartz did not "assess[]" the "legality" of Rivian's conduct, Mot. at 6, should be summarily rejected. Plaintiffs mischaracterize Dr. Schwartz's testimony. *Id.* In addition, the legality of Rivian's conduct is a legal assessment that Dr. Schwartz neither sought nor needed to undertake.

### B.  Dr. Schwartz Provides Relevant Opinions Regarding Pricing Strategies in the EV Industry

Plaintiffs also attack Dr. Schwartz's analysis of pricing strategies in the EV industry as irrelevant. Mot. at 16–17. Their criticisms again go to weight, not admissibility. Plaintiffs cannot deny that Rivian's pricing strategy is central to their theory of this case. *See, e.g.*, AC ¶ 284; MTD Order at 17–18 (alleging Rivian should have disclosed that "R1 BOM costs materially exceeded its retail prices"); *id.* at 5 (alleging Rivian should have disclosed that its BOM exceeded R1 selling price given BOM was "locked," preventing profitability); *id.* at 22 (asserting Rivian would suffer increased gross losses because each R1 EV component's costs exceeded retail price). But jurors cannot properly evaluate the reasonableness of Rivian's pricing strategy without any information about the pricing strategies of other EV industry participants, or any context about the pricing dynamics, competition, and macropressures in the EV industry. Whether pricing can be used as a potential lever for profitability, Joost Decl. Ex. 14 ¶¶ 28–30, whether other EV manufactures were facing the same inflationary cost pressures and macroeconomic challenges as Rivian in 2021–2022, *id.* ¶¶ 52–53, and how Rivian's unit pricing measured against its peers, *id.* ¶¶ 51–52, are all directly relevant to assessing materiality, as jurors will be able to determine whether Rivian's price increase was foreseeable as part of industry norms.

Plaintiffs criticize Dr. Schwartz for "bas[ing] his opinion solely on his review of public disclosures" of some of Rivian's biggest and most well-known peers to come to the conclusion that he is not aware of any automobile companies that disclose future price increases in registration statements. Mot. at 17. But, naturally, in synthesizing information about what Rivian's peer companies publicly disclosed about their pricing strategies, Dr. Schwartz reviewed these companies' public disclosures. Joost Decl. Ex.

14 ¶ 12(d) & n.9. What else could he do? Tellingly, Plaintiffs are silent on this question.[1]

## III.    PLAINTIFFS BASELESSLY CLAIM THAT DR. SCHWARTZ'S METHODOLOGY IS UNRELIABLE

### A. Dr. Schwartz's Analysis of Market Reaction to March 1, 2022 Pricing Announcement is Not "State of Mind" Testimony

Plaintiffs' argument that Dr. Schwartz's analysis of analyst and investor reactions to Rivian's March 1, 2022 pricing announcement is an opinion "on the state of mind of individuals or entities," Mot. at 7, should likewise be rejected. Courts frequently permit experts to summarize market signals and draw from analyst reports to explain how a reasonable investor would interpret information. *In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168, at *2 (N.D. Cal. Apr. 20, 2020) (admitting opinion of expert who evaluated market participant reactions, opinions, and impressions of information about Twitter to determine what a "reasonable investor" believed); *Chan v. ArcSoft, Inc.*, 2023 WL 8260886, at *5 (N.D. Cal. Nov. 29, 2023) (admitting expert opinion as to what information a reasonable investor would find important). Even in plaintiffs' own case, the court rejected plaintiff's attempt to exclude the expert's opinion claiming that "the jury is capable of reading and understanding the reports themselves," because "analysts draft their reports for use by investors not for a more esoteric or professionalized audience." *In re Apple Inc. Sec. Litig.*, 2023 WL 4556765 at *6 (N.D. Cal. Jul. 17) (expert opinion based on analyst reports "do not invade the province of the jury.").

---

[1] Any alleged flaw in Dr. Schwartz's methodology is a matter of "weight and credibility," not of admissibility. *Flores v. United States*, 2023 WL 3341080, at *4 (C.D. Cal. Mar. 21, 2023) (denying motion to exclude); *Datalex (Ireland) Ltd. v. PSA, Inc.*, 2003 WL 25667620, at *4 (C.D. Cal. Jan. 30, 2003) (whether certain methodologies are suspect or whether mistakes were made go more to the weight of the testimony, not to its admissibility).

Dr. Schwartz's opinions in this matter are quite distinct from the other authorities Plaintiff cites. Mot. at 7–8. In *Lanard Toys*, the expert in question provided his opinion on the defendants' intent and motivations, going so far as to evaluate whether defendants were "confused." *Lanard Toys Ltd. v. Anker Play Prods., LLC*, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020). Here, while Dr. Schwartz opines that Rivian "remained unsure and had not made a decision about the size and scope of the price increase," he is summarizing the testimony by Defendants themselves in depositions. Joost Decl. Ex. 14 ¶ 86 & n.149. In *Celera*, the expert in question went as far as stating the defendant "should not be held accountable," thereby drawing essentially a legal conclusion rather than a factual one. *Biotech. Value Fund, L.P. v. Celera Corp.*, 2015 WL 138168, at *4 (N.D. Cal. Jan. 9, 2015). Here, Dr. Schwartz does not opine on whether Rivian has legally met any disclosure obligations, but instead synthesizes information disseminated to the public in an efficient market to establish the foundation of what the market "knew" or could reasonably "expect[]" or "anticipate." *See, e.g.*, Joost Decl. Ex. 14 ¶¶ 12(g), 61, 63, 64, 67, 70, 85–86. And here, unlike in *Aya Healthcare*, Plaintiffs do not dispute Dr. Schwartz's qualifications or his experience. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1320-21 (S.D. Cal. 2020).

## B. Plaintiffs Inconsequentially Find Fault With Dr. Schwartz's Analysis of Rivian's Financial Projections

Plaintiffs assert that Dr. Schwartz's opinions regarding the impact of economic conditions on Rivian's financial projections are "the product of flawed and unreliable analyses." Mot. at 9. However, the fact that Rivian's management case projections and street case projections were ████████████████ does not affect Dr. Schwartz's conclusion that both reflected Rivian's business reality in a volatile market. *Id.*; Leong Decl. Ex. 5 at 152:21–153:5 (testifying that "[t]here may be differences because [he was comparing management case projections to street case projections], but that doesn't undermine the conclusion about the volatility."). In fact,

1     Plaintiffs' own expert, Benjamin Sacks, ██████████████████████████

2 ██████████████████████████████████████. Joost Decl.

3 Ex. 13 ¶¶ 37–38.

4        Plaintiffs mainly take issue with Exhibit 1 of Dr. Schwartz's report, ████

5 ████████████████████████████████████████████

6 ████████████████████████████████████

7 ███████ Mot. at 10–11; Joost Decl. Ex. 14 ¶ 55. Plaintiffs claim that because the

8 ██████████████████████████████████████████

9 ████████████████████████████████, Dr. Schwartz's

10 expert testimony should be entirely excluded. Leong Decl. Ex. 5 at 153:25–154:5;

11 Mot. at 11. Without citing any sources, Plaintiffs claim that ███████████████████

12 ████████████████████ Mot. at 10. However, Plaintiffs' challenges to Dr.

13 Schwartz's conclusions fall short. As Dr. Schwartz testified, both Rivian's street case

14 and management case models showed ████████████████████████████

15 ██████████████████████████████████████████████

16 ██████████████████████████████████████

17 █████████████████ Leong Decl. Ex. 5 at 155:12–156:12. Plaintiffs do not claim that

18 Rivian's street case model was inaccurate, merely that they were "external." Mot. at 9.

19 Given this, conclusions Dr. Schwartz drew from Rivian's unit economic projections

20 should not be excluded.

21        Next, Plaintiffs quibble with Charts 6 and 7 of Dr. Schwartz's report. Again,

22 without challenging the accuracy, reliability, or validity of the underlying sources,

23 Plaintiffs attempt to take out of context and deliberately misquote Dr. Schwartz's

24 testimony, which Plaintiffs essentially used as a memory exam, to exclude his

25 opinions wholesale. Dr. Schwartz disclosed that "[his] team (operating under [his]

26 supervision and direction) conducted industry research and analysis of the case

27 record," the sources of which can be found in Appendix 2 of his report. Joost Decl.

28 Ex. 14 ¶ 7. To clarify, when asked who prepared Chart 6, Dr. Schwartz responded that

it "would have been prepared by someone on [his] team." Leong Decl. Ex. 5 at 107:2–22. When further asked if he knew "who specifically on [his] team prepared this Chart 6," Dr. Schwartz responded "I don't, not as I sit here." *Id.* Contrary to what Plaintiffs claim, Dr. Schwartz did not testify that "events occurring ***nearly four weeks apart*** . . . appear in Chart 6 to have occurred at the same time," but rather testified that "[o]n a horizontal axis with so many dates [spanning four years], it's hard to make such fine distinctions on the chart. But it's clear from what's in the blue box that ***they are not occurring at the same time.***" Mot. at 12; Leong Decl. Ex. 5 at 112:12–22.

Regarding Chart 7, as is cited in Dr. Schwartz's report, all of the costs of raw materials come from S&P Global Commodity Insights. Joost Decl. Ex. 14 ¶ 46. Without any support, Plaintiffs accuse Dr. Schwartz of being unable to explain "Charts 6 and 7 without the assistance of counsel." Mot. at 12–13. Such "assistance of counsel" was the re-direct portion of Dr. Schwartz's deposition. Leong Decl. Ex. 5 at 245:8–246:7.

Plaintiffs want to exclude Dr. Schwartz's testimony because it is unhelpful to their case. In reality, the economic charts and data Dr. Schwartz presents corroborate the fact that Rivian faced the same cost pressures as its peers and the overall industry at large, at roughly the same time, both before and during the Class Period, which is directly relevant to materiality and loss causation. *See Andrews v. Plains All Am. Pipeline, L.P.*, 2017 WL 10543402, at *8 (C.D. Cal. Feb. 28, 2017) (challenges of probativeness or accuracy of calculations "go to the weight of analysis and are [] appropriate for the trier of fact").

### C. Plaintiffs Engage in Baseless *Ad Hominem* Attacks

Dr. Schwartz is far from the "ventriloquist's dummy" to which Plaintiffs would have him reduced. Mot. at 14–15.

In Section 5 of his report, Dr. Schwartz covered the information disseminated to the market regarding expectations surrounding R1 pricing. In Section 6, Dr. Schwartz analyzed the evolving cost, volume, and price projections of the R1, opining on the

type of pricing strategy Rivian developed. Plaintiffs choose to read Sections 5 and 6 of Dr. Schwartz's report in a vacuum, and even attempted to catch soundbites to serve their end goal during Dr. Schwartz's testimony. Mot. at 14; Leong Decl. Ex. 5 at 225:23–226:10. By engaging in a qualitative assessment of analyst reports and Rivian's contemporaneous documents, Dr. Schwartz does far more than "parrot" the Rivian Defendants' arguments. Mot. at 14–15. Specifically:

- Leading up to Section 5 of his report, Dr. Schwartz opined on economic conditions, on Rivian and its competitors in Section 4, and industry-wide price increases implemented by peers in Section 3. Joost Decl. Ex. 14 ¶¶ 38–60.

- Dr. Schwartz testified with respect to paragraphs 61–63 in Section 5 of his report that they deal with the "same issues of cost increases, price increases by automakers, the fact of headwinds . . . ; other factors affecting cost increases. So I think these three paragraphs taken together speak to the same issue. So it's not just a single analyst. You've got three different analysts who are providing commentary on essentially the same point." Leong Decl. Ex. 5 at 230:1–22.

- The same is true for Section 6, where Dr. Schwartz reviewed and cites Rivian's internal documents to come to the conclusion that Rivian adopted a ██████ ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ Joost Decl. Ex. 14 ¶ 73.

As such, it is misleading to cherry-pick certain paragraphs from Sections 5 and 6 as Plaintiffs have done. Mot. at 14–15. Through his report, Dr. Schwartz explained the economic significance of publicly available data, internal company documents, and analyst commentary to demonstrate consistency between analyst expectations and Rivian's decisions.

Plaintiffs belabor under the mistaken impression that expert analysis can only be quantitative or scientific in nature. To the contrary, courts regularly allow economic experts to develop their opinions by looking to "internal [company] documents,

employee testimony, and discovery responses, third-party information such as contemporaneous financial analysis and press coverage of the development of the [applicable] market, and his own experience." *Apple iPod iTunes Antitrust Litig.*, 2014 WL 4809288, at *7 (N.D. Cal. Sept. 26, 2014); *Sumotext Corp. v. Zoove, Inc.*, 2020 WL 533006, at *11 (N.D. Cal. Feb. 3, 2020) (expert's qualitative opinion based on "employee testimony, third-party industry analyses, and media coverage is enough to establish their admissibility").

None of Plaintiffs' authority proves otherwise. In *Johns v. Bayer Corporation*, the expert provided a "chronological picture" that provided "nothing more than a synopsis of Bayer's marketing of the Vitamin Products." 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013). Similarly, in *Fujifilm*, an expert's testimony in a patent case got excluded because he was "simply rehash[ing] otherwise admissible evidence" about the history of the relationship between Fujifilm and Nokia without any personal knowledge. *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20, 2015). In *Frost*, the dispute centered on the expert's qualifications and experience, not any conclusions made in her testimony. *SEC v. Frost*, 2021 WL 6103551, at *4 (C.D. Cal. Nov. 15, 2021) (Staton, J.). By contrast, Dr. Schwartz considered over 20 analyst reports, roughly 50 news articles and websites, and numerous public filings and academic works alongside his review of internal Rivian documents to draw inferences, form conclusions, and draw support for his opinions. Joost Decl. Ex. 14 App'x II.

## IV.   DR. SCHWARTZ'S OPINIONS REGARDING PRICING STRATEGIES ARE PROPER REBUTTAL OPINIONS

Plaintiffs accuse Dr. Schwartz of "litter[ing]" his rebuttal with his "personal views about Plaintiffs' claims." Mot. at 17. This is untrue: Dr. Schwartz merely clarified misimpressions that Plaintiffs sought to introduce through their expert Sacks, who devoted sections of his report to parroting Plaintiffs' allegations, Joost Decl. Ex. 13 at Section III.C, making an inference that Rivian "knew" it needed price increases,

*Id.* at ¶¶ 9–10, 23, 33. Based on his review of the evidentiary record, Dr. Schwartz responded to Sacks' opinion about Rivian's purported knowledge with respect to some hypothetical price increase. Joost Decl. Ex. 14 ¶¶ 66–69.

Additionally, Plaintiffs conflate analysis and summary. Plaintiffs cite *Apple*, in which an expert referenced analyst reports from earnings calls to show how Apple handled such calls generally. Mot. at 15 (citing 2023 WL 4556765, at *5). Here, however, Dr. Schwartz used analyst reports to draw an economic conclusion. Joost Decl. Ex. 14 ¶¶ 73, 82, 88. Unlike the expert in *Apple*, he did not merely parrot third-party sources without performing further analysis. Furthermore, Plaintiffs' reliance on *United States v. Holmes*, 2021 WL 2044470 (N.D. Cal. May 22, 2021), is likewise unavailing. Mot. at 18. There, the experts in question were physicians testifying about the impact of faulty blood test results on their patients. *Id.* at *29. The court ultimately admitted their opinions but did not permit testimony on the emotional reaction of any patients so as to avoid prejudice to the defendant. *Id.* at *31. No parallels can be drawn between the *Holmes* expert opinions to the economic opinions that Dr. Schwartz offers here.

Nor did Dr. Schwartz improperly offer legal opinions in his rebuttal report. Plaintiffs selectively quote from Section 2 of Dr. Schwartz's rebuttal, in which Dr. Schwartz explicitly states that he does not find Mr. Sacks's assignment "***economically*** meaningful or relevant in the context of this case." Joost Decl. Ex. 15 ¶ 14. Mr. Sacks chose to delve into the realm of economics and finance when he opined that ████ ████████████████████████████████████████████████ ████████████ Joost Decl. Ex. 13 ¶ 10. Thus, it is appropriate for Dr. Schwartz, the Rivian Defendants' economics expert, to respond and opine on the economic relevance of Mr. Sacks' assignment and opinions.

## CONCLUSION

For the foregoing reasons, Rivian Defendants respectfully request that the Court deny Plaintiffs' motion to exclude Dr. Schwartz's opinions.

Dated: September 19, 2025

FRESHFIELDS US LLP

By: */s/ Doru Gavril*
    Doru Gavril

*Attorneys for Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham certifies that this brief contains 4,270 words, which [choose one]:

  <u>X</u>  complies with the word limit of L.R. 11-6.1.

  <u>    </u>  complies with the word limit set by court order.

Dated: September 19, 2025            By: *<u>/s/ Doru Gavril</u>*
                                          Doru Gavril