BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
EUNICE LEONG, State Bar No. 320499
eunice.leong@freshfields.com
REBECCA LOCKERT, State Bar No. 348810
rebecca.lockert@freshfields.com
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants Rivian Automotive, Inc.,
Robert J. Scaringe, Claire McDonough, Jeffrey R.
Baker, Karen Boone, Sanford Schwartz, Rose
Marcario, Peter Krawiec, Jay Flatley, and
Pamela Thomas-Graham*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CHARLES LARRY CREWS, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>             Plaintiff,<br><br>      v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, CLAIRE MCDONOUGH, JEFFREY R. BAKER, KAREN BOONE, SANFORD SCHWARTZ, ROSE MARCARIO, PETER KRAWIEC, JAY FLATLEY, PAMELA THOMAS-GRAHAM, MORGAN STANLEY & CO., LLC, GOLDMAN SACHS & CO., LLC, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., DEUTSCHE BANK SECURITIES INC., ALLEN & COMPANY LLC, BOFA SECURITIES, INC., MIZUHO SECURITIES USA LLC, WELLS FARGO SECURITIES, LLC, NOMURA SECURITIES INTERNATIONAL, INC., PIPER SANDLER & CO., RBC CAPITAL MARKETS, LLC, ROBERT W. BAIRD & CO. INC., WEDBUSH SECURITIES | Case No.: 2:22-cv-01524-JLS-E<br><br>**RIVIAN DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE SPECIFIC OPINIONS AND TESTIMONY OF PETER HASENKAMP**<br><br>Date:   October 24, 2025<br>Time:  10:30 a.m.<br>Judge: Hon. Josephine L. Staton<br>Ctrm:  8A, 8th Floor |

INC., ACADEMY SECURITIES INC.,
BLAYLOCK VAN, LLC, CABRERA
CAPITAL MARKETS LLC, C.L. KING &
ASSOCIATES, INC., LOOP CAPITAL
MARKETS LLC, SAMUEL A.
RAMIREZ & CO., INC., SIEBERT
WILLIAMS SHANK & CO., LLC, and
TIGRESS FINANCIAL PARTNERS LLC,

Defendants.

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES**.................................................................................. ii

**TABLE OF ABBREVIATIONS**........................................................................ iv

**INTRODUCTION**................................................................................................1

**BACKGROUND**..................................................................................................2

**ARGUMENT**.......................................................................................................4

   I. MR. HASENKAMP WELL EXCEEDS THE RULE 702 THRESHOLD.................4

   II. MR. HASENKAMP IS TESTIFYING AS A QUALIFIED INDUSTRY EXPERT.6

   III. MR. HASENKAMP'S EXTENSIVE EXPERIENCE STRONGLY GROUNDS HIS OPINIONS....................................................................................... 9

   IV. MR. HASENKAMP TESTIFIES TO RELEVANT ISSUES................................ 12

   V. MR. HASENKAMP'S TESTIMONY IS FOR THE FACTFINDER TO EVALUATE............................................................................................... 13

**CONCLUSION**..................................................................................................... **14**

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
   738 F.3d 960 (9th Cir. 2013)........................................................................ 5

*Arriaga v. Logix Fed. Credit Union*,
   2022 WL 3052318 (C.D. Cal. Apr. 22, 2022)............................................ 12

*Crescenta Valley Water Dist. v. Exxon Mobile Corp.*,
   2013 WL 12116333 (C.D. Cal. Jan. 8, 2013)............................................ 12

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)................................................................................... 10

*Doyle v. Chrysler Grp. LLC*,
   2015 WL 353993 (C.D. Cal. Jan. 21, 2015)................................................ 6

*Forouzan v. BMW of N. Am., LLC*,
   2018 WL 6016277 (C.D. Cal. June 27, 2018)....................................... 5, 11

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136............................................................................................... 12

*Hangarter v. Provident Life Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004)........................................................... 6, 10, 13

*Johnson v. Wyeth LLC*,
   2012 WL 1204081 (D. Ariz. Apr. 11, 2012)............................................... 9

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999)................................................................................... 10

*Lanard Toys Ltd. v. Anker Play Prods., LLC*,
   2020 WL 6873647 (C.D. Cal. Nov. 12, 2020)............................................ 9

*LaPorta v. BMW of N. Am., LLC*,
   2019 WL 988675 (C.D. Cal. Jan. 24, 2019)................................... 5, 11, 12

*McCrary v. Elations Co. LLC*,
   2014 WL 12589137 (C.D. Cal. Dec. 2, 2014).............................................5

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp. 3d 558 (S.D.N.Y. 2017)......................................................... 9

**Cases**                                                                                        **Page**

*Mukhtar v. Cal. State Univ.*,
    299 F.3d 1053 (9th Cir. Aug. 7, 2022)......................................................... 13

*Orgain, Inc. v. N. Innovations Holding Corp.*,
    2022 WL 2189648 (C.D. Cal. Jan. 28, 2022)....................................... 11, 14

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    691 F. Supp. 2d 448 (S.D.N.Y. 2010)........................................................... 8

*SEC v. Badian*,
    822 F. Supp. 2d 352 (S.D.N.Y. 2011)........................................................... 8

*Space Data Corp. v. Alphabet Inc.*,
    2019 WL 2603285 (N.D. Cal. June 25, 2019).............................................5

*Sumotext Corp. v. Zoove, Inc.*,
    2020 WL 533006 (N.D. Cal. Feb. 3, 2020)................................................ 11

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000)..................................................................... 10

*United States v. Sullivan*,
    2022 WL 3716594 (N.D. Cal. Aug. 28, 2022)................................... 12–13

*Vanguard Logistics Servs. (USA) Inc. v. Groupage Servs. of New England, LLC*,
    2022 WL 17369626 (C.D. Cal. Oct. 4, 2022)............................................. 9

**Other Authorities**

Fed. R. Evid. 702................................................................................... 5, 10

# TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| Action | *Crews v. Rivian Auto., Inc.*, No. 2:22-cv-01524-JLS-E (C.D. Cal. Mar. 7, 2022) |
| BOM | Bill of materials |
| EV | Electric vehicle |
| GAAP | Generally accepted accounting principles |
| ICE | Internal combustion engine |
| Joost Decl. Ex. | Exhibits attached to the Declaration of Jennifer L. Joost in Support of Plaintiffs' Motions to Exclude Opinions and Testimony of Experts (1) Robert Bartlett; (2) Daniel R. Fischel; (3) Peter Hasenkamp; (4) Steven Schwartz; and (5) Lawrence W. Smith (Aug. 29, 2025), ECF No. 677 |
| Leong Decl. Ex. | Exhibits attached to the concurrently filed Declaration of Eunice Leong in Support of Rivian Defendants' Oppositions to Plaintiffs' Motions to Exclude Opinions and Testimony of Experts (1) Robert Bartlett; (2) Daniel R. Fischel; (3) Peter Hasenkamp; (4) Steven Schwartz; and (5) Lawrence W. Smith |
| Motion | Memorandum in Support of Plaintiffs' Motion to Exclude Specific Opinions and Testimony of Peter Hasenkamp (Aug. 29, 2025), ECF No. 679-2 |
| MTD Order | Order Denying: (1) Rivian Defendants' Motion to Dismiss; and (2) Underwriter Defendants' Motion to Dismiss (July 3, 2023), ECF No. 172 |
| Rivian | Rivian Automotive, Inc. |

| Abbreviation | Definition |
|---|---|
| Rivian Defendants | Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham |
| SOP | Start of production |

Emphasis is added unless otherwise noted.  Certain quotation marks, alteration marks, citations, and emphases have been omitted.

## INTRODUCTION

Peter Hasenkamp may be *the* most qualified individual to speak to electric vehicle bills of materials ("BOM"). At minimum, he is one of a handful of individuals who was involved in planning and purchasing the components that made up two pivotal electric vehicles: the revolutionary Tesla Model S, and the equally innovative Lucid Air. Mr. Hasenkamp's experience was not tangential to these projects. He oversaw purchasing and supplying for the entire BOMs for these two cars.

As such, Mr. Hasenkamp was uniquely situated to describe the expected trajectory for BOM for the Rivian R1 models, products of another first-run, revolutionary electric vehicle program. The Rivian Defendants engaged him to provide precisely this insight to the Court. Mr. Hasenkamp fulfilled this responsibility, and described what he experienced working in the EV industry: BOM cost projections rise between concepting and SOP; BOM can be reduced significantly after SOP; and BOM projections rose significantly and unpredictably between late 2021 and early 2022. He further described that, in his review of the record in this Action, Rivian was no exception to what was true for the auto industry as a whole.

Plaintiffs likely did not care for these reasonable, well-founded, and helpful insights. Their own industry expert Charles Baker was not a match for this case, principally because he lacked *any* experience working at a startup EV automaker. Plaintiffs must have been even less pleased with Mr. Hasenkamp after the rebuttal report he submitted in this Action that pointed out the obvious flaws in Mr. Baker's testimony. Plaintiffs' counsel then brought this *Daubert* motion against Mr. Hasenkamp, as they did for every one of Rivian's experts, with no real legal foundation.

The Court should admit the helpful reports and testimony of Mr. Hasenkamp and reject Plaintiffs' Motion for four reasons. ***First,*** Mr. Hasenkamp is testifying as a highly qualified industry expert, not as a lawyer, economist, or mind-reader, as the Motion posits. ***Second,*** Mr. Hasenkamp's extensive experience provides a strong

foundation for his testimony, which is considered under the framework for evaluating "non-scientific" experts. ***Third,*** Mr. Hasenkamp speaks on topics that are directly relevant to this Action, and Plaintiffs' labelling of his opinions as speaking to "ultimate issues" is neither accurate nor a basis for exclusion. ***Fourth,*** assuming *any* of Plaintiffs' arguments were supported (which they are not), Mr. Hasenkamp's testimony would still be appropriately considered by a factfinder rather than excluded. This Motion should be denied along with all of Plaintiffs' *Daubert* motions.

## BACKGROUND

Plaintiffs made Rivian's BOM cost forecasts and its ability to reduce BOM costs the central issues in this case. *E.g.*, MTD Order at 4 ("In September 2021, when Rivian began manufacturing R1 EVs, all materials had been sourced and Rivian's costs were locked in with suppliers."); *id.* at 5 ("According to FE-4, Rivian may have been able to negotiate its material costs downward once its production volumes doubled, but those savings would be around only 5%."); *id.* ("Plaintiffs further allege that Rivian tried to re-source components at lower prices or generate cost reductions, to no avail."). Mr. Hasenkamp can and did uniquely speak to each of these issues as a purchasing and supply chain veteran in the EV industry.

Indeed, Mr. Hasenkamp has a deep (and unchallenged) well of experience in assembling BOMs for EVs. His reports and CV detail roles of increasing responsibility, with experience in ICE vehicles, but a primary focus on assembling EVs that few individuals in the *world* share:

- A.B. in Engineering and Masters of Engineering Management from Dartmouth College. Joost Decl. Ex. 9 ¶ 2.

- Ford Motor Company from 2000–09, with roles of increasing responsibility in Engineering and Product Development, handling vehicle programs for their whole life cycle from concept to production. *Id.* From 2007–08, Mr. Hasenkamp was the Body Engineering Program Manager for the Ford Fiesta Program. *Id.* He was directly responsible for approximately ***19 engineers, $80***

***million in tooling, and $1,500 in per-vehicle costs across 600 parts***. *Id.* He was
also directly involved in setting cost targets and estimating BOM, and for
reducing costs when parts exceeded BOM targets.

- Tesla Motors from 2009–14, beginning as one of the first six employees on the
  Purchasing team for the Tesla Model S. Joost Decl. Ex. 9 ¶ 3. The Model S is
  frequently described as the car that "changed the world" as the first
  widely-produced consumer electric vehicle. Leong Decl. Ex. 6 at 1. In 2011,
  Mr. Hasenkamp became Director of Purchasing at Tesla, and oversaw the entire
  Model S BOM, consisting of ***2,500 parts from 200–300 suppliers***. Joost Decl.
  Ex. 9 ¶ 3. He was deeply involved with sourcing the Model S BOM, and
  successfully reducing that BOM, which greatly exceeded its cost target at start
  of production ("SOP"). *Id.*

- Lucid Motors from 2015–23. *Id.* ¶ 4. Mr. Hasenkamp began as Lucid's Director
  of Purchasing, before becoming Vice President, Global Supply Chain in 2018.
  *Id.* Mr. Hasenkamp oversaw ***every aspect*** of assembling, costing, and sourcing
  Lucid's first vehicle, the all-electric Lucid Air. *Id.* As part of this role, Mr.
  Hasenkamp managed the launch of the Lucid Air in 2021 during the COVID-19
  pandemic, and also worked to reduce the costs of the Lucid Air after SOP. *Id.*

Mr. Hasenkamp offered opinions in this case that are entirely aligned with his
experience. He opined, based on his experience and by reference to other supporting
sources, including the record in this Action:

- That BOM, which is known as an estimate until SOP within the auto industry,
  tends to rise between concepting, or the first design stage, and SOP, due to
  factors beyond the control of automakers, and that these increases can be
  particularly acute for new-entrant EV automakers, Joost Decl. Ex, 9 ¶¶ 13–20;

- That BOM costs are known to decrease in the auto industry, after SOP and
  large-scale production are reached, and that potential cost decreases at new
  entrant EV automakers are greater, *id.* at ¶¶ 21–36;

- That automakers, including those focusing on EVs, do in fact expect BOM to decrease this way, *id.* at ¶¶ 37–41;

- That BOM costs increased especially acutely and unpredictably in late 2021/early 2022, especially for EV automakers, due to a confluence of factors including COVID-related supply chain disruptions, raw material shortages, and global inflation, *id.* at ¶¶ 42–64;

- That each of these points, globally true within the auto industry, was true specifically for Rivian, based on Mr. Hasenkamp's review of Rivian internal documents and deposition testimony in this Action, *id.* at ¶¶ 65–109; and

- That the opinions of Mr. Baker were not persuasive, *inter alia*, because they were not based on *any* EV automaker experience. *See generally* Joost Decl. Ex. 10.

Plaintiffs' entire Motion is a distraction from the clear usefulness of these opinions to this Action. Mr. Hasenkamp is uniquely qualified within the EV industry to speak to how EV BOMs are assembled, how and when their projected costs are expected to increase and decrease, and how and why they changed in the unprecedented period immediately before, during, and after Rivian's IPO. Instead, Plaintiffs imagine arguments that Mr. Hasenkamp does not make, and roles he does not play. Contrary to the Motion, Mr. Hasenkamp does not testify as an economist, Mot. at 3–4, testify as a scientific expert, *id.* at 7, 8, 11, 13, 18, "parrot" or "regurgitate" public statements, *id.* at 4–5, or opine on legal or ultimate issues, *id.* at 8, 12, 14, 15. Plaintiffs' Motion is, at best, a disagreement with Mr. Hasenkamp's opinions, and an argument about the weight that they should be accorded. As set forth below, it raises no real grounds for relief and should be denied.

## ARGUMENT

## I.    MR. HASENKAMP WELL EXCEEDS THE RULE 702 THRESHOLD

Given the relevance of Mr. Hasenkamp's experience to this Action, he easily clears the hurdle set for experts by the Federal Rules of Evidence. Under that standard,

expert testimony is admissible if it is helpful "to understand the evidence or to determine a fact in issue" and is based on a reliable methodology. Fed. R. Evid. 702. "So long as an expert's methodology is sound and [their] opinions satisfy the requirements of Rule 702, underlying factual disputes and how much weight to accord the expert's opinion are questions for the jury." *Space Data Corp. v. Alphabet Inc.*, 2019 WL 2603285, at *1 (N.D. Cal. June 25, 2019). Thus, on a motion to exclude an expert, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013). This is a "flexible inquiry" that favors admission of expert opinions "as long as the process [the expert used] is generally reliable." *McCrary v. Elations Co. LLC*, 2014 WL 12589137, at *15 (C.D. Cal. Dec. 2, 2014).

Under this standard, there is no credible argument to exclude Mr. Hasenkamp's testimony. Addressing the kinds of arguments raised by Plaintiffs, courts in this District have refused to exclude automotive experts with far less directly relevant experience than Mr. Hasenkamp's. *See Forouzan v. BMW of N. Am., LLC,* 2018 WL 6016277, at *5 (C.D. Cal. June 27, 2018) (refusing to exclude "Lemon Law" expert testifying as an automotive expert); *LaPorta v. BMW of N. Am., LLC*, 2019 WL 988675, at *2 (C.D. Cal. Jan. 24, 2019) (refusing to exclude automotive diagnostician testifying as an automotive expert).

Indeed, none of the Motion's arguments are credible. *First*, Mr. Hasenkamp is testifying as a well-qualified industry expert, not a lawyer or an economist. *Second*, Mr. Hasenkamp's extensive experience with EVs is a textbook expert qualification, and a more than adequate basis for his opinions. *Third*, to the extent Plaintiffs argue that Mr. Hasenkamp testifies to an "ultimate issue," that is not a valid basis for excluding his testimony. *Fourth*, all of Plaintiffs' arguments, at best, go to the weight of Mr. Hasenkamp's testimony, not its admissibility.

## II.   MR. HASENKAMP IS TESTIFYING AS A QUALIFIED INDUSTRY EXPERT

Mr. Hasenkamp made clear that he is testifying to his extensive experience in the automotive industry. Contrary to Plaintiffs' arguments, he is not testifying as a lawyer, not testifying as an economist, and not attempting to divine any particular individual's "state of mind."

Mr. Hasenkamp's opinions are well within the standards for acceptable testimony from an industry expert. Indeed, the Ninth Circuit has held that experts like Mr. Hasenkamp with "significant knowledge and . . . experience" in their industry may testify to the "practices and norms of" that industry. *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). That is the precise scope of Mr. Hasenkamp's reports and testimony. Based on his experience with electric vehicle BOMs, he described how these projections rise until SOP, before coming down when costs are actualized following SOP, and the unpredictability around BOM in late 2021 and early 2022. *Supra* at 3–4. Under these circumstances, Mr. Hasenkamp laps the "admissibility hurdle for [expert] qualifications," which is "relatively low" and "requires" only "a 'minimal foundation' of knowledge, skill, and experience." *Doyle v. Chrysler Grp. LLC*, 2015 WL 353993, at *5 (C.D. Cal. Jan. 21, 2015) (denying motion to exclude expert testimony concerning the safety of car window components.).

In trying to exclude Mr. Hasenkamp's expertise, Plaintiffs raise three strawman arguments. *First*, Plaintiffs argue at several points that Mr. Hasenkamp offers legal conclusions, and is not qualified as a legal expert. Mot. at 3–4, 7–8. But Mr. Hasenkamp does not offer legal conclusions, and specifically disclaimed that he did. *See* Joost Decl. Ex. 22 at 26:1–2. It is thus irrelevant that Mr. Hasenkamp is "'not familiar with' Regulation S-K" and has not "participated in a disclosure committee meeting." Mot. at 4. Mr. Hasenkamp's descriptions that he is not aware of a requirement to disclose BOM costs, Joost Decl. Ex. 9 ¶¶ 63–64, were based on his experience as an industry

professional; they do not interpret case law or assert a legal conclusion to the Court or a jury.

Unsurprisingly, none of the cases the Motion cites rejected testimony like that of Mr. Hasenkamp. Mot. at 3, 7, 12. In fact, many support that his testimony should be admitted:

- In *In re Apple Inc. Securities Litigation*, the Court admitted far more testimony than it excluded. 2023 WL 4556765 (N.D. Cal. July 17, 2023). At the cited portion, a proffered stock valuation expert testified to what certain regulations themselves required. *Id.* at *5. This is distinct, of course, from Mr. Hasenkamp testifying based on his experience that he was "not aware of a requirement to disclose BOM cost projections," which accorded with his experience that EV companies consider such information highly sensitive, and *do not* disclose it. Joost Decl. Ex. 9 ¶¶ 63–64. The *Apple* court admitted, from the same expert at the cited portion, testimony comparable to this, "certain industry . . . norms in addressing disclosure requirements, and the competitive value and risk to companies of disclosing certain information," and specifically held that these points "do not construe the law or its requirements." *Apple*, 2023 WL 4556765, at *5.

- In *In re Novatel Wireless Securities Litigation*, the cited portion concerned an expert testifying about both what GAAP and SEC disclosures required, and as to what certain contracts obligated. 2011 WL 5827198, at *3 (C.D. Cal. Nov. 17, 2011). The court admitted the prior testimony; it excluded the latter. *Id.* While Mr. Hasenkamp's testimony as an industry expert is not analogous to either point, it would resemble, if anything, the admitted testimony more than the excluded testimony from *Novatel*.

- In *Biotechnology Value Fund, L.P. v. Celera Corporation*, the expert testified that a corporate defendant "should not [have] be[en] held accountable," which the court excluded. 2015 WL 138168, at *4 (N.D. Cal. Jan. 9, 2015). That legal conclusion

1  does not at all resemble the challenged portions of Mr. Hasenkamp's reports and

2  testimony.

3      *Second*, Plaintiffs proffer the equally non-credible argument that Mr. Hasenkmap

4  offered testimony as an economist. Mot. at 4. He did not. He offered testimony that, in his

5  *experience* at Lucid in late 2021 and early 2022, the auto industry faced severe economic

6  turmoil, which is evidenced as well by supporting public materials. Joost Decl. Ex. 9 ¶

7  58. Plaintiffs cite *no* case law establishing that testimony like Mr. Hasenkamp's is that of

8  an economist, rather than an industry expert relying on his own experience. In fact, one of

9  the cases Plaintiffs cite, *Apple*, directly supports the admission of Mr. Hasenkamp's

10  testimony. The defendants in that case challenged a sociological expert as having offered

11  economic testimony. 2023 WL 4556765, at *2. The court rejected the argument out of

12  hand, finding him qualified as an "expert in Chinese sociology with a focus on business.

13  His background and experience sufficiently prepare him to make the challenged opinions,

14  which are his opinion regarding what studies and other sources say about the general

15  economic climate in China." *Id.* That is a near-perfect match for Mr. Hasenkamp's

16  reports, which concern his observations about the economic climate for EV

17  manufacturers immediately surrounding Rivian's IPO, and what "other sources" said

18  about that climate. *Supra* at 3–4.

19      *Third*, Plaintiffs argue Mr. Hasenkamp was impermissibly speaking to particular

20  "state[s] of mind," when he was in fact testifying to industry norms and expectations.

21  Mot. at 5. Courts observe that there is a distinction between a specific individual's state

22  of mind, and what is known or observable within a market or industry. *See, e.g.*, *Pension

23  Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448,

24  467 (S.D.N.Y. 2010) (expert could "opin[e] on what investors would customarily

25  assume" as long as he did not "opin[e] on the actual state of mind of the [p]laintiffs");

26  *SEC v. Badian*, 822 F. Supp. 2d 352, 358, 362–63 (S.D.N.Y. 2011) (rejecting expert

27  testimony that attempted to establish what a defendant meant when he used certain

28  "words and phrases," but declining to strike expert testimony that a decline in stock price

"was consistent with the contemporaneous deterioration in a combination of market, industry and Company-specific factors"). To avoid this fact, Plaintiffs imagine another opinion Mr. Hasenkamp did not offer. Mot. 5. Certain of Motion's cited cases exclude testimony that purported to know the "[d]efendants' intent, motive, or state of mind," which is distinct from industry custom. *Lanard Toys Ltd. v. Anker Play Prods., LLC*, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020); *see also Johnson v. Wyeth LLC*, 2012 WL 1204081, at *3 (D. Ariz. Apr. 11, 2012) (similar). Others are simply not relevant. *Novatel* considered testimony regarding whether a company's management exerted "undue pressure," not industry custom, nor even certain individuals' state of mind. 2011 WL 5827198, at *5. *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP* treated how individuals would have behaved in a hypothetical scenario, which is likewise distinct from industry custom and state of mind. 232 F. Supp. 3d 558, 577 (S.D.N.Y. 2017)

To the extent Plaintiffs continue to maintain these arguments, moreover, each would only challenge the weight of Mr. Hasenkamp's evidence. *See Vanguard Logistics Servs. (USA) Inc. v. Groupage Servs. of New England, LLC*, 2022 WL 17369626, at *4 (C.D. Cal. Oct. 4, 2022) (denying motion to exclude industry expert because "the Court [wa]s quite capable of disregarding impermissible legal interpretations . . . and conclusions about the parties' state of mind and intent" and would "give the evidence the appropriate weight at trial").

## III.   MR. HASENKAMP'S EXTENSIVE EXPERIENCE STRONGLY GROUNDS HIS OPINIONS

Mr. Hasenkamp's 25 years of experience in the automotive industry, including 14 years of working specifically with EVs, is a more than adequate methodology to ground his opinions. Plaintiffs do not show otherwise by confusing his opinions with that of a scientific expert, setting forth non-existent requirements for particular methodologies, arguing contrary to his opinions that he "regurgitates" public statements, or by referring, without authority, to his opinions as "*ipse dixit*."

The Ninth Circuit has held that extensive experience like Mr. Hasenkamp's

supports the admissibility of an expert's opinions, citing the advisory note to Rule 702 contemplating that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Hangarter*, 373 F.3d at 1015–16 (affirming admission of insurance industry expert testimony). This accords with the text of Rule 702, which permits, disjunctively, an individual "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

Plaintiffs' protestations to the contrary misstate the law,or apply principles that have no bearing on Mr. Hasenkamp's testimony. *First*, Plaintiffs appear to have confused the standards for admission of scientific expert testimony, with those for non-scientific expert testimony. Notably, the two standards are different enough that an entirely separate body of authority has developed for non-scientific expert testimony. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the United States Supreme Court set forth the modern understanding of evaluating *scientific* expert testimony. 509 U.S. 579 (1993). But because the *Daubert* standard was a poor fit for non-scientific experts, the Supreme Court supplemented it with *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Ninth Circuit later made clear that "far from requiring trial judges to mechanically apply the *Daubert* factors—or something like them—to both scientific and non-scientific testimony, *Kumho Tire* heavily emphasizes that judges are entitled to broad discretion when discharging their gatekeeping function." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

Thus, *second*, for a non-scientific industry expert like Mr. Hasenkamp, the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hangarter*, 373 F.3d at 1017. Plaintiffs' arguments regarding methodology are thus of no import here. *See* Mot. at 7, 8, 11, 18. Indeed, Mr. Hasenkamp's experiences with Tesla and Lucid are frequently referenced throughout his reports as supporting his opinions. *E.g.*, Joost Decl. Ex. 9 ¶¶ 20, 22, 27, 29, 31, 33, 36, 64, 75, 99. Courts in

this District have admitted automotive experts under precisely these circumstances, where the basis for their opinions was their experience. *Forouzan*, 2018 WL 6016277, at *5 (qualifying an automotive expert that "based his opinions on" his specialized rather than scientific knowledge); *LaPorta*, 2019 WL 988675, at *3 (qualifying automotive expert based on his "review of various sources and his personal experience in the automotive industry"). Mr. Hasenkamp also did "not present[] any unique scientific theory or methodology that would be subject to exclusion under *Daubert* as 'junk science.'" *Id.*

Nor do Plaintiffs cite any contrary authority. One of the cases they cite in support of their methodology arguments *supports* the admissibility of Mr. Hasenkamp's opinions. The court there held that an expert was qualified based on his "wealth of experience," and that, "[i]n th[at] arena scientific modeling is not required." *Apple*, 2023 WL 4556765 at *4. In the other, the challenged expert based his opinion on a "computer database/program he created and used to analyze the data"; in other words, a scientific analysis. *Orgain, Inc. v. N. Innovations Holding Corp.*, 2022 WL 2189648, at *8 (C.D. Cal. Jan. 28, 2022). In sum, none of Plaintiffs' methodological complaints are persuasive here.

Third, Plaintiffs distort the law and Mr. Hasenkamp's opinions to argue that he simply "regurgitates" other public statements. Mot. at 4–5, 10. Plaintiffs are badly misreading the principles of evidence. Courts regularly allow industry experts like Mr. Hasenkamp to testify based on "internal [company] documents, employee testimony, and discovery responses, third-party information such as contemporaneous financial analysis and press coverage of the development of the [applicable] market, and [their] own experience." *Apple iPod iTunes Antitrust Litig.*, 2014 WL 4809288, at *7 (N.D. Cal. Sept. 26, 2014); *Sumotext Corp. v. Zoove, Inc.*, 2020 WL 533006, at *11 (N.D. Cal. Feb. 3, 2020) (expert's qualitative opinion based on "employee testimony, third-party industry analyses, and media coverage . . . establish[es] their admissibility"). A court in this District admitted the testimony of an automotive expert that was based "upon a review of

various sources and his personal experience in the automotive industry." *LaPorta*, 2019 WL 988675, at *3. Each of Plaintiffs' cited authorities regarding "parrot[ing]" or "regurgitat[ion]" of an out-of-court statement concerned an expert publishing that statement without drawing their own conclusion. Mot. at 4. This is a clear difference from Mr. Hasenkamp's opinions, where he draws his own conclusions based on his experience, then makes clear how they are shared throughout the EV industry based on his review of public materials. *Supra* 3.

*Fourth* and finally, Plaintiffs' arguments that Mr. Hasenkamp's opinions are *ipse dixit* are also a red herring. *See* Mot. at 7, 10, 13, 18. To exclude Mr. Hasenkamp's reports and testimony based on his highly unique experience would work a mockery of the evidence rules' prohibition on testimony as to "lay matters which a jury is capable of understanding and deciding without the expert's help." *Novatel*, 2011 WL 5827198 at *4. Again, Plaintiffs' authority is inapposite. One case they cite as to an *ipse dixit* opinion involved a scientific expert whose model did not support his testimony. *Crescenta Valley Water Dist. v. Exxon Mobile Corp.*, 2013 WL 12116333, at *3 (C.D. Cal. Jan. 8, 2013). The second sets forth only the general principle prohibiting *ipse dixit* opinions and likewise, concerned a scientific expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146–47 (1997).  Neither case has any apparent relevance to Mr. Hasenkamp's testimony as a non-scientific industry expert.

## IV.    MR. HASENKAMP TESTIFIES TO RELEVANT ISSUES

Plaintiffs also mischaracterize Mr. Hasenkamp's testimony regarding relevant issues as testimony regarding ultimate issues. Mr. Hasenkamp's unique qualifications within the EV industry, *supra* 2–3, provide "knowledge and experience . . . . [that] may help the jury contextualize and make sense of complicated information." *Arriaga v. Logix Fed. Credit Union*, 2022 WL 3052318, at *3 (C.D. Cal. Apr. 22, 2022) (expert did not "invade[] the authority of the trier of fact" by providing useful information about the industry at issue in the litigation). Here, those qualifications allow Mr. Hasenkamp to testify as to what would be common or expected within the EV industry. *See United*

*States v. Sullivan*, 2022 WL 3716594, at *8 (N.D. Cal. Aug. 28, 2022) (allowing expert testimony regarding whether defendant's "alleged actions were not consistent with industry best practices"). Mr. Hasenkamp can and does testify to these relevant issues.

Unable to counter that Mr. Hasenkamp can testify to *relevant* issues, Plaintiffs instead try to tar Mr. Hasenkamp as testifying to "ultimate" issues. Mot. at 6, 9, 12, 14. Courts routinely encounter and reject such arguments. "It is well-established that expert testimony concerning an ultimate issue is not per se improper." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1065 n.10 (9th Cir. Aug. 7, 2002). Thus, "expert testimony that is 'otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" *Hangarter*, 373 F.3d at 1016. Like the expert in *Hangarter*, Mr. Hasenkamp offers "testimony" as to "Defendants[']" observation of "industry standards [to] support[] a finding" that would in turn support an ultimate issue. *Id*. Namely, Mr. Kasenkamp testifies about how BOM cost projections tend to behave before and after SOP within the auto industry, and how they behaved proximate to Rivian's IPO. *Supra* at 3–4. And similarly, Mr. Hasenkamp "never testified that he had reached a legal conclusion." *Hangarter*, 373 F.3d at 1016; *supra* at 6. Nor does the fact that Mr. Hasenkamp criticized the accuracy and credibility of Plaintiffs' industry expert, Mr. Baker, affect Mr. Hasenkamp's admissibility: "substantive critique of the methods employed by the other experts . . . is often the central role of a rebuttal expert," and does not state an improper conclusion that "as a matter of law that they are inadmissible under *Daubert*." *Apple*, 2023 WL 4556765, at *1.

## V.    MR. HASENKAMP'S TESTIMONY IS FOR THE FACTFINDER TO EVALUATE

Ultimately, though, even if Plaintiffs maintain their challenges to Mr. Hasenkamp, this Motion does not seek a proper remedy. "Rule 702 'contemplates a broad conception of expert qualifications,'" and is "intended to embrace more than a narrow definition of qualified expert.'" *Hangarter*, 373 F.3d at 1015. The overwhelming preference of federal courts is to allow expert testimony to be presented, as long as it fits within that broad

framework. *See, e.g.*, *Orgain*, 2022 WL 2189648, at *6 (whether "testimony improperly intrude[d] upon the province of the jury [was] an issue the [Parties could] properly address via objections at trial"). This is especially true of Plaintiffs' arguments that raise objections over what evidence Mr. Hasenkamp did or did not find meaningful, or what propositions he did or did not address. Mot. at 5–7, 9–11, 13, 16–20. These are textbook arguments going to the weight of the evidence. *See, e.g.*, *Novatel*, 2011 WL 5827198, at *6 ("[T]he Court finds cross-examination, rather than exclusion, to be appropriate redress for . . . contentions that [an expert] failed to consider all the evidence or didn't understand the standard.")

To that end, it should be observed that "numerous motions brought by the law firm representing plaintiff [have] lacked merit." *Apple,* 2023 WL 4556765, at *10 (criticizing, and largely denying, excessive *Daubert* motions brought by the plaintiff). Plaintiffs have challenged every single one of the Rivian Defendants' experts on grounds that, if at all cognizable, go to the weight of their testimony. ECF Nos. 679-1–679-5. The Court should summarily deny each of these motions, and leave the prospective jury to their defined role in evaluating this testimony.

## CONCLUSION

For the foregoing reasons, Rivian Defendants respectfully request that the Court deny Plaintiffs' motion to exclude Mr. Hasenkamp's opinions.

Dated: September 19, 2025                FRESHFIELDS US LLP

By: */s/ Doru Gavril*
   Doru Gavril

*Attorneys for Defendants Rivian Automotive, Inc., Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham*

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

3        The undersigned, counsel of record for Defendants Rivian Automotive, Inc.,

4  Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford

5  Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham

6  certifies that this brief contains 4,664 words, which [choose one]:

7        _X_ complies with the word limit of L.R. 11-6.1.

8        ___ complies with the word limit set by court order.

9

10  Dated: September 19, 2025               By: _/s/ Doru Gavril_____

11                                              Doru Gavril

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28