**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
SHARAN NIRMUL (*pro hac vice*)
snirmul@ktmc.com
280 King of Prussia Road
Radnor, PA 19807
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Class Representatives Sjunde AP-Fonden and James Stephen Muhl and Class Counsel for the Classes*

[Additional Counsel on signature page.]

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CHARLES LARRY CREWS, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>      v.<br><br>RIVIAN AUTOMOTIVE, INC., et al.,<br><br>          Defendants. | Case No. 2:22-cv-01524-JLS-E<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AND AUTHORIZATION TO DISSEMINATE NOTICE TO THE CLASSES**<br><br>Date:      November 21, 2025<br>Time:     10:30 a.m.<br>Ctrm.:    8A, 8th Floor<br>Judge:   Hon. Josephine L. Staton |

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   SUMMARY OF THE ACTION ............................................................... 3

III.  TERMS OF THE PROPOSED SETTLEMENT ......................................... 6

IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL .................... 7

    A.    Standards Governing Approval of a Class Action Settlement ........................ 7

    B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2) ........................ 8

        1.    Procedural Aspects of the Settlement Satisfy Rule 23(e)(2) ............... 8

            a.    Plaintiffs and Class Counsel Have Adequately Represented the Classes .......................... 9

            b.    The Settlement Was Reached Through Arm's-Length Negotiations Between Experienced Counsel and with the Assistance of a Mediator ........................... 10

        2.    The Settlement's Terms Are Adequate .............................. 10

            a.    The Settlement Provides Substantial Relief, Especially Considering the Costs, Risks, and Delay of Further Litigation ........................... 11

            b.    The Settlement Treats All Class Members Fairly ................... 13

            c.    The Settlement Does Not Excessively Compensate Counsel ........................... 14

            d.    Plaintiffs Have Identified All Agreements Made in Connection with the Settlement ................... 15

V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ........................ 15

VI.   NOTICE TO THE CLASSES SHOULD BE APPROVED .................................. 17

VII.  THE COURT SHOULD NOT REQUIRE A SECOND OPT-OUT PERIOD ....... 18

VIII. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ................ 20

IX.   CONCLUSION ................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ....................................................................... 7

*Amey v. Cinemark USA Inc.*,
   2018 WL 3956326 (N.D. Cal. Aug. 17, 2018) ................................................ 9

*In re Apple Inc. Sec. Litig.*,
   2024 WL 3297079 (N.D. Cal. June 3, 2024) ................................................. 10

*Baker v. SeaWorld Ent., Inc.*,
   2020 WL 4260712 (S.D. Cal. July 24, 2020) ................................................ 15

*Baron v. HyreCar Inc.*,
   2024 WL 3504234 (C.D. Cal. July 19, 2024) ................................................ 18

*In re Biolase, Inc. Sec. Litig.*,
   2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) (Staton, J.) ........................... 13

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ....................................................................... 6

*In re Carrier IQ, Inc. Consumer Priv. Litig.*,
   2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) .............................................. 15

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ......................................................................... 8

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...................................................................... 15

*Daniel Turocy v. El Pollo Loco Holdings, Inc. et al.*,
   8:15-cv-01343-DOC-KES, slip op., ECF No. 219 (C.D. Cal. Aug. 27, 2019) ............ 14

*Davis v. Yelp, Inc.*,
   2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) .............................................. 12

*Donley v. Live Nation Ent., Inc.*,
   2025 WL 2550815 (C.D. Cal. Apr. 25, 2025) ............................................... 18

*Elliott v. Rolling Frito-Lay Sales, LP*,
2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ...................................................... 7

*Evanston Police Pension Fund v. McKesson Corp.*,
2023 WL 12126586 (N.D. Cal. July 14, 2023) .......................................................... 14

*Ferreira v. Funko, Inc.*,
2022 WL 22877154 (C.D. Cal. Dec. 13, 2022)............................................................. 10

*Ferris v. Wynn Resorts Ltd.*,
2025 WL 2308698 (D. Nev. Jan. 31, 2025) ................................................................. 14

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)............................................................ 7, 15

*In re HIV Antitrust Litig.*,
2023 WL 11897610 (N.D. Cal. Sep. 25, 2023) ............................................................ 19

*In re Intuitive Surgical Sec. Litig.*,
No. 5:13-cv-01920-EJD-HRL, Dkt. No. 317 (N.D. Cal. Dec. 20, 2018)..................... 15

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ........................................................................................ 17

*Low v. Trump Univ., LLC*,
881 F.3d 1111 (9th Cir. 2018) ...................................................................................... 19

*Lusk v. Five Guys Enters. LLC*,
2022 WL 4791923 (E.D. Cal. Sep. 30, 2022) ............................................................... 10

*Luz Bautista-Perez v. Juul Labs, Inc.*,
2022 WL 307942 (N.D. Cal. Feb. 2, 2022) .................................................................... 8

*In re Netflix Privacy Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .............................................................. 10

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*,
688 F.2d 615 (9th Cir. 1982) ........................................................................................ 19

*In re OmniVision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)......................................................................... 13

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ........................................................................................ 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

*Purple Mountain Tr. v. Wells Fargo Co.*,
  2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ............................................................ 14

*Reynolds v. Direct Flow Med., Inc.*,
  2019 WL 1084179 (N.D. Cal. Mar. 7, 2019) ............................................................ 11

*Salazar v. Midwest Servicing Grp., Inc.*,
  2018 WL 3031503 (C.D. Cal. June 4, 2018) ............................................................ 11

*In re Vocera Commc'ns, Inc. Sec. Litig.*,
  2016 WL 8201593 (N.D. Cal. July 29, 2016) ............................................................ 14

*Yanez v. Knight Transp. Inc.*,
  2024 WL 4524164 (D. Ariz. Oct. 17, 2024) ............................................................ 19

*Zaidi v. Adamas Pharms., Inc.*,
  2024 WL 4342185 (N.D. Cal. Sep. 27, 2024) ............................................................ 18

**Statutes**

15 U.S.C. § 78u-4(a)(4) ............................................................ 13

15 U.S.C. § 78u-4(a)(7) ............................................................ 17-18

**Other Authorities**

Fed. R. Civ. P. 23(c)(2)(B) ............................................................ 17

Fed. R. Civ. P. 23(e)(1) ............................................................ 7

Fed. R. Civ. P. 23(e)(1)(B) ............................................................ 7, 11, 17

Fed. R. Civ. P. 23(e)(2) ............................................................ 7, 8

Fed. R. Civ. P. 23(e)(2)(A) ............................................................ 9

Fed. R. Civ. P. 23(e)(2)(B) ............................................................ 10

Fed. R. Civ. P. 23(e)(2)(C) ............................................................ 10

Fed. R. Civ. P. 23(e)(2)(D) ............................................................ 10

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................ 13

Fed. R. Civ. P. 23(e)(2)(D) ............................................................ 13

Fed. R. Civ. P. 23(h)(1)......................................................................................... 18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

Court-appointed Class Representatives Sjunde AP-Fonden ("AP7") and James Stephen Muhl ("Muhl," and together with AP7, "Plaintiffs")[1] respectfully submit this Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Settlement and Authorization to Disseminate Notice to the Classes, and request that the Court enter the Preliminary Approval Order, submitted herewith.

## I.    PRELIMINARY STATEMENT

After over three years of vigorous litigation, Plaintiffs have agreed to settle all claims against Defendants for $250,000,000 in cash pursuant to the terms of the Stipulation. The Settlement is the product of arm's-length negotiations facilitated by an experienced mediator, the Honorable Layn R. Phillips (Ret.) and ultimately the Parties' acceptance of Judge Phillips' recommendation to resolve the Action. At this time, Plaintiffs seek the Court's preliminary approval of the Settlement under Rule 23 of the Federal Rules of Civil Procedure ("Rule") so that notice of the Settlement may be provided to the Classes and the Settlement Hearing may be scheduled.

Plaintiffs and Class Counsel believe that the Settlement—reached while Defendants' summary judgment motion was pending—is an excellent result for the Classes. In agreeing to settle, Plaintiffs and their counsel were aware of the strengths and weaknesses of the Classes' claims and made a fully informed evaluation of the risks of continued litigation and the fairness of resolving the Action at this time. Indeed, at the time of settlement, Class Counsel had: (i) conducted an extensive investigation into the Classes' claims—including a detailed review of publicly available information, interviews with former Rivian employees, and consultation with experts; (ii) prepared two complaints, including the operative Amended Consolidated Complaint for Violations of the Federal Securities Laws

---

[1]    Capitalized terms not defined herein have the meanings in the Stipulation and Agreement of Settlement, dated October 22, 2025 ("Stipulation" or "Stip."), attached to the Declaration of Sharan Nirmul filed herewith. Unless otherwise noted, all emphasis in quotations is added, and internal quotation marks, citations, and footnotes are omitted.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

("Amended Complaint"); (iii) defeated Defendants' motions to dismiss the Amended Complaint; (iv) engaged in comprehensive fact and expert discovery, which included preparing for, taking and/or defending 48 depositions, analyzing over 3.5 million pages of documents produced by Defendants and third parties, and exchanging opening and rebuttal expert reports; (v) successfully moved for class certification and oversaw the extensive Class Notice campaign; (vi) briefed Defendants' summary judgment motion and the Parties' motions seeking to exclude expert testimony (all pending at the time of settlement); and (vii) begun preparing for trial.

While Plaintiffs and their counsel believe the Classes' claims against Defendants are meritorious and supported by substantial evidence developed during discovery, they also recognize the significant risks they faced, including that the Court would grant, in whole or in part, Defendants' summary judgment motion, or that a trial of the Action could have precluded *any* recovery for the Classes. As discussed below, the Settlement Amount represents a substantial percentage of the Classes' potential recoverable damages as estimated by Plaintiffs' damages expert.

At the Settlement Hearing, the Court will have before it more extensive Settlement submissions, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. By their motion, Plaintiffs respectfully request that this Court begin the Settlement approval process by entering the Preliminary Approval Order which will: (i) preliminarily approve the proposed $250 million Settlement of the Action, pending further determination at the Settlement Hearing; (ii) approve the form and manner of providing notice of the Settlement to the Classes; (iii) approve Verita Global, LLC ("Verita") as the Claims Administrator for the Settlement; and (iv) set a date for the Settlement Hearing and various related deadlines.[2]

---

[2]    As set forth in Appendix A, Plaintiffs request that the Court schedule the Settlement Hearing for a date 140 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter, to allow time for providing notice to the Classes and compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 *et seq*.

## II.    SUMMARY OF THE ACTION[3]

This securities class action was commenced with the initial complaint on March 7, 2022, which alleged violations of Section 11 of the Securities Act of 1933 ("Securities Act") against Defendants arising out of Rivian's November 10, 2021 initial public offering ("IPO"). ECF No. 1. Shortly thereafter, two substantially similar actions were filed, which asserted the same Section 11 claims, along with claims arising under Section 15 of the Securities Act and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). *See Horvath v. Rivian Automotive, Inc., et al.*, No. 8-22-cv-0444-RGK-E; *Smith v. Rivian Automotive, Inc., et al.*, No. 8:22-cv-00829-RGK-E. On July 1, 2022, the Court consolidated the three matters and appointed: (i) AP7 as Lead Plaintiff; (ii) Kessler Topaz Meltzer & Check LLP ("KTMC") as Lead Counsel; and (iii) Larson LLP as local counsel. ECF No. 111.

On July 22, 2022, AP7 and Muhl filed the Consolidated Complaint for Violations of the Federal Securities Laws ("Consolidated Complaint"). ECF No. 125. The Consolidated Complaint alleged violations of Sections 11, 12(a)(2), and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act. Plaintiffs asserted that, in Rivian's IPO offering documents and during Rivian's December 16, 2021 earnings conference call, Defendants made materially false and misleading statements and omissions concerning, among other things, the pricing of Rivian's R1S and R1T (together, "R1") electric vehicles and the drivers of R1 profitability. Plaintiffs also asserted that Defendants violated Items 105 and 303 of Regulation S-K by failing to disclose known risks and trends related to Rivian's rising R1 bill of material costs and deteriorating R1 profit margins.

On August 29, 2022, Defendants moved to dismiss the Consolidated Complaint. ECF Nos. 135, 136. Defendants' motions were fully briefed. *See* ECF Nos. 138-41.[4] On

---

[3]    A more detailed account of Class Counsel's litigation efforts will be provided in connection with final approval.

[4]    The Action was reassigned to the Honorable Josephine L. Staton on November 22, 2022. ECF No. 145.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

February 16, 2023, the Court issued an order granting Defendants' motions to dismiss and giving Plaintiffs 14 days to file an amended complaint. ECF No. 149.

Two weeks later, on March 2, 2023, Plaintiffs filed the Amended Complaint. ECF No. 150. The Amended Complaint contained additional factual allegations concerning: (i) the alleged false and misleading nature of Defendants' statements to investors; (ii) the material risks and trends that were allegedly omitted from Rivian's IPO disclosures; and (iii) certain of the Rivian Defendants' scienter. On March 16, 2023, Defendants moved to dismiss the Amended Complaint. ECF Nos. 152-53. Following full briefing on the motions, the Court heard oral argument on June 23, 2023. ECF Nos. 157, 159-60, 167.

On July 3, 2023, the Court issued an order denying Defendants' motions to dismiss the Amended Complaint in their entirety. ECF No. 172. Defendants answered the Amended Complaint on August 7, 2023. ECF Nos. 183-84. Thereafter, discovery commenced.

Between July 2023 and June 2025, the Parties engaged in extensive fact and expert discovery. Plaintiffs: (i) issued document requests and interrogatories to Defendants; (ii) served subpoenas on 36 third parties; (iii) reviewed and analyzed over 3.5 million pages of documents; (iv) prepared and sat for depositions; (v) produced 1,102 pages of documents and written discovery responses to Defendants; (vi) reviewed and analyzed thousands of privilege log entries; (vii) prepared for, took, and/or defended 48 depositions; and (viii) exchanged opening and rebuttal expert reports. In addition, the Parties briefed 13 discovery-related motions before Magistrate Judge Charles F. Eick.

On December 1, 2023, Plaintiffs moved for class certification. ECF No. 218. After full briefing on Plaintiffs' motion, the Court heard oral argument on May 10, 2024. ECF Nos. 251-52, 298, 299, 321. On July 17, 2024, the Court granted Plaintiffs' motion— certifying two Classes: (i) <u>For 1934 Act Claims</u>: All persons and entities who purchased or otherwise acquired Rivian Class A common stock between November 11, 2021, and March 10, 2022, inclusive, and were damaged thereby;[5] and (ii) <u>For 1933 Act Claims</u>: All persons

---

[5]    The Class excludes purchases of Rivian Class A common stock at the fixed IPO price.

and entities who purchased or otherwise acquired Rivian Class A common stock between November 10, 2021, and March 10, 2022, inclusive, and were damaged thereby.[6] ECF No. 392.

On August 23, 2025, Plaintiffs filed an unopposed motion to approve the form and manner of notice to the Classes ("Class Notice"). ECF No. 400. The Court granted Plaintiffs' motion on November 5, 2024. ECF No. 408. Class Notice was disseminated to potential Class Members beginning on November 12, 2024. ECF No. 504 at 1. The notice provided Class Members with the opportunity to request exclusion from the Classes, explained that right, and set forth the procedures for doing so.[7] The notice also advised that it would be for the Court to decide whether to permit a second opportunity to request exclusion in the event of a settlement. ECF. No. 504-1 at 8.

Around this same time, Plaintiffs and the Rivian Defendants participated in an in-person mediation session in New York City before Judge Phillips on October 30, 2024. The parties were unable to resolve the Action at the mediation.

On July 3, 2025, Defendants moved for summary judgment under Rule 56, asserting no triable issues of material fact and entitlement to judgment as a matter of law ("Summary Judgment Motion"). ECF No. 591. The Summary Judgment Motion was fully briefed. ECF Nos. 614, 687. On August 29, 2025, the Parties filed seven *Daubert* motions seeking to exclude, in whole or in part, the testimony of two plaintiff experts and five defense experts. ECF Nos. 666-67, 670-71, 674-76.

While the Summary Judgment and *Daubert* Motions were being briefed, and with the final pretrial conference scheduled for December 5, 2025, the Parties reengaged with Judge Phillips regarding a possible settlement. On September 19, 2025, following hard-fought, arm's-length negotiations, the Parties accepted a mediator's recommendation to

---

[6]    Both Classes exclude Defendants and their families, the officers, directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

[7]    The 131 requests for exclusion are set forth in Appendix 1 to the Stipulation.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

resolve the Action for $250 million in cash. The Parties' memorialized their agreement in a Term Sheet dated October 3, 2025. Thereafter, the Parties negotiated the Stipulation setting forth the full terms and conditions of the Parties' agreement, which was executed on October 23, 2025.[8]

## III.    TERMS OF THE PROPOSED SETTLEMENT

The Stipulation provides that Rivian will pay or cause its insurers to pay the Settlement Amount into the Escrow Account. Stip. ¶ 8. The Settlement is not claims-made. Accordingly, if it is approved, the Classes will receive the full benefit of the Settlement Amount, plus interest, after deducting Court-approved attorneys' fees, expenses and costs ("Net Settlement Fund"), regardless of the number of Claims submitted. Stip. ¶ 14. After the Settlement becomes Final and the Effective Date occurs, the Net Settlement Fund will be distributed among eligible Class Members who submit valid Claims in accordance with a Court-approved plan of allocation. Stip. ¶¶ 21, 27. Class Members will release the "Released Plaintiffs' Claims" (Stip. ¶ 1.mm) in exchange for the Settlement Amount and the right to receive a payment from the Net Settlement Fund.

In addition, none of the Ninth Circuit's three indicia of collusion are present here. *See Briseño v. Henderson*, 998 F.3d 1014, 1019 (9th Cir. 2021).[9] First, once the Settlement is final, Defendants have no right to the return of the Settlement Fund for any reason. Second, as discussed below, Class Counsel will request attorneys' fees in an amount *below* the Ninth Circuit's 25% benchmark. Third, there is no clear sailing agreement.

---

[8]    The Parties also entered into a confidential Supplemental Agreement which applies *only if* the Court requires a second opt-out period. *See infra* Section IV(B)(2)(d).

[9]    Signs of collusion include: "(1) 'when counsel receive a disproportionate distribution of the settlement;' (2) 'when parties negotiate a clear sailing arrangement,' under which defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant rather than the class." *Id.* at 1023 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

## IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    Standards Governing Approval of a Class Action Settlement

In the Ninth Circuit, there is a strong judicial policy in favor of voluntary settlement of litigation. *See, e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). This "strong judicial policy" is particularly applicable "where complex class action litigation is concerned." *Id.*; *see also Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ("[J]udicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.").

A district court's review of a proposed settlement is a two-step process. First, the court performs a preliminary review of the terms of the settlement to determine whether to send notice to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice to the class and a hearing, the court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2); *see also, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *8 (N.D. Cal. Sept. 4, 2018).

At the first stage of the approval process, a court should grant preliminary approval and authorize notice of a settlement upon a finding that it "*will likely be able to*" (i) finally approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2); and (ii) certify the class for purposes of settlement. Fed. R. Civ. P. 23(e)(1)(B).[10] In considering whether final approval is likely, Rule 23(e)(2) provides that courts consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

---

[10]    Here, the Court already certified the Class in the course of litigation. ECF No. 392.

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.[11]

Rule 23(e)(2) effectively codifies prior case law, providing that courts should grant preliminary approval after considering whether the "settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *E.g.*, *Luz Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022).

    Because each of the Rule 23(e)(2) factors are satisfied here, final approval of the Settlement is "*likely*" and preliminary approval is merited. Fed. R. Civ. P. 23(e)(2).

## B.   The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)

### 1.   Procedural Aspects of the Settlement Satisfy Rule 23(e)(2)

    Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendment. In evaluating these factors, courts may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an

---

[11] Final approval will also involve an analysis of the Ninth Circuit's approval factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

adequate information base." *Id.* The Settlement is a procedurally fair resolution under Rule 23(e)(2).

### a.    Plaintiffs and Class Counsel Have Adequately Represented the Classes

In determining whether to approve a settlement, courts first consider whether class representatives and class counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The adequacy requirement has two components: (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class. *Amey v. Cinemark USA Inc.*, 2018 WL 3956326, at *6 (N.D. Cal. Aug. 17, 2018). In certifying the Classes, the Court has already found Plaintiffs and their counsel to be adequate representatives. ECF No. 392 at 31.

Here, Plaintiffs devoted significant time to serving as class representatives—each: (i) reviewed drafts of pleadings and briefs; (ii) responded to Defendants' extensive discovery requests, including collecting and producing documents and written information; (iii) prepared and sat for depositions; and (iv) consulted with counsel throughout the Parties' settlement negotiations. And, like other Class Members, Plaintiffs have an interest in obtaining the largest possible recovery from Defendants.

Likewise, Class Counsel vigorously litigated this Action for over three years against Defendants and their highly proficient counsel at Freshfields US LLP and Orrick, Herrington & Sutcliffe LLP. Through the summary judgment process and the Parties' protracted settlement negotiations, Class Counsel (throughout various stages of the Action) vetted the factual record, analyzed Defendants' arguments and contrary facts, and thoroughly considered Plaintiffs' loss causation and damages arguments (and their potential impact on recoverable damages), as well as the costs and risks of continued litigation. Class Counsel—a firm with extensive experience litigating securities class actions—was well informed of the strengths and weaknesses of the claims and defenses in this Action and conducted the settlement negotiations seeking to achieve the best result for the Classes.

**b.    The Settlement Was Reached Through Arm's-Length Negotiations Between Experienced Counsel and with the Assistance of a Mediator**

Courts next consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A presumption of fairness attaches where a settlement was reached after arm's-length negotiations between experienced counsel assisted by an experienced mediator. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel."); *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *5 (C.D. Cal. Dec. 13, 2022) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The Parties began discussing a possible resolution of the Action following certification of the Classes and participated in an in-person mediation session with Judge Phillips on October 30, 2024. Nearly a year later, the Parties resumed their discussions with the continued assistance of Judge Phillips, and these discussions ultimately culminated in the issuance (and acceptance) of a mediator's recommendation to resolve the Action in September 2025. These facts support a finding that the Settlement is non-collusive. *See, e.g.*, *Lusk v. Five Guys Enters. LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sep. 30, 2022) ("The fact that the parties engaged in mediation and that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion."); *In re Apple Inc. Sec. Litig.*, 2024 WL 3297079, at *1 (N.D. Cal. June 3, 2024) (granting preliminary approval following mediation before Judge Phillips).

## 2.    The Settlement's Terms Are Adequate

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Here, the Settlement represents a favorable result for the Classes. Furthermore, Class Counsel has proposed a method for allocating the net Settlement

proceeds that ensures all Class Members will be treated equitably relative to their respective damages. *See infra* Section IV(B)(2)(b).

### a. The Settlement Provides Substantial Relief, Especially Considering the Costs, Risks, and Delay of Further Litigation

A key factor in assessing approval of a settlement is plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. At this stage, the Court need only determine whether it "*will likely be able to*" approve the Settlement, Fed. R. Civ. P. 23(e)(1)(B), or, in other words, whether the Settlement "falls within the range of possible approval," *Reynolds v. Direct Flow Med., Inc.*, 2019 WL 1084179, at *4 (N.D. Cal. Mar. 7, 2019). The $250 million Settlement represents a favorable recovery for the Classes considering the significant risks (as well as cost and delay) of continued litigation and is well within the range of possible approval. *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) ("elimination of risk, delay, and further expenses weighs in favor of approval").

While Plaintiffs remain confident in their ability to prove their claims, continuing to litigate any case through summary judgment and trial is always a risky proposition. Defendants have adamantly denied any wrongdoing, and their pending Summary Judgment Motion argued, among other things, that: (i) none of the statements at issue in the case were materially false or misleading when made; (ii) certain of the Rivian Defendants did not act with the requisite state of mind; and (iii) the outside director Defendants acted reasonably and conducted adequate due diligence. If the Court accepted any of these arguments, the Classes could have been left with a smaller recovery, or no recovery at all.

And, even if Plaintiffs defeated Defendants' liability arguments, they still faced significant risks in establishing loss causation and damages. Damages in securities cases like this one are typically measured by the amount a company's stock price declines, net of industry and market forces, in response to the disclosure(s) of corrective information.

In its Class Certification Order, the Court held that Rivian's March 1, 2022 and March 10, 2022 disclosures were corrective disclosures related to Plaintiffs' claims. ECF

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

No. 392 at 27, 29. However, Defendants vigorously argued at summary judgment that the evidentiary record did not support a finding that Rivian's March 1 and March 10 disclosures were corrective. ECF No. 591-1 at 24-25. Defendants likewise argued that the "truth" allegedly concealed by Defendants' false and misleading statements—including that Rivian planned to increase R1 prices—was known by the market before the alleged corrective disclosures. *Id.* at 21-23. Even if Plaintiffs demonstrated that Rivian's March 1 price increase was a corrective disclosure, they faced the risk that the Court would find it to be the *only* corrective disclosure—a result that would significantly reduce the Classes' recovery. Further, even if Plaintiffs survived all of Defendants' loss causation and damages challenges at summary judgment, the ultimate resolution of these issues would come down to a battle of experts at trial, with "no guarantee whom the jury would believe." *Davis v. Yelp, Inc.*, 2022 WL 21748777, at *4 (N.D. Cal. Aug. 1, 2022).

Considering the foregoing risks (and others), the Settlement represents a meaningful percentage of the Classes' recoverable damages. Plaintiffs' damages expert has estimated aggregate damages in this Action to range from approximately $1.87 billion to approximately $2.04 billion—the high-end assuming Plaintiffs could prove damages based on the March 1 *and* March 10 disclosures and would not need to disaggregate, or parse out, any confounding non-fraud related information on those dates. If Defendants had one or more of the alleged corrective disclosures dismissed at summary judgment, or in proving that Plaintiffs had not adequately disaggregated the price impact of any confounding information, damages would be reduced if not eliminated. Additionally, at class certification and summary judgment, Defendants argued, in the alternative, that the Class Period should end no later than March 1, 2022, because: (i) the March 10 disclosure was not corrective; and (ii) the stock price decline on March 11, 2022, was not statistically significant. ECF No. 251 at 17-18; ECF No. 591-1 at 3, 25.[12] If this argument was credited,

---

[12]    With respect to the March 10 disclosure, the Class Certification Order warned that "the absence of clear statistical significance and the mixed nature of the disclosures may affect Plaintiffs' success at later stages of the litigation." ECF No. 392 at 29.

total aggregate damages, as estimated by Plaintiffs' damages expert, would be closer to $1.87 billion before accounting for any potentially confounding information.[13]

Based on the foregoing estimates, the $250 million Settlement represents approximately 12.3% to 13.4% of the Classes' potential aggregate damages. This recovery reflects the informed assessment of Plaintiffs and their counsel of the strength of the Classes' claims and the risks of litigating this complex Action through a ruling on the pending Summary Judgment Motion, trial, and appeals.[14] In contrast, the Settlement provides an immediate benefit to Class Members and represents a substantial percentage of the potential recoverable damages (as estimated by Plaintiffs' damages experts) that could have been recovered at trial. The fact that the Settlement Amount was the product of a mediator's recommendation further supports its reasonableness.

### b.    The Settlement Treats All Class Members Fairly

The Court must also ultimately assess whether the Settlement equitably distributes relief to the Classes. Fed. R. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D). Here, too, the Court can readily find the Settlement will likely earn approval. The Settlement does not improperly grant preferential treatment to Plaintiffs or any segment of the Classes.[15] All Class

---

[13]    Although Defendants did not raise any tracing-related arguments at summary judgment, there was a risk that at trial, or thereafter, Defendants could argue that many Class Members failed to trace their purchases of Rivian Class A common stock back to the IPO Registration Statement, which, if successful could have resulted in smaller damages.

[14]    While each securities class action reflects its own unique risks, the recovery obtained here is within the range of recoveries achieved in other securities cases and approved by courts. *See, e.g.*, *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (settlement with recovery of "approximately 9% of the possible damages, which is more than triple the average recovery in securities class action settlements . . . weighs in favor of granting the requested 28% fee"); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (Staton, J.) (final settlement representing "approximately 8% of the maximum recoverable damages . . . equals or surpasses the recovery in many other securities class actions").

[15]    Class Counsel's request for Litigation Expenses may include a request for Plaintiffs' reasonable costs incurred in representing the Class, as permitted by the PSLRA. 15 U.S.C. § 78u-4(a)(4) (allowing "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

Members will be eligible to receive a distribution from the Net Settlement Fund in accordance with a plan of allocation approved by the Court. *See infra* Section V.

### c.    The Settlement Does Not Excessively Compensate Counsel

The notices provide that Class Counsel, on behalf of Plaintiffs' Counsel, will apply for an award of attorneys' fees not to exceed 24% of the Settlement Fund, subject to Court approval. Class Counsel will submit detailed information in support of its motion for attorneys' fees, to be filed fifty-six (56) days before the Settlement Hearing.[16]

Class Counsel notes that the 24% maximum fee request is *below* the benchmark percentage for attorneys' fees in the Ninth Circuit, *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989), and is in line with percentage fees awarded by courts in this Circuit in class actions with significant contingency fee risks. *See Purple Mountain Tr. v. Wells Fargo Co.*, 2023 WL 11872699, at *4 (N.D. Cal. Sept. 26, 2023) (approving 25% fee); *see also Evanston Police Pension Fund v. McKesson Corp.*, 2023 WL 12126586, at *1 (N.D. Cal. July 14, 2023) (approving 25% fee); *Ferris v. Wynn Resorts Ltd.*, 2025 WL 2308698, at *1 (D. Nev. Jan. 31, 2025) (approving one-third fee); *Daniel Turocy v. El Pollo Loco Holdings, Inc. et al.*, 8:15-cv-01343-DOC-KES, slip op. at 1, ECF No. 219 (C.D. Cal. Aug. 27, 2019) (awarding 30% fee).[17] Class Counsel will also seek payment of Litigation Expenses of no more than $6.9 million, which includes charges for experts, mediation, data hosting, depositions, the Class Notice campaign, travel, and online research, among other costs. This amount may also include a request of Plaintiffs' reasonable costs in representing the Classes, as permitted by the PSLRA, in an aggregate

---

[16]    In its motion, Class Counsel will, *inter alia*, present its lodestar (time expended multiplied by hourly rates) as well as case law addressing fee awards in this Circuit.

[17]    Additionally, any attorneys' fees awarded by the Court will be paid to Class Counsel upon award, which is appropriate and consistent with common practice in cases of this nature. The Stipulation provides that if the Settlement is ultimately terminated or the fee award is later reduced or reversed, Plaintiffs' Counsel will refund or repay the subject amount to the Settlement Fund. *See* Stip. ¶ 17; *see In re Vocera Commc'ns, Inc. Sec. Litig.*, 2016 WL 8201593, at *1 (N.D. Cal. July 29, 2016) (fees to be paid "immediately upon entry of this Order").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

amount not to exceed $125,000.[18] Class Members will have an opportunity to weigh in on Class Counsel's fee and expense request before the Settlement Hearing, and after counsel has made submissions in support of its request.

### d. Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

In addition to the Term Sheet and Stipulation, the Parties also entered into a confidential Supplemental Agreement which applies *only if* the Court provides a second opportunity for Class Members to request exclusion from the Classes in connection with the Settlement ("Supplemental Agreement"). *See* Stip. ¶ 35. If there is a second opt out, Defendants will have the option to terminate the Settlement if exclusion requests in connection with the Settlement exceed certain agreed-upon conditions.[19] As is standard practice in securities class actions, the Supplemental Agreement is not being made public and, pursuant to its terms, may only be submitted to the Court under seal.

## V. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In considering the proposed Plan of Allocation ("Plan") (*see* Appendix A to Notice), the Court's review is governed by the same standards of review applicable to the Settlement itself—the Plan must be fair and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). The Plan, which was developed with the assistance of Plaintiffs' damages expert, provides a fair, reasonable, and equitable basis to allocate the Net

---

[18]    *See, e.g.*, *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *12 (S.D. Cal. July 24, 2020) (awarding $10,569 and $60,000 to institutional lead plaintiffs); *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920-EJD-HRL, Dkt. No. 317 at 4 (N.D. Cal. Dec. 20, 2018) (awarding approximately $59,000 to two class representatives).

[19]    This type of agreement is standard in securities class actions and does not bear on the fairness of the Settlement. *See, e.g.*, *Hefler*, 2018 WL 4207245, at *11; *see also In re Carrier IQ, Inc. Consumer Priv. Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) ("[O]pt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest."), *amending in part*, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016).

Settlement Fund among Class Members who submit valid Claims.[20] Plaintiffs will ask the Court to approve the Plan in connection with final approval.

The Plan will calculate "Recognized Loss Amounts" for the transactions provided in the Claimant's Claim. The Plan is based on the alleged corrective disclosures sustained by the Court and provides two calculation methods—considering the statute (Exchange Act and/or Securities Act) under which the Claimant's losses occurred. To have an Exchange Act loss, a Claimant must have purchased/acquired shares of Rivian Class A common stock during the Class Period and held those shares through an alleged corrective disclosure that partially removed the alleged artificial inflation from the stock. A Claimant's Exchange Act loss will depend on several factors, including the date(s) when the Claimant purchased/acquired their shares, and whether such shares were sold and if so, when and at what price, taking into account the PSLRA's statutory limitation on recoverable damages. Securities Act losses, on the other hand, are based on the statutory formula for damages set forth in the Securities Act and take into account when the first complaint was filed. For shares eligible for a recovery under both the Exchange Act and the Securities Act,[21] the Recognized Loss Amount will be the greater loss under the two methods.

Ultimately, each Authorized Claimant's *pro rata* share of the Net Settlement Fund will be determined by dividing the Authorized Claimant's Recognized Claim (i.e., the sum of a Claimant's Recognized Loss Amounts calculated under the Plan) by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount of the Net

---

[20] The Settlement will be effectuated with the assistance of an experienced claims administrator. If approved as Claims Administrator, Verita will employ a standard and well-tested protocol for processing claims in securities class actions. Potential Class Members will submit Claims, either by mail or online and, based on the information submitted, Verita will determine each Claimant's eligibility to participate in the Settlement by calculating his, her, or its "Recognized Claim" under the Plan. *See* Stip. ¶ 20. Claimants will be notified of (and given the chance to remedy) any defects in their Claims.

[21] For Securities Act claims, purchases of Rivian Class A common stock in the IPO or between November 10, 2021, and March 10, 2022, inclusive, shall be considered purchases pursuant to or traceable to the Registration Statement. Stip. Ex. A-2 at App. A at 1.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

Settlement Fund. Stip. Ex. A-2 at App. A ¶ 6. Distributions to Authorized Claimants will occur following Settlement approval and entry of the Class Distribution Order. ¶ 10.

## VI.  NOTICE TO THE CLASSES SHOULD BE APPROVED

Rule 23(c)(2)(B) requires notice to be "the best notice that is practicable under the circumstances." Further, Rule 23(e)(1)(B) requires that notice of a settlement be directed "in a reasonable manner to all class members who would be bound by the propos[ed settlement]." Moreover, notice "must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (cleaned up).

If the Settlement is preliminarily approved, Verita[22] will disseminate the Postcard Notice to all potential Class Members who were previously mailed/emailed the Class Notice and any other potential Class Members who can be identified through reasonable efforts. The Postcard Notice provides important information regarding the Settlement, along with the rights of Class Members in connection therewith, and includes a QR code that, when scanned, will bring recipients directly to the Website. The Website will include downloadable copies of the Notice and Claim Form as well as other important documents. In addition, Verita will cause the Summary Notice to be published in *The Wall Street Journal* and transmitted over *PR Newswire*. The proposed notices will collectively apprise recipients of (among other disclosures): (i) the essential terms of the Settlement; (ii) the considerations that caused Plaintiffs and Class Counsel to conclude that the Settlement is fair, reasonable, and adequate; (iii) the Plan of Allocation; (iv) the binding effect of a class judgment under Rule 23(c)(3); (v) the date, time, and place of the Settlement Hearing; and (vi) the procedures and deadlines for submitting a Claim and objecting to the Settlement. The Notice also satisfies the PSLRA's requirements, including provision of the Settlement

---

[22]    The proposed Claims Administrator, Verita has successfully administered numerous complex securities class action settlements. *See generally* Cavallo Declaration; 1*see also* www.veritaglobal.com. Based on a Claims estimate, Verita anticipates the cost for administering the Settlement will be approximately $1,600,000 to $1,900,000. *Id*. ¶ 8.

amount in the aggregate and on an average per share basis, Class Counsel's contact information, and the reasons for settlement. 15 U.S.C. § 78u-4(a)(7).

Further, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed notices satisfy these requirements: all three notices specifically advise that Class Counsel will apply to the Court for attorneys' fees not to exceed 24% of the Settlement Fund and for expenses not to exceed $6.9 million. *See* Stip. Exs. A-1, A-2, and A-3. A copy of Class Counsel's application for attorneys' fees and expenses will be posted on the Website, www.RivianSecuritiesLitigation.com, once filed.

The proposed notice plan has been used in many other securities class actions and was the same method used for the Class Notice campaign in this Action. Courts have found comparable notice programs to meet the requirements of Rule 23 and due process. *See, e.g.*, *Donley v. Live Nation Ent., Inc.*, 2025 WL 2550815, at \*4 (C.D. Cal. Apr. 25, 2025) (approving comparable notice plan); *Zaidi v. Adamas Pharms., Inc.*, 2024 WL 4342185, at \*2 (N.D. Cal. Sep. 27, 2024) (same); *Baron v. HyreCar Inc.*, 2024 WL 3504234, at \*16 (C.D. Cal. July 19, 2024) (same).

## VII.   THE COURT SHOULD NOT REQUIRE A SECOND OPT-OUT PERIOD

On November 12, 2024, Verita began an extensive notice campaign to inform potential Class Members of the pendency of the Action as a class action as well as their right to request exclusion from the Classes. *See* ECF No. 504. During the campaign, Verita mailed over 925,000 notices to potential Class Members and nominees. *See id.* ¶ 10, Exs. A & B. A related summary notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*. *See id.* ¶ 11, Ex. C.

The Class Notice advised recipients that, under Rule 23(e)(4), it would be within the Court's discretion whether to allow a second opportunity to request exclusion if there was a settlement. *See id.* at Ex. B at 4. The Class Notice also made clear that Class Members would "be bound by all past, present, and future orders and judgments in the Action, whether favorable or unfavorable"—if they failed to exclude themselves from the Classes.

*Id.* In response, 131 potential Class Members (*see* Appendix 1 to Stip.) requested exclusion, demonstrating that Class Members who wished to request exclusion had a fair opportunity to do so.

The Ninth Circuit has rejected the argument that due process requires that members of a Rule 23(b)(3) class be given a second opportunity to opt out when such class members already received extensive notice and ample opportunity to do so—as they did here. *See Low v. Trump Univ., LLC*, 881 F.3d 1111, 1122 n.6 (9th Cir. 2018) (noting Rule 23(e)(4) does not "impose a per se rule mandating a settlement-stage opt-out opportunity in any case where members of a previously-certified class later learn of a settlement's actual value," and explaining the Rule's "language anticipates that parties can reach a settlement agreement that does not permit an additional opt-out opportunity."); *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 634-35 (9th Cir. 1982) (noting class action settlements allowing for second opt out, "are unusual"); *see also In re HIV Antitrust Litig.*, 2023 WL 11897610, at *2 (N.D. Cal. Sep. 25, 2023) ("The Court finds that a second opportunity to opt out is not necessary in this case. The class members are sophisticated entities and thus understood the importance of the decision of whether or not to opt out at the time they were notified of class certification."); *Yanez v. Knight Transp. Inc.*, 2024 WL 4524164, at *3 (D. Ariz. Oct. 17, 2024) ("[T]o hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored by the law.").

In this case, there is no reason to depart from standard practice and require a second opt out. The response to the widespread Class Notice campaign demonstrates it was effective and the new developments that have occurred since Class Members made their decision of whether to opt out—namely, vigorous litigation culminating in a substantial recovery—provide a clear benefit to the Classes and negate any potential prejudice from disallowing a second opt out. Accordingly, the Court should exercise its discretion to preclude a second opportunity to request exclusion from the Classes.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

## VIII.  PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval, the Court must also set dates for certain future Settlement-related events. Plaintiffs respectfully propose the schedule set forth in Appendix A hereto, as agreed to by the Parties and set forth in the Preliminary Approval Order. Additionally, Plaintiffs request that the Court schedule the Settlement Hearing for a date 140 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order.

Dated:  October 23, 2025

Respectfully submitted,

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**

*/s/ Sharan Nirmul*
SHARAN NIRMUL (*pro hac vice*)
snirmul@ktmc.com
DARREN J. CHECK (*pro hac vice*)
dcheck@ktmc.com
RICHARD A. RUSSO, JR. (*pro hac vice*)
rrusso@ktmc.com
DAVID A. BOCIAN (*pro hac vice*)
dbocian@ktmc.com
280 King of Prussia Road
Radnor, PA 19807
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Counsel for Class Representatives Sjunde AP-Fonden and James Stephen Muhl and Classes*

**LARSON LLP**
STEPHEN G. LARSON (Bar No. 145225)
slarson@larsonllp.com
PAUL A. RIGALI (Bar No. 262948)
prigali@larsonllp.com
555 South Flower Street, 30th Floor
Los Angeles, CA 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

*Liaison Counsel for Class Representatives Sjunde*
*AP-Fonden and James Stephen Muhl and Liaison*
*Counsel for the Classes*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs Sjunde AP-Fonden and James Stephen Muhl, certifies that this brief contains 6,955 words, which [choose one]:

  <u>X</u>  complies with the word limit of L.R. 11-6.1.

  <u>    </u>  complies with the word limit set by court order.


Dated: October 23, 2025                        <u>*/s/ Sharan Nirmul*         </u>
                                            Sharan Nirmul

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

# APPENDIX A

## Proposed Schedule of Settlement-Related Events

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Deadline for mailing/emailing Postcard Notice to Class Members (which date shall be the "Notice Date") and posting Notice and Claim Form on the Website | No later than 20 business days after the date of entry of the Preliminary Approval Order (Preliminary Approval Order ¶ 4(a)) |
| Deadline for publishing the Summary Notice | No later than 10 business days after Notice Date (Preliminary Approval Order ¶ 4(c)) |
| Deadline for filing papers supporting final approval of the Settlement, Plan of Allocation, and Class Counsel's motion for attorneys' fees and Litigation Expenses | No later than 56 calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ 24) |
| Deadline for submitting objection to Settlement (receipt date) | No later than 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ 14) |
| Deadline for submitting Claim Forms | No later than 90 calendar days after Notice Date (Preliminary Approval Order ¶ 8) |
| Deadline for filing reply papers | No later than 14 calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ 24) |
| Settlement Hearing | 140 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order ¶ 2) |